Daniel Feinberg– CA State Bar No. 135983
Email: dan@feinbergjackson.com
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
383 - 4th Street, Suite 201
Oakland, CA 94609
Tel: (510) 269-7998
Fax: (510) 269-7994

R. Joseph Barton – CA State Bar No. 212340
Email:  jbarton@blockesq.com
BLOCK & LEVITON LLP
1735 20th Street, N.W.
Washington, DC 20009
Tel: (202) 734-7046
Fax: (617) 507-6020

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| CAROL FOSTER, and THEO FOREMAN, on behalf of themselves, individually, and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>ADAMS AND ASSOCIATES, INC., ROY A. ADAMS, LESLIE G. ADAMS, DANIEL B. NOREM, and ALAN M. WEISSMAN,<br><br>       Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT** |

CLASS ACTION COMPLAINT

# I.     INTRODUCTION

1.     Plaintiffs bring this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*., on behalf of a Class of participants in and beneficiaries of the Adams and Associates Employee Stock Ownership Plan ("the Adams ESOP," "the ESOP" or "the Plan") to restore losses to the Plan, disgorge any profits through the use of Plan assets, and to obtain other remedial and appropriate equitable relief in order to redress violations and enforce the provisions of Title I of ERISA.

2.     These claims arise out of a transaction in or about September 2012 in which Defendants Roy A. Adams, Leslie G. Adams, members of the Adams family and/or Adams family trusts sold 100% of the stock of Adams and Associates, Inc ("the September 2012 Transaction") to the Adams ESOP and subsequent breaches by the fiduciaries of the Adams ESOP.  This transaction was not designed to be in the best interests of the ESOP participants, was implemented by a Trustee who is a felon now incarcerated for stealing from other ESOPs and caused the ESOP to pay in excess of fair market value. As a result of violations of ERISA's fiduciary rules by the fiduciaries entrusted with their Plan., Plaintiffs and the Class have not received all of the hard-earned retirement benefits or the loyal and prudent management of the ESOP to which they are entitled.  Moreover, Adams and Associates and the Director Defendants have concealed from Plaintiffs and the ESOP's other participants the fact that the ESOP's trustee is a felon because they do not want to arouse suspicion about the September 2012 ESOP Transaction.

# II.     JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because this action arises under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1).

4.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the breaches and violations giving rise to the claims occurred in this District, and one or more of the Defendants may be found in this District.

//

CLASS ACTION COMPLAINT                 1

**III.    INTRA-DISTRICT ASSIGNMENT**

5.      This action arises in the County of San Francisco in that some of the alleged breaches took place in the County of San Francisco, California and one or more of the Defendants may be found in San Francisco.

**IV.    PARTIES**

6.      Plaintiff Carol Foster is a former employee of Adams and Associates.  Plaintiff Foster was employed as a Security Advisor by Adams and Associates from on or about February 4, 2015 through on or about March 16, 2018 at the Treasure Island Job Corps Center in San Francisco, California**.** As a result of her employment, Plaintiff became and is a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Adams ESOP.  Plaintiff Foster resides in Oakland, California.

7.      Plaintiff Theo Foreman is a current employee of Adams and Associates.  Plaintiff Foreman has been employed as a Center Shift Manager by Adams and Associates from on or about June 1, 2009 through the present at the Treasure Island Job Corps Center in San Francisco, California**.** As a result of his employment, Plaintiff became and is a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Adams ESOP.  Plaintiff Foreman resides in Oakland, California.

8.      Defendant Adams and Associates, Inc. ("Adams and Associates") is and has been since the inception of the ESOP, the Sponsor of the ESOP within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B), the designated Plan Administrator of the ESOP within the meaning of ERISA § 3(16)(A), § 1002(16)(A), and a named fiduciary of the ESOP within the meaning of ERISA § 402, 29 U.S.C. § 1102.  Adams and Associates is and was a fiduciary of the ESOP under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), by virtue of its position as Plan Administrator and because it exercised discretionary authority or discretionary control respecting management of the ESOP, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP.

9.      Defendant Roy A. Adams ("Mr. Adams") is and has been a member of the Board of Directors of Adams and Associates and President of Adams and Associates since the

Company's incorporation in 1990. As a result of his membership on the Board of Directors, Mr. Adams is and has been at all relevant times a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21), and a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).  Mr. Adams resides in or near South Lake Tahoe, California.

10.    Defendant Leslie G. Adams ("Ms. Adams") is and has been a member of the Board of Directors of Adams and Associates since the Company's incorporation in 1990.  Ms. Adams has been the Secretary of the Company and/or Vice President of Adams and Associates since at least 2011.  Ms. Adams is the wife of Defendant Roy Adams.  As a result of her membership on the Board of Directors, Defendant Leslie Adams is and has been at all relevant times a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21), and a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14). Ms. Adams resides in or near South Lake Tahoe, California.

11.    Defendant Daniel B. Norem ("Mr. Norem") is the Executive Vice-President of Adams and Associates. Defendant Norem is and has been a member of the Board of Directors of Adams and Associates from at least 1998 through the present.  As a result of his membership on the Board of Directors, Mr. Adams is and has been at all relevant times a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21), and a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).  Mr. Norem resides in or near Reno, Nevada.

12.    Defendant Alan Weissman ("Mr. Weissman") is a convicted felon who pled guilty on March 1, 2017 in *United States v. Alan Weissman*, No. CR 16-0063-1-CRB (N.D. Cal.) to four counts in an indictment that charged him with bank fraud, theft and embezzlement from an employee pension benefit plan – specifically two ESOPs – which occurred in 2010 and 2011 as well as false statements and concealment of facts in relation to ERISA documents. At the time of the September 2012 Transaction, Weissman was the Trustee of the Adams & Associates ESOP.  According to the Summary Plan Description for the Adams & Associates ESOP available to employees in April 2018, Alan Weissman remains the Trustee of the ESOP.  Thus,

at all relevant times, Defendant Weissman was a fiduciary of the ESOP within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21).  Defendant Weissman currently resides at the Federal Correctional Institution, Terminal Island in San Pedro, California. According to the Federal Bureau of Prisons website, Weissman will remain incarcerated until November 8, 2019.

