KAUFMAN DOLOWICH & VOLUCK, LLP
TAD A. DEVLIN (SBN 190355)
tdevlin@kdvlaw.com
KATE COLLINS (SBN 297809)
kcollins@kdvlaw.com
KARTIKEY PRADHAND (SBN 291870)
kpradhan@kdvlaw.com
DOMINIQUE N. THOMAS (SBN 231464)
dthomas@kdvlaw.com
425 California Street, Suite 2100
San Francisco, California  94104
Telephone:   (415) 926-7600
Facsimile:   (415) 926-7601

Attorneys for Defendants
ADAMS & ASSOCIATES, INC., ROY A. ADAMS, LESLIE G. ADAMS, DANIEL G. NOREM, JOY CURRY NOREM and THE DANIEL NOREM REVOCABLE TRUST DATED JANUARY 9, 2002

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| CAROL FOSTER and THEO FOREMAN, on behalf of themselves, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ADAMS & ASSOCIATES, INC., ROY A. ADAMS, LESLIE. G. ADAMS, DANIEL B. NOREM, JOY CURRY NOREM and THE DANIEL NOREM REVOCABLE TRUST DATED JANUARY 9, 2002,<br><br>Defendants. | Case No.: 3-18-cv-02723-JSC<br><br>Action Filed: May 9, 2018<br><br>**DEFENDANTS' MOTION IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

## I. INTRODUCTION

The Court should reject Plaintiffs' efforts to install Carol Foster as a class representative because she has demonstrated vindictiveness and a propensity to reject reasonable dispute resolutions.  The case law is unequivocal on this point: Carol Foster's animus makes her unfit to serve as a class representative.

1

## II. SUMMARY OF FACTS

### A. AAI's Transition

This action arises out of AAI's transition to an employee-owned company. Second Amended Complaint ¶ 2. In September 2012, AAI's prior owners—Roy and Leslie Adams—sold their interest in AAI to a newly established employee stock ownership plan ("ESOP"). *Id.* ¶ 27. AAI retained Alan Weissman as the trustee for the ESOP. *Id.* ¶ 28.

Plaintiffs allege that the valuation obtained by Weissman of AAI's stock for the ESOP's purchase was too high. *Id.* ¶ 73. They base this allegation on a variety of factors that they assert give rise to the reasonable presumption that the valuation was incorrect, including: the decline in the stock's value after the ESOP transaction, AAI's alleged "dependence of Job Corps contracts, the competitive bidding process for Job Corps contracts, the impending loss of the Gadsen and Sargent Shriver Job Corps Center contracts, Job Corps' budget problems, or the fact that [AAI] no longer qualified for small business set-aside contracts." *Id.* ¶¶ 70 and 74.

On October 4, 2013, the Form 5500 for the ESOP's initial 2012 Financial Year was filed with the Department of Labor. *Id.* ¶ 71.  Plaintiffs rely on this report in the Complaint, allege that it should have placed the Director Defendants on notice of purported errors in the valuation, and do not and cannot allege that they did not receive this information contemporaneously with its filing with the Department of Labor as required under 29 USC §1024(b)(3). *Id.* ¶¶ 69-71. The Form 5500 specifically discloses the transaction and resulting drop in stock price that Plaintiffs allege as a violation of ERISA. *Id.* ¶ 71.

In addition to the purportedly improper sale of stock to the ESOP, Plaintiffs allege that Weissman should not have been retained as the trustee for the ESOP, because in June 2012 Weissman had been sued for impropriety in connection with another company's ESOP. *Id.* ¶ 30. Plaintiffs also allege that in 2016, Weissman was charged criminally for embezzlement, which he was convicted of on June 7, 2017. *Id.* ¶ 31. Other than allegations related to the ESOP's purchase of AAI stock at a purportedly inflated price, Plaintiffs do not allege that Weissman engaged in any wrongful conduct in connection with AAI or the ESOP.