13.     The Director Defendants refers to Defendants Roy Adams, Leslie Adams and Daniel Norem.

14.     The Adams Family refers to Defendants Roy Adams, Leslie Adams, members of the Adams family and/or Adams family trusts.

**V.      FACTUAL ALLEGATIONS**

15.     Adams and Associates claims on its website to be one of the largest private sector entities involved in the federal Job Corps program. According to Statements of Information filed by Adams and Associates with the State of California Secretary of State, the address of the principal office Adams and Associates in the State of California is located at 655 H Avenue, Building 442, Treasure Island Station, San Francisco, California 94130.

16.     According to its website, Adams and Associates "began as a small business, formed in 1990."  According to the Articles of Incorporation obtained from the Nevada Secretary of State, Adams and Associates was incorporated on September 25, 1990. Prior to the September 2012 Transaction, all or nearly all of Adams and Associates was owned by the Adams Family.

17.     The U.S. Department of Labor awards Job Corps contracts based on a competitive bidding process.  The Department of Labor issues a Request for Proposals for a limited time period, plus optional renewals. The bidding process for Job Corps contracts and renewals of those contracts is highly competitive.

18.     The appeals process for Job Corps contracts and possible litigation if an appeal is denied creates additional uncertainty for any bidder's ability to secure a contract. Most newly awarded contracts are appealed and the incumbent remains in place while appeals are pending. The appeal process can take years. In addition, incumbents may file suit in the Federal Court of Claims if an appeal is unsuccessful.  Indeed, Adams and Associates used this tactic when it lost the contracts for the Gadsen and Sargent Shriver Job Corps Centers, as alleged below.

19.     In its early years, the financial success of Adams & Associates depended in large part on its ability to qualify as a small business in bidding on contracts for the Job Corps program.  In 2012, the Department of Labor dramatically increased the number of Job Corps Center operator contracts set aside for small businesses.

20.     Adding to the competitive bidding process for Job Corps contracts, the Department of Labor limits the right to compete for some Job Corps Center contracts to small businesses. The revenue limit for a business to qualify for a small business for purpose of bidding on contracts as s small business for Job Corps Centers was $35.5 million in annual receipts at the time of the September 2012 Transaction.

21.     Sometime prior to the September 2012 Transaction, it was apparent that Adams and Associates either no longer qualified or soon would no longer qualify as a small business and therefore could not compete for small business set-aside contracts.  As a result, it was also apparent that Adams & Associates would lose or stood a substantial risk of losing a substantial part of its business as a result of failing to qualify as a small business when bidding for federal Job Corps Center contracts.

22.     Prior to the September 2012 Transaction, it was apparent that Adams and Associates would likely lose to two Job Corps Center contracts which were up for renewal – the Gadsen Job Corps Center in Alabama and the Shriver Job Corps Center in Massachusetts – because the Company no longer qualified as a small business.

23.     The Adams Family caused Adams and Associates to establish the ESOP, in part, based on the misguided and mistaken belief that being an ESOP-owned company would allow Adams & Associates to compete for Job Corps contracts set aside for small businesses. This belief has not proven correct and was not reasonable at the time.

24.     Adams and Associates faced other obstacles and challenges in or around 2012. For example, Edna Primrose, a former employee of Adams and Associates, was appointed as National Director of Job Corps in March 2010.  At first, Ms. Primrose's appointment helped Adams and Associates obtain and retain Job Corps contracts. However, Job Corps was plagued by financial and management troubles under Ms. Primrose's leadership. In April 2012, it was

discovered that Job Corps had a $39 million budget shortfall for fiscal year 2011. As a result, there were immediate cuts to budgets and contracts to make up the shortfall. The cutbacks included an enrollment freeze that was in place for a number of months. In addition, the Job Corps program overspent its budget by an additional $69.5 million in the 2012 fiscal year, which led to additional cutbacks. Ms. Primrose was forced to resign in November 2012.

25.     Having an ESOP own Adams & Associates would also allow the Adams Family to retain control of the Company so long as they were officers and directors and had the power to appoint and remove the Trustee.  According to filings with the Nevada Secretary of State, both prior to and after the ESOP-ownership, Roy Adams was and is the President and a member of the Board of Adams & Associates and Leslie Adams was and is the Secretary and a member of the Board of Directors.

26.     The Adams Family also had Adams and Associates establish the ESOP, in part, to try to eliminate a union representing many workers at the Treasure Island Job Corps Center. Union members are not eligible to participate in the ESOP. Adams and Associates believed that represented employees would choose to leave the union in order to be eligible for ESOP benefits.

27.     As set forth in the Summary Plan Description ("SPD"), the ESOP provides that "[a]n Employee whose terms of employment with the Employer are covered by a collective bargaining agreement shall not be eligible to participate in the [ESOP]."

28.     Roy Adams has taken steps to eliminate union representation on other occasion. For example, when Adams and Associates became a subcontractor at a Sacramento Job Corps Center in 2014, Roy Adams sought get rid of union representation. In a decision affirmed by the Fifth Circuit, the NLRB Administrative Law Judge found that in connection with its operation of the Job Corps Center in Sacramento, "overwhelming evidence supports the government's allegation that Adams refused to hire former employees … in order to avoid the obligation to recognize and bargain with the Union as a successor employer. *Adams & Associates, Inc. and Mcconnell, Jones, Lanier & Murphy, LLP and Sacramento Job Corps Fedn. of Teachers, Aft Loc. 4986, Am. Fedn. of Teachers,* 2015 L.R.R.M. (BNA) ¶ 184715 (N.L.R.B. Div. of Judges June 16, 2015).