**B.  Carol Foster's Animus And Refusal to Sign Documents**

Foster was a Security Advisor for AAI at the Treasure Island Job Corps Center in San Francisco, California from February 4, 2015 to March 16, 2018. Second Amended Complaint ¶ 7.  While employed by AAI, Foster had a series of disputes with her supervisors. Pagni Decl. ¶ 3-6.

After receiving her 90 day staff evaluation on May 7, 2015, Foster submitted an addendum rebutting the areas of improvement identified in the evaluation. *Id.*, Exhibit 1.  Foster responded to the evaluation by alleged her supervising coordinator engaged in "unprofessional and unethical behaviors of bullying the trainees . . . ." and was "unprofessional, immature, agitated, and short . . . ." *Id.*, Ex. 1 at 2, 3.  Foster stated in the addendum she would not have signed the evaluation if she knew it was an option. *Id.*, Ex. 1 at 1.

When Foster received her annual evaluation on February 24, 2016, Foster again submitted addendums rebutting the evaluation and refused to sign the evaluation. *Id.* ¶ 4.  Foster's written responses indicate she felt persecuted by her supervisors.  On February 28, 2016, Foster submitted a "pre-addendum" to the yearly evaluation, stating the evaluation "contained unsubstantiated controversially biased statements . . . with no validity at all to the false allegations." *Id.*, Ex.2 at 7. Foster stated the evaluation contained "unreasonably low scores" and "lack[ed] substance, truth and proper facts . . . ." *Id.*  Foster stated she did not sign the evaluation. *Id.*  Then, on June 22, 2016, Foster submitted a second, lengthy, page by page rebuttal of her annual evaluation and requested her evaluation be revised. *Id.*, Ex. 2 at 8-14.  In the second rebuttal, Foster called the evaluation "a travesty of justice" and "blatantly retaliatory" because she allegedly had complained of "harassment" and "having to work in a hostile work environment." *Id.*, Ex. 2 at 8.

In response to the rebuttals submitted by Foster, AAI revised Foster's review and gave her substantive feedback. *Id.*, Ex. 2 at 15-17.  However, Foster was not satisfied and continued to refuse to sign the annual evaluation. *Id.*, Ex. 2 at 20.  Foster submitted a third rebuttal calling the feedback provided by AAI "unlawful and unethical." *Id.*, Ex. 2 at 18.  Foster stated AAI's response was an "abuse of [its] authority and an attempt to blatantly retaliate against [her],

humiliate [her] and cause employment instability for [her] . . . ." *Id.* Foster repeated her position that AAI had "chosen to target [her] for continual harassment." *Id.*

Foster's negative feelings and distrust towards AAI continued throughout her employment and extended beyond the performance evaluations. On December 27, 2017, Foster received an ergonomic evaluation because she was experiencing lower back pain. *Id.*, Ex. 3. The evaluation included recommendations for improving her workstation and alleviating her pain. *Id.*, Ex. 3 at 3. Foster refused to sign the ergonomic evaluation form, even though the evaluation was beneficial for her. *Id.*, Ex. 3 at 4.

On March 15, 2018, Foster submitted a resignation letter detailing how she detested her supervisors. *Id.*, Exhibit 4. Foster stated her supervisor "continue[d] to harass and retaliate again [her] . . . ." and was "unqualified, unprofessional, unfair and immature. . . ." *Id.*, Ex. 4 at 1. Foster also alleged her supervisor manipulated the values of her annual evaluations and stated she requested the supervisor "refrain from doing it again this year." *Id.* Foster stated she would "exercise [her] 1st and 2nd Amendment Rights by reporting her abuse to various Federal Agencies . . . ." *Id.* Foster claimed her supervisor tried to provoke her in hopes she would "rebel in an insubordinate manner" to "justify [the supervisor's] illegal and unprofessional tactics and actions and give her just cause to manipulate [Foster's] Yearly Evaluation again." *Id.* Foster also alleged nepotism at the job site and called AAI management "just as guilty" as her supervisor. *Id.*, Ex. 4 at 2.