29.     As found by the Fifth Circuit, "[Roy Adams'] own statements and actions evince an intent to avoid bargaining with the Union. [Adams and Associates] does not deny that [Roy Adams] explicitly voiced displeasure at the transition team's failure to avoid Union recognition." *Adams and Associates, Inc. v. NLRB*, 871 F.3d 358, 370 (5th Cir. 2017).  "[Roy Adams'] statements … indicate that the CEO of [Adams and Associates] himself intended for the company to avoid recognizing the Union." *Id*. at 371. 6.

30.     Prior to the sale of Adams and Associates stock to the ESOP, all or almost all Company stock was owned by Defendants Roy Adams and Leslie Adams, members of the Adams family and/or Adams family trusts.  Adams and Associates adopted the ESOP effective January 1, 2012.  As reflected by the 2012 Form 5500 filed on October 4, 2013, the ESOP had no assets as of January 1, 2012.

31.     In order to facilitate the sale of the Adams Family stock to the Adams ESOP, the Board of Directors of Adams and Associates appointed Defendant Weissman as Trustee of the ESOP in or about 2012.  Defendant Weissman was Trustee of the ESOP at the time of the September 2012 Transaction.

32.     No loyal and prudent fiduciary who had conducted a reasonably prudent investigation would have appointed Defendant Weissman as the Trustee of the ESOP because Defendant Weissman was engaged in criminal conduct involving ESOPs at the time he acted on behalf of the ESOP in the September 2012 Transaction.

33.     The Director Defendants did not conduct appropriate due diligence before appointing Defendant Weissman as trustee of the ESOP.  Had they conducted an appropriate investigation of the background of Defendant Weissman prior to or at the time of the September 2012 Transaction, the Director Defendants would have discovered that on June 12, 2012, Defendant Weissman was sued for improper management of an ESOP for which he served as trustee of the ESOP in *Rickstrew v. Weissman*, No. 12-cv-03133-WHA (N.D. Cal.). Had the Director Defendants read the *Rickstrew* complaint, the Director Defendants would have learned that Weissman was accused of embezzling almost $400,000 from an ESOP.  No loyal or prudent fiduciary would have appointed Defendant Weissman to act as the Trustee for an ESOP -- and

particularly not in an ESOP Transaction -- had they discovered the allegations in the *Rickstrew* lawsuit, particularly where such allegations led to Weissman's 2016 indictment.

34.     The Director Defendants did not conduct appropriate due diligence *after* appointing Defendant Weissman as trustee of the ESOP.  Had they conducted an appropriate investigation of Defendant Weissman after the September 2012 Transaction, the Director Defendants would have discovered the following (in addition to Weissman being civilly sued for his embezzlement):

a.     On February 11, 2016, a grand jury indicted Defendant Weissman on 14 counts, including theft or embezzlement from two ESOPs for which Weissman served as trustee in *United States v. Weissman*, No. 16-cr-00063-CRB (N.D. Cal.).  Weissman's misconduct, as alleged in the indictment, dated back to at least 2010.

b.     On March 1, 2017, Defendant Weissman pled guilty to one count of bank fraud, two counts of embezzlement from the ESOPs, and one count of making false statements and concealment of facts in relation to documents required by ERISA. In sum, Weissman admitted embezzling $787,762 in ERISA plan funds.

c.     On June 7, 2017, the U.S. District Court for the Northern District of California sentenced Defendant Weissman to 30 months in prison.

35.     The U.S. Department of Labor contacted Adams and Associates during the course of its investigation of Defendant Weissman. Upon information and belief, the Department of Labor informed Adams and Associates in or about 2014 that it was investigating possible misconduct by Defendant Weissman while serving as an ESOP trustee.

36.     Defendant Adams and Associates and the Director Defendants have not disclosed Defendant Weissman's criminal conduct to Plaintiffs or other ESOP participants. Defendant Adams and Associates and the Director Defendants have concealed Defendant Weissman's criminal conduct and the Department of Labor's investigation of Weissman from Plaintiffs and other ESOP participants. Defendant Adams and Associates and the Director Defendants have concealed Defendant Weissman's criminal conduct and the Department of Labor investigation in

order to avoid arousing suspicion about the September 2012 ESOP Transaction. Plaintiffs first learned of Defendant Weissman's criminal conduct in April 2018.

37.    As of April 2018, the ESOP's Summary Plan Description available to participants still identifies Defendant Weissman as the Trustee of the ESOP.

38.    Plaintiffs do not know if Defendant Weissman remains the Trustee of the ESOP. If Defendant Weissman is still the Trustee of the ESOP, then Defendant Weissman has violated ERISA § 411, 29 U.S.C. §1111, which provides in relevant part that no person who has been convicted of or imprisoned as a result of his conviction of, "any felony involving abuse or misuse of such person's position or employment in a[n] … employee benefit plan to seek or obtain an illegal gain at the expense of … the beneficiaries of the employee benefit plan" shall serve or be permitted to serve as a trustee or fiduciary of an ERISA plan.

39.    In order to facilitate the purchase of the Adams and Associates stock, the Adams Family as the then-shareholders of Adams and Associates voted to amend Article IV Section A of the Articles of Incorporation to increase the authorized capital stock of the Corporation to be 2 million shares according to a Certificate of Amendment filed with the Nevada Secretary of State dated September 20, 2012 at 2:45 pm signed by Defendant Leslie Adams.

40.    In or about September 2012, Defendant Weissman, acting as Trustee of the ESOP, caused the Adams ESOP to purchase 100% of Adams and Associates stock from the Adams Family for $33,500,000 (the "September 2012 Transaction").