**C. Plaintiffs' Claims**

Plaintiffs filed this action on May 9, 2018—five and a half years after the ESOP purchased AAI's stock. Complaint. Plaintiffs allege five causes of action:

1. The First Cause of Action against Roy and Leslie Adams, Daniel Norem, and the Norem Trust alleges that the ESOP's purchase of AAI stock was a prohibited transaction under 29 USC §1106(a) (Second Amended Complaint ¶¶ 92-98);

2. The Second Cause of Action against Roy and Leslie Adams, Daniel Norem, and the Norem Trust alleges that the ESOP's purchase of AAI stock was a prohibited transaction under 29 USC §1106(b) (*Id.* ¶¶ 99-105);

3. The Third Cause of Action against Roy and Leslie Adams and Daniel Norem alleges that they violated their duty of prudence under 29 USC §1104(a) by failing to conduct an adequate investigation into Weissman before retaining him as the ESOP's trustee (*Id.* ¶¶ 106-116);

4. The Fourth Cause of Action against AAI alleges that AAI failed to notify its employees of who has replaced Weissman as trustee (*Id*. ¶¶ 117-128); and

5. The Fifth Cause of Action against Roy and Leslie Adams, Daniel Norem, the Norem Trust, and AAI seeks declaratory relief in the event that an agreement with Weissman contains certain indemnity terms that are prohibited by ERISA (*Id*. ¶ 129-133).

## III. ARGUMENT

The party seeking class certification bears the burden of demonstrating that it has met each of the requirements of Rule 23.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  The trial court must conduct a "rigorous analysis" to determine whether the requirements have been met, rejecting any "conclusory or generic allegations."  *Id*.; *see Burkhalter Travel Agency v. Macfarms Int'l, Inc*., 141 F.R.D. 144, 152 (N.D. Cal. 1991).

Federal Rule of Civil Procedure 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class."  This requirement is imposed because "[a] lead plaintiff in a class action owes a fiduciary duty to the class . . . [and] must demonstrate an ability to discharge the fiduciary duty to the class."  *In re Quintus Sec. Litig*., 148 F. Supp. 2d 967, 970 (N.D. Cal. 2001).  A class representative cannot possess interests that conflict with the interests of the class.  *Id*. at 970-71.  Critically, a proposed class representative cannot possess animus that might cause her to reject a "suitable settlement" for the class.  *Kayes V. P. Lumber Co*., 51 F.3d 1449, 1464 (9th Cir. 1995).

### Carol Foster Is Not An Adequate Class Representative

Foster's personal feud against AAI and its leadership began soon after she was hired and continues to today.  During Foster's first 90 days at AAI, she had a performance review.  When she did not like some minor, constructive criticism she received, she submitted a single-spaced

1  rebuttal that spanned over three pages.  Pagni Decl., Ex. 1.  She called her supervisor

2  "unprofessional" and "immature," among other things, and even complained that a copy of her

3  evaluation was not placed in her hand directly:

4  > Throughout the entire review, Coordinator Zairalene attitude became more

5  > unprofessional, immature, agitated and short each time I asked her to explain her

6  > findings . . . Manager Daniel Marweg asked Coordinator Zaralene to make a copy

7  > of the signed evaluation to give to me.  She left and when she returned instead of

8  > handing me my copy, she placed the copy on the table and again asked to be

9  > excused and Manager Daniel Marweg allowed her to leave.

10  *Id.*, Ex. 1 at 3.  Foster maintained that she should have never signed her performance evaluation

11  and would not have done so if she knew did not have to ("I signed the evaluation not knowing

12  that I did not have to sign it if I disagreed with it.").  *Id.*, Ex. 1 at 1.