41.    After the September 2012 Transaction, Adams and Associates lost the Job Corps contracts for the Gadsen and Shriver Job Corps Centers.

42.     As shown by the chart below, the value of the ESOP's Adams and Associates stock declined precipitously following the 2012 ESOP Transaction and has remained far below the purchase price:



43.     As explained by the Form 5500s filed with the Department of Labor, the funds borrowed by the ESOP are "collateralized by the *unallocated* shares of stock and guaranteed by the Company."  But "[t]he lenders have no rights against shares once they are allocated under the ESOP."  As explained by the Form 5500, the financial statements present separately the assets and liabilities of the stock allocated to the accounts of participants from the assets and liabilities of the unallocated shares.  As the acquisition indebtedness is only a liability of the *unallocated* shares, the acquisition debt cannot explain the post-acquisition depressed price of the *allocated* *shares*.

44.     According to the 2012 Form 5500 filed with the Department of Labor on October 4, 2013, the fair market value for the stock held by the Adams ESOP was only $ 6,250,000 as of December 31, 2012.

45.     According to the 2016 Form 5500 filed with the Department of Labor on September 21, 2017, the fair market value for the stock held by the Adams ESOP was only $12,310,000 as of December 31, 2016.

46.     The Adams ESOP paid more than fair market value in the September 2012 Transaction.  Based on the available information, the purchase price for the September 2012 Transaction was based in part on a valuation report that was unreliable.

47.     Based on the available information, the September 2012 Transaction price was based on unrealistic financial projections and did not adequately consider Adams and Associates' dependence on Job Corps contracts, the competitive bidding process for Job Corps contracts, the impending loss of the Gadsen and Sargent Shriver Job Corps Center contracts, Job Corps' budget problems, or the fact that Adams and Associates no longer qualified for small business set-aside contracts.

48.     A prudent fiduciary who had conducted a prudent investigation would have concluded that the ESOP was paying more than fair market value for the Adams and Associates shares and/or the debt incurred in connection with the Transaction was excessive.

49.     All of the Defendants would have had access to the financial information upon which the valuation for the September 2012 Transaction was based and as a result of their status as fiduciaries for the ESOP would have had access to the valuation report itself.  The valuation report was not provided to the participants of the Adams ESOP.

50.     The decline in value of the Adams and Associates stock owned by the ESOP following the September 2012 Transaction should have caused Defendant Weissman as well as the Director Defendants, at a minimum, to investigate whether the ESOP had paid more than fair market value in the September 2012 Transaction.  To the extent that any of the Defendants had conducted such an investigation, that investigation as well as any corrective measures would have been reported in one of the Form 5500s filed with the Department of Labor.  As none of the Form 5500s report any such investigation or corrective actions, none of the Defendants investigated whether fiduciary violations had occurred in the 2012 ESOP Transaction despite numerous red flags that should have raised concerns.

**VI.     CLASS ACTION ALLEGATIONS**

41.     Plaintiffs bring these claims as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of all participants in the Adams and Associates ESOP from September 2012

(or the date of the Transaction) or any time thereafter who vested under the terms of the Plan and those participants' beneficiaries. Excluded from the Plaintiff Class are Defendants and their immediate family, any fiduciary of the Plan; the officers and directors of Adams and Associates or of any entity in which a Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons.

42.     The members of the Class are so numerous that joinder of all members is impracticable. According to the 2016 Form 5500 filed with the Department of Labor, which is the most recent available Form 5500, as of January 1, 2016, there were 2,097 participants, within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), in the ESOP.  As Adams and Associates claims on its website to employ more than 2,700 employees at over 20 locations including 17 Job Corps centers across the country, the members of the Class are geographically dispersed.

43.     The issues of liability are common to all members of the Class and are capable of common answers as those issues primarily focus on defendants' acts (or failure to act). Questions of law and fact common to the Plaintiff Class as a whole include, but are not limited to, the following:

a.     Whether Defendants engaged in a prohibited transaction under ERISA by permitting the ESOP to purchase Adams and Associates stock from Defendants Roy Adams and Leslie Adams, members of the Adams family and/or Adams family trusts for more than adequate consideration in the September 2012 Transaction;

b.     Whether Defendant Weissman engaged in a prudent investigation of the proposed purchase of Adams and Associates stock by the ESOP in the September 2012 Transaction;

c.     Whether Defendant Weissman breached a fiduciary duty to ESOP participants by causing the ESOP to purchase Adams and Associates stock in 2012 for more than fair market value;

d.     Whether the Director Defendants breached their fiduciary duties by failing to adequately monitor the ESOP's Trustee;

1         e.     Whether Defendants Adams and Associates, Roy Adams and Leslie

2    Adams breached their fiduciary duties to inform the ESOP participants about Defendant

3    Weissman's criminal activity and to take appropriate corrective action;

4         f.     The amount of losses suffered by the ESOP as a result of Defendants'

5    fiduciary violations and/or other appropriate remedial and equitable relief.

6         42.     Plaintiffs' claims are typical of those of the Class because their claims arise from

7    the same event, practice and/or course of conduct. Specifically, Plaintiffs, on behalf of the Class,

8    alleged that Defendants breached their fiduciary duties or otherwise violated ERISA in

9    connection with the sale of stock to the Adams ESOP, management of the assets of the Plan or in

10   performing their fiduciary duties to the Plan. Plaintiffs challenge the legality and appropriateness

11   of a plan-wide transaction, which as the Form 5500s explain whereby stock is allocated to all

12   participants' accounts based on the per share price in the September 2012 Transaction as the Plan

13   makes each payment of principal and interest. As a result, Plaintiffs like other ESOP participants

14   in the Plaintiff Class, have received less in their ESOP accounts based on the same per share

15   purchase price of Adams and Associates stock, and continue to suffer such losses in the present

16   because Defendants have failed to correct the overpayment by the ESOP.