13  In the time between the 90-day evaluation and her annual evaluation in February of the

14  following year, she lodged numerous complaints against her supervisor, her manager, the Human

15  Resources Director, and nearly every coworker she had at AAI.  She refused to sign the

16  evaluation and threatened legal action because she disagreed with the evaluation:

17  > Because of the intentional false allegations formed against me in my

18  > evaluation, I refused to sign the evaluation.  This evaluation was blatantly

19  > orchestrated in retaliation against me for attempting to lodge a formal complaint

20  > against some of Job Corps employees, (**a complaint that was never properly**

21  > **investigated by you Dan Marweg, nor Human Resource Director, Joy**

22  > **Graber**) who caused me to have to work in a Hostile Work Environment

23  > consisting of constant harassment and disrespect by several employees at Treasure

24  > Island Job Corps.

25  > Dan, I am in the process of legally responding not only to the formal

26  > complaint of having to work in a hostile work environment but the complaint will

27  > now include the adverse blatant retaliatory evaluation presented to me by you.

28  > You will receive a legal response to the evaluation as well as the formal complaint

in the near future.

*Id.*, Ex. 2 at 7 (emphasis in original).  Foster's threats arose from a benign evaluation that concluded with a performance rating of "Meets Expectations."  *Id.*, Ex. 2 at 6.

Despite the evaluation's favorable conclusion, Foster refused to sign it and instead lodged another series of complaints, accusations, and rebuttals.  In a seven-page email dated June 22, 2016, she complained about "anonymous accusers" and a "travesty of justice."  *Id.*, Ex. 2 at 8.  The Human Resources Director responded to her email and assured her that her rebuttal was "studied, discussed and compared to [her] annual evaluation in detail."  *Id.*, Ex. 2 at 15.  The response addressed Foster's accusations point-by-point and increased her overall evaluation score by one point, from 57 to 58.  *Id.*, Ex. 2 at 15-17.

Foster refused to sign her revised, annual evaluation and submitted another three-page rebuttal in which she now accused the Human Resources Director of retaliating against her and humiliating her:

> Ms. Graber, I view your actions in this matter as another abuse of your authority and an attempt to blatantly retaliate against me, humiliate me and cause employment instability for me; all because I exercised my rights to make a formal complaint of having to work in a hostile work environment.

*Id.*, Ex. 2 at 18.  Like the initial evaluation, the revised evaluation concluded that Foster's overall performance met expectations – a favorable conclusion.  *Id.*, Ex. 2 at 17.

When Foster complained about back pain[1] she attributed to improper seating at her workstation, AAI arranged for an ergonomic evaluation of her workstation.  *Id.*, Ex. 3.  Even though the evaluation resulted in Foster receiving a new chair and helpful recommendations, she refused to sign the ergonomic evaluation form.  *Id.*, Ex. 3 at 4.

By March 15, 2018, Foster resigned in a four-and-a half page, caustic email sent to her supervisor and the Human Resources Director.  *Id.*, Ex. 4.  She accused AAI of maintaining discriminatory and segregated break rooms and accused a supervisor of making "racially

---

[1] Foster is currently receiving workers' compensation payments for an injury she incurred at a job prior to her employment at AAI.  Thomas Decl., Exhibit 1 at 14:24-15:12. She also applied for workers' compensation benefits while employed by AAI.

7

Case 3:18-cv-02723-JSC   Document 80   Filed 07/18/19   Page 8 of 10

motivated comments" to her. *Id.*, Ex. 4 at 3. She concluded by threatening to exercise her "1st and 2nd Amendment Rights" to report the supervisor to a "higher authority." *Id.*, Ex. 4 at 1.

Foster's recent deposition testimony provides further evidence that she remains fixated on her animosity toward AAI, well over a year after her employment with AAI ended:

> QUESTION: Okay. Let's talk about your work environment in 2016. Did you submit any complaints about people in 2016?
>
> MR. BARTON: Objection to the form. I think it's confusing given she just testified she can't place the dates.
>
> MS. THOMAS: Okay
>
> THE WITNESS: And as I said, honestly, being honest, <u>I am still traumatized by what I went through</u>. I can't recollect unless I have my pile of papers of what I made complaints against them for, because it was numerous complaints.