17        43.     Plaintiffs will fairly and adequately represent and protect the interests of the

18   Class.  Plaintiffs do not have any interests antagonistic to or in conflict with those of the Class.

19        44.     Defendants do not have any unique defenses that would interfere with Plaintiffs'

20   representation of the Class.

21        45.     Plaintiffs have retained counsel competent and experienced in complex class

22   actions, ERISA, and employee benefits litigation and with particular experience and expertise in

23   ESOP litigation.

24        46.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(A).

25   Fiduciaries of ERISA-covered plans have a legal obligation to act consistently with respect to all

26   similarly situated participants and to act in the best interests of the Plan and their participants.

27   This action challenges whether Defendants acted consistently with their fiduciary duties or

28   otherwise violated ERISA as to the ESOP as a whole. As a result, prosecution of separate actions

by individual members would create the risk of inconsistent or varying adjudications that would

establish incompatible standards of conduct relating to the Plan.

47.     Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(1)(B).

Administration of an ERISA-covered plan requires that all similarly situated participants be

treated the same. Resolving whether Defendants fulfilled their fiduciary obligations to the Plans,

engaged in prohibited transactions with respect to the Plan would, as a practical matter, be

dispositive of the interests of the other participants in the ESOP even if they are not parties to

this litigation and would substantially impair or impede their ability to protect their interests if

they are not made parties to this litigation by being included in the Class.

48.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because

Defendants have acted or refused to act on grounds generally applicable to the Class, making

appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

This action challenges whether Defendants acted consistently with their fiduciary duties or

otherwise violated ERISA as to the ESOP as a whole.  The members of the Class are entitled to

declaratory and injunctive relief to remedy Defendants' fiduciary violations. As ERISA is based

on trust law, any monetary relief consists of equitable monetary relief and is either provided

directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

49.     Additionally, and alternatively, class certification is appropriate pursuant to Fed.

R. Civ. P. 23(b)(3) because questions of law and fact common to all Class members predominate

over any questions affecting individual members of the Class, and because a class action is

superior to other available methods for the fair and efficient adjudication of this action. Common

questions related to liability will necessarily predominate over any individual questions precisely

because Defendants' duties and obligations were uniform to all participants and therefore all

members of the Class. Plaintiffs and all Class members have been harmed by the ESOP paying

more than fair market value for Adams and Associates stock in the September 2012 Transaction.

As relief and any recovery will be on behalf of the Plan, common questions as to remedies will

likewise predominate over any individual issues.

50.     A class action is a superior method to other available methods for the fair and efficient adjudication of this action. As the claims are brought on behalf of the Plan, resolution of the issues in this litigation will be efficiently resolved in a single proceeding rather than multiple proceedings and each of those individual proceedings could seek recovery for the entire Plan. The losses suffered by individual Class members are small compared to the expense and burden of individual prosecution of this action. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Defendants' duties with regard to the ESOP.

51.     The following factors set forth in Rule 23(b)(3) also favor certification of this case as a class action:

a)     The members of the Class have an interest in a unitary adjudication of the issues presented in this action for the reasons that this case should be certified under Rule 23(b)(1).

b)     No other litigation concerning this controversy has been filed by any other members of the Class.

c)     This District is most desirable location for concentrating the litigation for reasons that include (but are not limited to) the following: (i) the ESOP is administered in part in this District, (iii) certain Defendants can be found in this District, and (iii) certain non-party witnesses, are expected to be located in this District.

52.     The names and addresses of the Class are available from the ESOP. Notice will be provided to all members of the Plaintiff Class to the extent required by Rule 23.

**FIRST CLAIM FOR RELIEF**

**[Engaging in Prohibited Transaction Forbidden by ERISA §§ 406(a),**

**29 U.S.C. §§ 1106(a), Against Defendants Roy Adams, Leslie Adams and Weissman]**

41.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

42.     ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect (A) sale or exchange, or leasing of any property between the plan

and a party in interest," or a "(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

43.     ERISA § 3(14), 29 U.S.C. § 1002(14) defines a "party in interest" to include (A) any fiduciary … of such employee benefit plan", (E) a relative -- which includes a spouse, ancestor, lineal descendant or the spouse of a lineal descendant -- of a fiduciary, and (H) an employee, officer or director or a 10 percent or more shareholder of an employer covered by the Plan.  Defendants Roy Adams and Leslie Adams (and their relatives or trusts for their benefit or the benefit of their relatives) qualified as "parties in interest" within the meaning of ERISA § 3(14).

44.     ERISA § 408(e), 29 U.S.C. § 1108(e) provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration. The burden is on the fiduciary and the parties-in-interest to demonstrate that conditions for the exemption are met.

45.     ERISA § 3(18)(B) defines adequate consideration as "the fair market of the asset as determined in good faith by the trustee or named fiduciary." ERISA § 3(18)(B) requires that the fiduciary or party-in-interest show that the price paid must reflect the fair market value of the asset at the time of the transaction, and the fiduciary conducted a prudent investigation to determine the fair market value of the asset.

46.     As Trustee, Defendant Weissman caused the Adams ESOP to engage in a prohibited transaction in violation of ERISA §§ 406(a)(1)(A) and (D), 29 U.S.C. §§ 1106(a)(1)(A) and (D), by failing to ensure that the ESOP paid no more than fair market value for the Adams and Associates stock purchased in the September 2012 Transaction. Specifically, the ESOP paid more than fair market value for shares sold by Defendants Roy Adams and Leslie Adams, members of the Adams family and/or Adams Family trusts.