Thomas Decl., Exhibit 1 at 35:2-13 (emphasis added).

The case law is clear that a plaintiff who has such longstanding animus against the defendants should not serve as a class representative since "personal vendetta intrudes unavoidably upon the fiduciary duty of the class representative." *Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 506 (S.D.N.Y. 1976); *Bibiji Inderjit Kaur Puri v. Sopurkh Kaur Khalsa*, 674 F. App'x 679, 683 (9th Cir. 2017) (proposed class representatives evidenced a degree of vindictiveness toward defendants that rendered them inadequate class representatives.); *Smith v. Ayres*, 977 F.2d 946, 949 (5th Cir. 1992) (proposed class representative disqualified because of his "virulent antagonism" for defendant); *Kamerman v. Ockap Corp.*, 112 F.R.D. 195, 197 (S.D.N.Y. 1986) ("an unduly antagonistic client, or a litigant who bears a grudge against the defendant is not an appropriate class representative").

Courts reject these plaintiffs as class representatives because personal vendettas could stand in the way of a favorable settlement. *Kayes*, 51 F.3d at 1464; *Larson v. Damke*, 900 F.2d 1363, 1367 (9th Cir. 1990). In *Parrish v. NFL Players Ass'n & NFL Players Inc.,* No. C 07-00943 WHA, 2008 U.S. Dist. LEXIS 120158, at *23-24 (N.D. Cal. Apr. 29, 2008), a proposed

DEFENDANTS' MOTION IN OPPOSITION TO
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION                          3:18-CV-02723 JSC

class representative "made or adopted numerous extreme remarks" and "made many racially charged comments" about the defendant. Judge William Alsup rejected the proposed class representative, holding that he was an inadequate representative because he exhibited vindictiveness towards defendants and might be "a roadblock to any favorable settlement." *Id.*

Foster has already shown that there is a strong likelihood that she will refuse to sign a suitable settlement offer because she refused to sign several of her benign performance evaluations and a helpful ergonomic evaluation.[2] Foster's animus toward Defendants was also long lasting and continued throughout the three years she worked for AAI, as evidenced by her acerbic resignation letter. In her resignation letter, Foster continued to allege that her supervisor "continue[d] to harass and retaliate against [her]," three years after first raising those allegations. Foster also maintained the allegation that she was being persecuted by her supervisors. Pagni Decl., Exhibit 4. Foster alleged nepotism at the job site and called AAI management "just as guilty" as her supervisor. *Id.* Regardless of whether Foster's allegations have any truth to them, the material fact is that Foster harbors undeniable animus toward Defendants. Foster is unable to approach her claims with the reasonableness required of a class representative charged with exercising fiduciary duties on behalf of a class. Foster's vindictiveness and inability to compromise would be disastrous for settlement negotiations.

Another reason for disqualifying Foster from serving as a class representative is the blatant conflicts that she has created between herself and the putative class members that she seeks to represent. Foster has antagonized and created conflicts with numerous individual, putative class members, including all of the coworkers, supervisors, managers, and executives that she has accused of unlawful conduct.

///

///

///

///

///

---

[2] Foster signed a 2017 performance evaluation, but that signature stands by itself as an outlier.

## IV. CONCLUSION

For the reasons articulated above, Carol Foster is not an adequate class representative under Federal Rule of Civil Procedure 23(a)(4). Defendants respectfully request an order denying Plaintiffs' motion for class certification with respect to the proposed class representatives.

DATED:  July 18, 2019                         KAUFMAN DOLOWICH & VOLUCK, LLP


/s/Dominique N. Thomas
Tad A. Devlin
Kate Collins
Kartikey Pradhan
Dominique N. Thomas
Attorneys for Defendants ADAMS & ASSOCIATES, INC., ROY A. ADAMS, LESLIE G. ADAMS, DANIEL G. NOREM, JOY CURRY NOREM and THE DANIEL NOREM REVOCABLE TRUST DATED JANUARY 9, 2002

4820-4405-5964, v. 1