47.     As officers and directors of Adams and Associates, as fiduciaries of the ESOP and as the sellers of the stock to the Adams ESOP in the September 2012 Transaction, Defendants Roy Adams and Leslie Adams were aware of sufficient facts that the September 2012 Transaction constituted a prohibited transaction with parties-in-interest.  As parties-in-interest,

Defendants Roy Adams and Leslie Adams are liable for the violations of ERISA § 406(a)(1)(A) and (D), 29 U.S.C. § 1106(a)(1)(A) and (D).

**SECOND CLAIM FOR RELIEF**

**[Engaging in Prohibited Transaction Forbidden by ERISA §§ 406(b),**

**29 U.S.C. §§ 1106(a)-(b), Against Defendants Roy Adams and Leslie Adams]**

41.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

42.     ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not (1) "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or (2) "deal with the assets of the plan in his own interest or for his own account," or (3) "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

43.     As members of the Board of Directors of Adams and Associates, Defendants Roy Adams and Leslie Adams were fiduciaries of the Adams ESOP at the time of the September 2012 Transaction.

44.     By selling their shares of Adams and Associates stock to the Adams ESOP in the September 2012 Transaction, Defendants Roy Adams and Leslie Adams acted in a transaction involving a plan where their own interests were adverse to those of the Adams ESOP within the meaning of ERISA § 406(b)(1), they dealt with the assets of the Plan, which purchased their Adams and Associate stock, in their own interest within the meaning of ERISA § 406(b)(2) and as a result of the receipt of the proceeds from the sale of their Adams and Associates stock received consideration for the their own personal account in connection with a transaction involving assets of a plan within the meaning of ERISA § 406(b)(3).

45.     ERISA § 408(e), 29 U.S.C. § 1108(e) provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration. The burden is on the fiduciary to demonstrate that conditions for the exemption are met.

46.     ERISA § 3(18)(B) defines adequate consideration as "the fair market of the asset as determined in good faith by the trustee or named fiduciary." ERISA § 3(18)(B) requires that the price paid must reflect the fair market value of the asset, and the fiduciary must conduct a prudent investigation to determine the fair market value of the asset.

47.     By selling their shares of Adams and Associates stock to the Adams ESOP in the September 2012 Transaction, Defendants Roy Adams and Leslie Adams engaged in a prohibited transaction in violation of ERISA §§ 406(b), 29 U.S.C. §§ 1106(b) for which they are liable to restore the losses caused by these prohibited transactions, to disgorge profits or other appropriate remedial and equitable relief.

### THIRD CLAIM FOR RELIEF

**[Breach of Fiduciary Duty Under ERISA §§ 404(a)(1)(A) and (B),**

**29 U.S.C. §§ 1104(a)(1)(A) and (B) Against Defendant Weissman]**

48.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

49.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

50.     In the context of a Transaction involving the assets of the Plan, the duties of loyalty under ERISA § 404(a)(1)(A) and prudence under ERISA § 404(a)(1)(B) require a fiduciary to undertake an appropriate investigation to determine that the plan and its participants receives adequate consideration for the plan's assets and the participants' account in the plan.

51.     Pursuant to ERISA § 3(18), adequate consideration for an asset for which there is no generally recognized market means the fair market value of the asset determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with the Department of Labor regulations.

52.     To fulfill his fiduciary duties, Defendant Weissman was required to undertake an appropriate and independent investigation of the fair market value of Adams and Associates stock in the September 2012 Transaction in order to fulfill his fiduciary duties.  Among other things, Defendant Weissman was required to conduct a thorough and independent review of any "independent appraisal," to make certain that reliance on any and all valuation experts' advice was reasonably justified under the circumstances of the September 2012 Transactions; to make an honest, objective effort to read and understand the valuation reports and opinions and question the methods and assumptions that did not make sense.

53.     An appropriate investigation would have revealed that the valuations used for and the price paid by the ESOP in the September 2012 Transaction did not reflect the fair market value of the Adams and Associates stock purchased by the Plan, the September 2012 Transaction was not in the best interests of the Plan participants and the September 2012 Transaction would cause the ESOP to take on excessive debt.

54.     At the time of and after the September 2012 Transaction, Defendant Weissman was obligated to inform ESOP participants – as well as the Plan Administrator and the Director Defendants -- about his own criminal activity with respect to other ESOPs.

55.     Additionally, Defendant Weissman was required to remedy the ESOP's overpayment for Adams and Associates stock after the date of the September 2012 Transaction, including as necessary correcting the prohibited transaction by seeking the overpayment from the Adams Family and/or the breaching Trustee (i.e. himself).

56.     By causing the Adams ESOP to engage in the September 2012 Transaction, failing to disclose his criminal activity and failing to correct the September 2012 Transaction, Defendant Weissman breached his fiduciary duties under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A), (B) and caused losses to the Plan and the accounts of the Class Members.

## FOURTH CLAIM FOR RELIEF

**[Breach of Fiduciary Duty Under ERISA §§ 404(a)(1)(A), (B) and (D),**

**29 U.S.C. §§ 1104(a)(1)(A), (B) and (D) Against Director Defendants]**

57.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

58.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries, (A) for the exclusive purpose of providing benefits to participants and the beneficiaries of the plan, (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.

59.     Under ERISA § 404(a)(1)(A) and (B), a fiduciary with the authority to appoint and/or remove other fiduciaries has an obligation to undertake an appropriate investigation that the fiduciary is qualified to serve in the position as fiduciary and at reasonable intervals to ensure that the fiduciary who has been appointed remains qualified to act as fiduciary and is acting in compliance with the terms of the Plan and in accordance with ERISA.

60.     An ERISA fiduciary's duty of loyalty and prudence under ERISA § 404(a)(1)(A) and (B) includes a duty to disclose and inform. Those duties not only require that a fiduciary comply the specific disclosure provisions in ERISA, but also require (a) a duty not to misinform, (b) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful, and (c) a duty to convey complete and accurate information material to the circumstances of the participants and beneficiaries.

61.     According to the SPD, "[t]he Trustee is appointed by the Board of Directors of the Company."

62.     Had the Director Defendants conducted a reasonably prudent investigation and been interested in ensuring that ESOP was managed for the exclusive purpose of providing

benefits to ESOP participants, the Director Defendants would have learned prior to and after the September 2012 Transaction that Defendant Weissman was not a suitable Trustee for the ESOP.

63.     Upon discovering that Defendant Weissman had been alleged to have engaged in and later pled guilty to felony charges arising from fraud, theft and embezzlement while acting as a fiduciary for two other ESOPs, the Director Defendants should have done at least the following: (a) promptly removed Weissman as Trustee and replaced him as Trustee, (b) informed the ESOP participants of the circumstances of Weissman's removal (and the fact that he was removed and the name of his replacement), (c) conducted an investigation into Defendant Weissman's administration of the ESOP, including the September 2012 Transaction, (d) informed the ESOP participants of the investigation and (e) taken actions necessary to remedy any fiduciary breaches including as necessary steps to correct the September 2012 Transaction such as appointing an independent fiduciary or a new Trustee to evaluate the September 2012 Transaction, remedy the ESOP's overpayment for Adams and Associates stock at any time between the date of the 2012 ESOP Transaction and the present.

64.     Defendants breached their duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), either because they either failed to conduct an adequate investigation of Weissman before or after the September 2012 and were ignorant of his criminal activities and conviction or because they knew of Weissman's criminal activities and convictions but failed to take sufficient steps to protect Adams ESOP participants.

65.     By failing to properly appoint a qualified Trustee, failing to properly monitor Defendant Weissman and/or failing to take appropriate action upon learning of Defendant Weissman's criminal activities, the Director Defendants breached their fiduciary duties under ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) &(B).

### FIFTH CLAIM FOR RELIEF

**[Failure to Disclose Information Required by ERISA § 102, 104(b)(1), 29 U.S.C. §§ 1022, 1024(b)(1) & ERISA § 404(a)(1)(A) & (B), 29 U.S.C. §§ 1104(a)(1)(A) & (B), Against Adams & Associates]**

66.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

67.     As the Plan Administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), Adams and Associates was obligated to comply with ERISA §§ 102 and 104(b), 29 U.S.C. § 1022 and 1024(b).

68.     Pursuant to ERISA § 104(b)(1), Adams and Associates as Plan Administrator was required to furnish a current version of the SPD and any modifications and changes (A) to new participants within 90 days after that person became a participant and (B) to every participant in the Plan with an updated copy of an SPD to extent that there had been changes within the last 5 years concerning information described in 29 U.S.C. § 1022.

69.     To the extent that Defendant Weissman was removed as Trustee, information identifying the new Trustee should have been communicated to participants and should have been provided in an updated SPD.  As of April 2018, no updated SPD had been distributed to participants and the SPD on the ESOP website was still the 2012 SPD identifying Weissman as the Trustee.  To the extent that Weissman had been removed as Trustee, Adams and Associates violated ERISA §§ 102, 104(b)(1), 29 U.S.C. §§ 1022 and 1024(b)(1).

70.     Additionally, as the Plan Administrator within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A) and a named fiduciary within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a), Adams and Associates had fiduciary duties pursuant to ERISA § 404(a), 29 U.S.C. § 1104(a).

71.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and …. (B) with "care, skill, prudence, and diligence."

72.     An ERISA fiduciary's duty of loyalty and prudence under ERISA § 404(a)(1)(A) and (B) includes a duty to disclose and inform. Those duties not only require that a fiduciary comply the specific disclosure provisions in ERISA, but also require (a) a duty not to misinform, (b) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful, and (c) a duty to convey complete and accurate information material to the circumstances of the participants and beneficiaries.

73.     The Ninth Circuit has recognized that a participant in an ERISA plan is entitled to know exactly where he stands with respect to the plan, including the benefits to which he or she may be entitled, the circumstances which may preclude him from obtaining benefits, what procedures he must follow to obtain benefits, and *who are the persons to whom the management and investment of his plan funds have been entrusted.*

74.     Information that the Trustee of the ESOP had been indicted of, pled guilty to and had been incarcerated for fraud, theft and embezzlement from other ESOPs while acting as a fiduciary and that such criminal acts had occurred prior to and in close temporal proximity to the September 2012 Transaction is material information that the Adams ESOP participants had a right to know and that Adams and Associates as Plan Administrator had an obligation to convey to the Adams ESOP participants.  Additionally, as Plan Administrator, Adams and Associates had and has an obligation to inform the Adams ESOP participants whether Defendant Weissman has been removed as Trustee of the ESOP and if not, why not and if so, the identity of the subsequent and current Trustee.  Finally, as Plan Administrator, Adams and Associates had and has an obligation to inform the Adams ESOP participants whether – given the charges against Weissman for which he pled guilty – whether any Plan assets have been misused or embezzled.

75.     To date, the ESOP participants have not provided sufficient information to allow them to know whether a convicted felon remains or was removed as Trustee, whether there were any improprieties or criminal acts by that convicted felon while he was Trustee that affected their retirement accounts or even whether any such investigation was undertaken.

76.     Where a fiduciary has breached its duty to account to the participants and beneficiaries of the trust, the participants and beneficiaries (and in fact, "any person financially interested in the trust administration") is entitled to bring a suit to compel the fiduciaries of the Plan to provide such information.

77.     To the extent that ERISA participants or beneficiaries are required to be harmed to obtain such information or an accounting, Plaintiffs and the Class have been harmed because they have not been provided basic information about who is the current Trustee, whether their benefits have been affected by any criminal activity, whether there has been any such

investigation into whether the assets of the Plan have been misappropriated or whether there is any Trustee or any other fiduciary actually looking out for their interests.

## SIXTH CLAIM FOR RELIEF

**[Violation of ERISA § 410 & ERISA § 502(a)(3) against Defendant Weissman and Director Defendants]**

78.     Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

79.     ERISA § 410(a), 29 U.S.C. § 1110(a), provides in relevant part (with exceptions not applicable here) that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [ERISA Part IV] shall be void as against public policy."

80.     ERISA § 502(a)(3), 29 U.S.C. § 1102(a)(3), authorizes a plan participant to bring a civil action (A) to enjoin any act or practice which violates any provision of ERISA or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress violations of ERISA or the terms of the plan or (ii) to enforce any provisions of ERISA or the terms of the plan.

81.     To the extent that Defendant Weissman's engagement agreements with Adams and Associates (or any other agreements) attempt to relieve Defendant Weissman of his responsibility or liability to discharge its fiduciary duties or to have Adams and Associates (an ESOP-owned company) and thereby the ESOP be responsible for his liability or breaches, Defendant Weissman's engagement agreements (or other agreements) are void as against public policy.

82.     To the extent that agreements or other instruments governing the relationship between the Director Defendants and Adams and Associates attempt to relieve the Director Defendants or any of them of his or her responsibility or liability to discharge his or her fiduciary duties or to have Adams and Associates (an ESOP-owned company) and thereby the ESOP be responsible for his or her liability or breaches, such agreements or other instruments are void as against public policy.

83.     To the extent that Defendants would agree to such a provision that is void against public policy under ERISA § 410, Defendants breached their fiduciary duties under ERISA by failing to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries (A) for the exclusive purpose of providing benefits to participants and beneficiaries and (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and aims, in violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

84.     Any indemnification provision in agreements between Defendants and Adams and Associates or other agreements or instruments governing the relationship between Defendants and Adams and Associates should be declared void ab initio and should be reformed to strike or modified accordingly.

85.     Defendants should be ordered to disgorge any indemnification payments made by Adams and Associates and/or the ESOP, plus interest.

## VIII.   PRAYER FOR RELIEF

Wherefore, Plaintiffs on behalf of themselves and the Class, pray that judgment be entered against Defendants on each Claim and be awarded the following relief:

A.      Declare that Defendants have each breached their fiduciary duties under ERISA;

B.      Declare that Defendants Weissman, Roy Adams and Leslie Adams have each engaged in prohibited transactions in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), by engaging in the September 2012 Transaction;

C.      Enjoin Defendants, and each of them, from further violations of their fiduciary responsibilities, obligations and duties;

D.      Remove each of the Defendants as fiduciaries and Trustees of the Adams ESOP and/or bar each of them from serving as fiduciaries of the Adams ESOP in the future, and appoint a new independent fiduciary to manage the Adams ESOP and order the costs of such independent fiduciary be paid for by Defendants;

E.      Order that Defendants found to have breached his/her/its fiduciary duties to the Adams ESOP to jointly and severally restore all the losses resulting from their breaches and disgorge all profits they have made through use of assets of the ESOP;

F.      Require Adams and Associates as Plan Administrator to provide an updated SPD to all ESOP participants;

G.      Require Adams and Associates as Plan Administrator and the Director Defendants to disclose if and when Defendant Weissman was removed as plan administrator, whether any investigation was conducted concerning any criminal or improper activity that occurred while he was Trustee and to provide an accounting to Plaintiffs and the Class of the financial accounts of the Plan;

H.      Order that Defendants provide other appropriate equitable relief to the ESOP, including but not limited to, by forfeiting their ESOP accounts, providing an accounting for profits, imposing a constructive trust and/or equitable lien on any funds wrongfully held by any of the Defendants;

I.      Order pursuant to ERISA § 206(d)(4) that any amount to be paid to the ESOP accounts of the Class can be satisfied by using or transferring any breaching fiduciary's ESOP account in the Plan (or the proceeds of that account) to the extent of that fiduciary's liability.

J.      Declare that any indemnification agreement between the Defendants, or any of them, and Adams and Associates or the ESOP violates ERISA § 410, 29 U.S.C. § 1110, and is therefore null and void.

K.      Require Defendants to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or ordering payment of fees and expenses to Plaintiffs' counsel on the basis of the common benefit or common fund doctrine out of any money recovered for the Class;

L.      Order Defendants and each of them to disgorge any fees they received in conjunction with the 2012 ESOP Transaction;

M.      Declare that any indemnification agreement between Defendants and the ESOP or Adams Associates violates ERISA § 410, 29 U.S.C. § 1110, and is therefore null and void;

N.      Issue a preliminary and permanent injunction barring Defendants and each of them from seeking to enforce any indemnification agreement between Defendants and the ESOP or Adams and Associates;

O.      Order Defendants and each of them to reimburse the ESOP or Adams and Associates for any money advanced by the ESOP or Adams and Associates, respectively, under any indemnification agreement or other instrument between Defendants and the ESOP or Adams and Associates;

P.      Order that Defendants and each of them provide other appropriate equitable relief to the Plan, including but not limited to rescission, surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendants;

Q.      Award pre-judgment interest and post-judgment interest; and

R.      Award such other and further relief that the Court determines that Plaintiffs and the Class are entitled to pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or that is equitable and just.

Dated: May 9, 2018                                   Respectfully submitted,

*/s/ Daniel Feinberg*
Daniel Feinberg
Email: dan@feinbergjackson.com
FEINBERG, JACKSON, WORTHMAN &
WASOW LLP
383 - 4th Street, Suite 201
Oakland, CA 94609
Tel: (510) 269-7998
Fax: (510) 269-7994

R. Joseph Barton
Email:  jbarton@blockesq.com
BLOCK & LEVITON LLP
1735 20th Street, N.W.
Washington, DC 20009
Tel:  (202) 734-7046
Fax: (617) 507-6020

*Attorneys for Plaintiffs*