1
2
3
4
5
6        UNITED STATES DISTRICT COURT

7        NORTHERN DISTRICT OF CALIFORNIA

8

9    CAROL FOSTER, et al.,                    Case No. 18-cv-02723-JSC

10            Plaintiffs,
                                              **ORDER RE: CROSS-MOTIONS FOR**
11        v.                                  **SUMMARY JUDGMENT**

12   ADAMS AND ASSOCIATES, INC., et al.,      Re: Dkt. Nos. 102 & 137

13            Defendants.

14

15       Carol Foster and Theo Foreman bring a class action under the Employee Retirement

16   Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, on behalf of participants and

17   beneficiaries of the Adams and Associates Employee Stock Ownership Plan. Plaintiffs allege that

18   Adams and Associates, Inc., Roy A. Adams, Leslie G. Adams, Daniel B. Norem, Joy Curry

19   Norem, and The Daniel Norem Revocable Trust Dated January 9, 2002, (collectively

20   "Defendants") breached their fiduciary duty to Plaintiffs, participated in prohibited transactions,

21   failed to make required disclosures, and improperly agreed to indemnification.  The parties' cross-

22   motions for summary judgment are now pending before the Court.[1]  (Dkt. Nos. 102 & 137.)

23   Plaintiffs have moved for partial summary judgment on their breach of fiduciary duty claim and

24   ERISA Section 406(a) prohibited transaction claim, and Defendants have moved for summary

25   judgment on all of Plaintiffs' claims.  Having considered the parties briefs and having had the

26   benefit of oral argument on May 14, 2020, the Court DENIES Plaintiffs' motion for summary

27

28   ───────────────
     [1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. §
     636(c).  (Dkt. Nos. 6, 20, 44, 53, 54.)

judgment and GRANTS in part and DENIES in part Defendants' motion for summary judgment

for the reasons stated below.

## BACKGROUND

This action concerns the Adams and Associates, Inc. Employee Stock Ownership Plan (the "ESOP"). On October 25, 2012, the ESOP purchased 100% of the stock of Adams and Associates, Inc. for $33.5 million from Defendants Roy Adams, Leslie Adams, and the Daniel Norem Revocable Trust. (Dkt. No. 70 at ¶ 1; Dkt. No. 102-12.[2])   Adams and Associates is the plan sponsor and Plan Administrator of the ESOP. (Dkt. Nos. 102-2; 102-12.)  Defendants Roy Adams, Leslie Adams, and Daniel Norem are officers and directors of Adams and Associates and members of the ESOP's Plan Committee.  (Dkt. No. 70 at ¶¶ 10-12.)  The Plan Committee is the ESOP's "named fiduciary."  (Dkt. No. 102-48 at 5.)  Adams and Associates hired Alan Weissman, now-deceased, to be the ESOP Trustee.  (Dkt. No. 70 at ¶ 2.)

## EVIDENTIARY OBJECTIONS

Both parties filed evidentiary objections.  (Dkt. Nos. 120, 141, 146.)  These separate filings violate Civil Local Rule 7-3(c), which requires that "[a]ny evidentiary and procedural objections to the motion . . . be contained within the [opposition] brief or memorandum." N.D. Cal. Civ. L.R. 7-3(a). "Courts in this district regularly strike separately-filed evidentiary objections and responses for violating Local Rule 7-3." *Go Daddy Operating Co., LLC v. Ghaznavi*, No. 17-CV-06545-PJH, 2018 WL 1091257, at *14 (N.D. Cal. Feb. 28, 2018) (collecting cases re: same). The Court thus STRIKES the parties' separate statements of evidentiary objections. (Dkt. Nos. 120, 141, 146.)

Within their reply brief (Dkt. No. 128) and their opposition brief (Dkt. No. 140), Plaintiffs object to declarations submitted by Dan Norem and Roy Adams under the sham affidavit rule. Under the sham affidavit rule, a "party cannot create an issue of fact by an affidavit contradicting ... prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). To apply the rule, the court must "make a factual determination that the contradiction [is] actually a sham"

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.)

United States District Court
Northern District of California

and conclude that the inconsistency is "clear and unambiguous." *Van Asdale v. Int'l Game Tech.*, 577 F.3d at 989, 998 (9th Cir. 2009). A declaration that "elaborates upon, explains, or clarifies prior testimony" does not trigger the exclusion. *Id.* (citation omitted).  Plaintiffs insist that the declarations Mr. Norem and Mr. Adams submitted in support of Defendants' summary judgment briefing are sham affidavits because the declarations contradict their deposition testimony and seek to embellish the factual record after both Defendants testified that they could not remember certain facts during their deposition.  The Court need not resolve whether either declaration should be stricken as a sham because the Court did not consider the declarations in resolving the summary judgment motions.

## DISCUSSION

### I.  Breach of Fiduciary Duty-Based Claims

The parties cross-move for summary judgment on Plaintiffs' first and third claims for relief for prohibited transaction under ERISA Section 406(a), 29 U.S.C. §1106(a) (first claim for relief), and breach of fiduciary duty under ERISA Section 404(a), 29 U.S.C. § 1104(a) (third claim for relief), and Defendants move for summary judgment on Plaintiffs' other prohibited transaction claim under ERISA Section 406(b), 29 U.S.C. §1106(b) (second claim for relief).  The theory underlying all these claims is the same:  Mr. Norem and Mr. Adams, who were members of Adams and Associates Board of Directors and members of the ESOP Committee, failed to monitor the ESOP Trustee, Mr. Weissman by failing to disclose to the Trustee material information regarding small business set asides, the potential for losing contracts as a result of small business set asides, and declining student enrollment, and in doing so breached their fiduciary duty. At oral argument, Plaintiffs clarified that the alleged breach of fiduciary duty through the failure to monitor is the breach of fiduciary duty underlying all three of these claims.  That is, Plaintiffs maintain that Mr. Adams and Mr. Norem (hereafter "the Director Defendants") breached their fiduciary duty through their failure to monitor and also thereby engaged in a prohibited transaction as fiduciaries.

### A.  Plaintiffs' ERISA Section 404(a) Breach of Fiduciary Duty Claim

ERISA, Section 404(a), requires fiduciaries to discharge their duties "with respect to a plan

3

United States District Court
Northern District of California

1    solely in the interest of the participants and beneficiaries and…for the exclusive purpose of: []

2    providing benefits to participants and their beneficiaries; and [] defraying reasonable expenses of

3    administering the plan." 29 U.S.C. § 1104(a)(1)(A). Defendants insist that Plaintiffs' fiduciary

4    duty claim fails for three reasons: (1) Plaintiffs have not submitted evidence sufficient to support a

5    finding that there was a predicate breach of fiduciary duty; (2) the Director Defendants did not

6    have a duty to disclose the at-issue information to Mr. Weissman; and (3) even if the Director

7    Defendants had a duty to disclose, no reasonable trier of fact could find that the information they

8    allegedly failed to disclose was material. Plaintiffs cross-move for summary judgment contending

9    that the Director Defendants breached their duty to monitor Mr. Weissman as a matter of law

10   when they provided Mr. Weissman and his advisors with flawed information regarding Adams

11   and Associates and when they failed to disclose certain information regarding Adams and

12   Associates.

13           **1) Breach of the Duty to Monitor is a Derivative Claim**

14           As a threshold matter, the Court must resolve whether a breach of the duty to monitor a

15   fiduciary requires a predicate breach by the fiduciary. Plaintiffs insist that it does not, but do not

16   cite any authority for this proposition. While the Ninth Circuit has not squarely addressed this

17   issue, district courts within this circuit and the Second Circuit Court of Appeals have all held that

18   a breach of the duty to monitor is a derivative claim. *See Rinehart v. Lehman Bros. Holdings Inc*.,

19   817 F.3d 56, 68 (2d Cir. 2016) ("Plaintiffs cannot maintain a claim for breach of the duty to

20   monitor ... absent an underlying breach of the duties imposed under ERISA by the Plan

21   Committee Defendants.") (internal quotation marks and citation omitted); *Dorman v. Charles*

22   *Schwab Corp*., No. 17-CV-00285-CW, 2018 WL 6803738, at *7 (N.D. Cal. Sept. 20, 2018) ("The

23   duty to monitor claim is essentially derivative of the breach of fiduciary duty claim" against the

24   fiduciaries whom the defendants allegedly failed to monitor); *White v. Chevron Corp*., No. 16-CV-

25   0793-PJH, 2016 WL 4502808, at *19 (N.D. Cal. Aug. 29, 2016) (holding that a duty to monitor is

26   "wholly dependent" on an underlying breach of fiduciary duty by the fiduciaries who were

27   allegedly not sufficiently monitored); *Hudson v. Nat'l Football League Mgmt. Council*, No. 1:18-

28   CV-4483-GHW, 2020 WL 1547467, at *7 (S.D.N.Y. Mar. 31, 2020) (holding that a breach of the

1  duty to monitor  the Board Defendants "requires a predicate breach of fiduciary duty by the Board

2  Defendants.")

3       The Court thus turns to whether Plaintiffs have identified evidence sufficient to support a

4  finding that Mr. Weissman breached his fiduciary duty.  There is no support for Plaintiffs'

5  argument that Mr. Weissman breached his fiduciary duty because he pled guilty to embezzling

6  funds from other ESOPs around the time of the ESOP Transaction. Nor is the Court persuaded by

7  Plaintiffs' circular argument that because the selling shareholders engaged in a prohibited

8  transaction and Mr. Weissman acted on behalf of the plan with respect to the transaction, he

9  breached his fiduciary duty by engaging in a prohibited transaction.  Plaintiffs are essentially

10  arguing that they prevail on the breach of fiduciary duty claim because they prevail on the

11  prohibited transaction claim and they prevail on the prohibited transaction claim because they

12  prevail on the breach of fiduciary duty claim. Not so.

13       At oral argument, Plaintiffs suggested that Mr. Weissman breached his fiduciary duty

14  because he was not aware of several material adverse developments so by definition his

15  investigation not thorough.  With respect to an ESOP transaction, ERISA fiduciaries "are obliged

16  at a minimum to engage in an intensive and scrupulous independent investigation of their options

17  to insure that they act in the best interests of the plan beneficiaries." *Howard v. Shay*, 100 F.3d

18  1484, 1488–89 (9th Cir. 1996) (internal citation omitted).  Where, as here, the trustee fiduciary

19  secures an independent assessment from a financial advisor, to assist in the ESOP valuation the

20  "fiduciary must (1) investigate the expert's qualifications, (2) provide the expert with complete

21  and accurate information, and (3) make certain that reliance on the expert's advice is reasonably

22  justified under the circumstances." *Id*. at 1489 (9th Cir. 1996) (internal citations omitted).

23  Defendants insist that because Mr. Weissman engaged Eureka Capital, a valuation firm, he cannot

24  have breached his fiduciary duty.  However, *Howard* clarifies that while "securing an independent

25  assessment from a financial advisor or legal counsel is evidence of a thorough investigation, it is

26  not a complete defense to a charge of imprudence." *Howard*, 100 F.3d at 1489 (internal citation

27  omitted).

28       The Court cannot conclude that no reasonable trier of fact could find that Mr. Weissman

United States District Court
Northern District of California

5

breached his fiduciary duty by failing to provide Eureka Capital with material, accurate information.  Eureka Capital analyst, Josh Edwards, who led the valuation team, testified generally that "management discussed with Eureka the nature of the contracts, the renewal process and the fact that an incumbent operator has a – policies allow for a protest or a challenge or an appeal to the reaward of the impending award that process their procedural processes for that." (Dkt. No. 119 at ECF 23-24, Edwards Depo. at 112:18-23.)  But he could not recall being advised of specific bid protests (*Id*. at 113:17-190), that the Department of Labor had made changes to its policies regarding small business set-asides (*Id*. at 55:6-11), that Adams and Associates might lose the Shrivers' Job Corp Center contract (*Id*. at 56:1-5), or the June 2012 Boyne Capital letter of intent which included a lower offer than the April 2012 letter of intent referenced in Eureka's valuation (Dkt. No. 143-5 at ECF 9, Edwards Depo. at 77:23-78:9).  Whether Mr. Weisman could have and should have known about the information the Director Defendants allegedly failed to disclose is a question the Court will have to resolve at trial.  Accordingly, Plaintiffs' motion for summary judgment must be denied as they have not shown as a matter of law Mr. Weissman's predicate breach of fiduciary duty.

As the Court also cannot say as a matter of law that Mr. Weissman did not breach his fiduciary duty based on his failure to investigate and discover the information the Director Defendants allegedly withheld, the Court must consider whether—assuming Mr. Weissman did breach his fiduciary duty (and thus resolving all genuine disputes of fact in Plaintiffs' favor)—no reasonable trier of fact could find that the Director Defendants breached their fiduciary duty to monitor Mr. Weissman.

### 2) Scope of the Duty to Monitor/Disclose

Section 404(a) does not itself contain a duty to monitor.  At oral argument, Plaintiffs argued that the nature of the fiduciary duty which the Director Defendants allegedly breached is spelled out in ERISA Section 405, 29 U.S.C. § 1105.  However, Plaintiffs do not plead a claim under ERISA Section 405, which generally provides for liability for co-fiduciary breaches.[3]

---

[3] The Court will not consider Plaintiffs' ERISA Section 405 argument raised for the first time at oral argument. *See Booth v. United States*, 914 F.3d 1199, 1206 (9th Cir. 2019) (noting that

United States District Court
Northern District of California

1    Rather, Plaintiffs have pled a Section 404 breach of fiduciary duty claim which courts have

2    interpreted as including a duty to monitor.  *See Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th

3    Cir. 2009).  The duty to monitor, however, is limited to retention of the trustee: "We have

4    accordingly recognized that where members of an employer's board of directors have

5    responsibility for the appointment and removal of ERISA trustees, those directors are themselves

6    subject to ERISA fiduciary duties, albeit only with respect to trustee selection and retention."  *Id*.

7    at 1076; *see also* 29 C.F.R. § 2509.75-8 at FR-17 ("[a]t reasonable intervals the performance of

8    trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as

9    may be reasonably expected to ensure that their performance has been in compliance with the

10   terms of the plan and statutory standards, and satisfies the needs of the plan. No single procedure

11   will be appropriate in all cases; the procedure adopted may vary in accordance with the nature of

12   the plan and other facts and circumstances relevant to the choice of the procedure.").  Here,

13   Plaintiffs seek to extend the duty to monitor to a duty to disclose.

14          As a general rule, "[t]he duty of loyalty is one of the common law trust principles that

15   apply to ERISA fiduciaries, and it encompasses a duty to disclose."  *Washington v. Bert Bell/Pete

16   Rozelle NFL Ret. Plan*, 504 F.3d 818, 823 (9th Cir. 2007) (internal citation omitted). This duty of

17   loyalty includes the "obligation to convey complete and accurate information material to the

18   beneficiary's circumstance, even when a beneficiary has not specifically asked for the

19   information." *Barker v. Am. Mobil Power Corp*., 64 F.3d 1397, 1403 (9th Cir. 1995).  Plaintiffs

20   seek to extend this duty to disclose from ERISA trustees—to whom it traditionally applies—to the

21   fiduciaries who have appointed them.  In particular, Plaintiffs allege that the Director Defendants

22   breached their duty to monitor when they failed to disclose the following documents and

23   information to Mr. Weissman prior to the ESOP transaction: (1) the Department of Labor's small

24   business set-aside policy; (2) the application of the Department of Labor's Rule of Two; (3) the

25   small business set-asides for three Adams and Associates Job Corps Center contracts (Gadsden,

26   Shriver, Woodland), and (4) efforts to find small businesses to operate two other Adams and

27

28   _____

     arguments raised for the first time at oral argument are waived).

1    Associates Centers (Joliet, Little Rock).

2        Defendants first counter that the duty to monitor does not include a duty to disclose

3    nonpublic, albeit material, information. *See Rinehart v. Lehman Bros. Holdings Inc*., 817 F.3d 56,

4    68 (2d Cir. 2016) ("ERISA does not impose a duty on appointing fiduciaries to keep their

5    appointees apprised of nonpublic information"). And second, even if there was a duty to disclose

6    material nonpublic information, they had no duty to disclose the specific information Plaintiffs

7    identify because it was either publicly available, or disclosed in other information they provided to

8    Mr. Weissman, and, in any event, was not material.

9        As to the first argument, the Court is not presently persuaded that if the Director

10   Defendants possessed material, nonpublic information that they knew Mr. Weissman did not

11   possess they had no duty to ensure—through their duty to monitor—that Mr. Weissman became

12   aware of that information in connection with the ESOP Transaction. *Rinehart* involved a publicly

13   traded company and thus raised concerns regarding insider trading. 827 F.3d at 64-65. More

14   persuasive is *Acosta v. Saakvitne*, 355 F. Supp. 3d 908 (D. Haw. 2019)—a case involving a

15   private company—where the appointing trustee defendants argued that they did not have a duty to

16   disclose material information or information already known to the trustee. (*Id.* at 922.)

17   Interestingly, the appointing defendants did not argue that they did not have a duty to disclose

18   material information not known to the trustee. In any event, the district court held that the

19   plaintiffs sufficiently stated a failure to monitor claim by alleging that the appointing defendants

20   knowingly provided the trustee with flawed information, thus "permitting him to overstate the

21   value of the Company's shares, and permitting him to direct the ESOP to purchase the shares for

22   more than they were worth." *Id.* at 923. While *Saakvitne* involved the affirmative disclosure of

23   inaccurate information, and this case is about a failure to disclose, the end result is the same: the

24   Director Defendants (or, in the case of *Saakvitne*, the appointing defendants) allowed the trustee to

25   misvalue the shares of a private company based on an inaccurate picture of the company's

26   financial status.

27       As for Defendants' second argument—that the nondisclosed information was neither

28   material nor nonpublic—drawing all reasonable inferences in Plaintiffs' favor, there are genuine

United States District Court
Northern District of California

8

1   disputes of material fact that preclude the entry of summary judgment in Defendants' favor.  Even

2   where, as here, the Court is the ultimate finder of fact, the Court cannot evaluate the

3   persuasiveness of evidence or make findings of fact at summary judgment.  *See Kearney v.*

4   *Standard Ins. Co*., 175 F.3d 1084, 1095 (9th Cir. 1999) ("In a trial on the record, but not on

5   summary judgment, the judge can evaluate the persuasiveness of conflicting testimony and decide

6   which is more likely true."); *see also Thompson v. Mahre*, 110 F.3d 716, 719 (9th Cir. 1997)

7   ("[T]here is no such thing as ... findings of fact, on a summary judgment motion.").

8        Accordingly, the parties' cross-motions for summary judgment on the failure to monitor

9   breach of fiduciary duty claims are denied.

10       **B.  Plaintiffs' ERISA Section 406(a) Prohibited Transaction Claim**

11       As relevant here, ERISA § 406(a), 29 U.S.C. § 1106(a), prohibits the following

12  transactions between a plan and party in interest:

13           (1) A fiduciary with respect to a plan shall not cause the plan to engage in a
             transaction, if he knows or should know that such transaction constitutes a
14           direct or indirect--

15           (A) sale or exchange, or leasing, of any property between the plan and a party
             in interest;
16           …
             (D) transfer to, or use by or for the benefit of a party in interest, of any assets
17           of the plan;

18  29 U.S.C. § 1106(a)(1)(A), (D). "ERISA § 406(a) begins with the premise that virtually all

19  transactions between a plan and a party in interest are prohibited, unless a statutory or

20  administrative exemption applies."  *Kanawi v. Bechtel Corp*., 590 F. Supp. 2d 1213, 1222 (N.D.

21  Cal. 2008); *see also Del Castillo v. Cmty. Child Care Council of Santa Clara Cty., Inc*., No. 17-

22  CV-07243-BLF, 2019 WL 6841222, at *6 (N.D. Cal. Dec. 16, 2019) ("ERISA § 406(a)'s

23  prohibited transactions are broad, and they apply to many common transactions ERISA plans

24  routinely engage in.").

25       Transactions are prohibited under ERISA § 406(a) unless they satisfy one of the statutory

26  exemptions set forth in Section 408.  *See* 29 U.S.C. § 1108.  As relevant here, Section 408(e)

27  contains a statutory exemption to these prohibited transactions with respect to ESOPs, permitting

28  "the acquisition or sale by a plan of qualifying employer securities ... (1) if such acquisition [or]

9

1   sale ... is for adequate consideration." 29 U.S.C. § 1108(e). "[A]dequate consideration" is

2   elsewhere defined as "the fair market value of the asset as determined in good faith by a fiduciary

3   or fiduciaries." *See* 29 U.S.C. § 1008(b)(17)(B)(ii).

4       In *Harris Trust & Savings Bank v. Salomon Smith Barney Inc*., 530 U.S. 238, 251 (2000),

5   the Supreme Court held that a party on the receiving end of a prohibited party-in-interest

6   transaction may be liable under ERISA if it "had actual or constructive knowledge of the

7   circumstances that rendered the transaction unlawful." "Those circumstances, in turn, involve a

8   showing that the plan fiduciary, with actual or constructive knowledge of the facts satisfying the

9   elements of a" prohibited party-in-interest transaction, "caused the plan to engage in the

10  transaction." *Id*.

11      Plaintiffs' prohibited transaction claim under Section 406(a) is brought against Roy

12  Adams, Leslie Adams, Daniel Norem, and the Norem Trust (collectively referred to as the

13  "Selling Shareholders").  Plaintiffs' theory is that the Selling Shareholders knew that the

14  acquisition of the shares by the plan was for excessive consideration because Mr. Weissman was

15  unaware of material information which would have reduced the shares' value.   The Selling

16  Shareholders contend that they are entitled to summary judgment on this claim because (1) they

17  were nonfiduciaries in the transaction, (2) Plaintiffs have not shown that they had actual or

18  constructive knowledge of the unlawful transaction, (3) Plaintiffs have not shown that they knew

19  the transaction was not exempt under Section 1108(e), and (4) Plaintiffs cannot identify

20  appropriate equitable relief.  Plaintiffs cross-move for summary judgment based on the same

21  theory as their breach of fiduciary duty/failure to monitor claim; that is, that the Director

22  Defendants were aware that Mr. Weissman was engaging in a prohibited transaction because they

23  knew that they had not disclosed material information to Mr. Weissman and his advisors and

24  without this information Mr. Weissman could not have conducted a thorough investigation into

25  the merits of the ESOP transaction.

26      **1)  Defendants Were Non-Fiduciaries in the ESOP Transaction**

27      There are two types of fiduciaries under ERISA: a "named" fiduciary and a "functional"

28  fiduciary.  *Depot, Inc. v. Caring for Montanans, Inc*., 915 F.3d 643, 653 (9th Cir.).  A functional

United States District Court
Northern District of California

fiduciary is defined in 29 U.S.C. § 1002(21)(A):

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

"[A] person is a fiduciary under this provision only 'to the extent' the person engages in the listed conduct, [so] a person may be a fiduciary with respect to some actions but not others." *Depot*, 915 F.3d at 653 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 225–26 (2000)); *see Acosta v. Brain*, 910 F.3d 502, 519 (9th Cir. 2018) ("[W]e must distinguish between a fiduciary 'acting in connection with its fiduciary responsibilities' with regard to the plan, as opposed to the same individual or entity 'acting in its corporate capacity.' Only the former triggers fiduciary status; the latter does not." (internal citation omitted)).

In their opposition to Defendants' motion for summary judgment, Plaintiffs argued that that Director Defendants[4] were fiduciaries for purposes of the ESOP transaction because (1) they were named fiduciaries under the Plan as members of the Plan Committee, and (2) they acted as fiduciaries in appointing and monitoring Mr. Weissman.  (Dkt. No. 142 at 21:16-18.)  Section 18 of the Plan identifies the members of the Plan Committee as named fiduciaries under the Plan, but specifies that members of the Committee can delegate their duties and responsibilities to "any other person."  (Dkt. No. 102-48 at Sec. 18 (ECF 5, 62-64).)   At oral argument, Plaintiffs clarified that they are not arguing that the Director Defendants' fiduciary duties here arose out of their duties under Section 18 of the Plan.  The question then is whether a reasonable trier of fact could find they were functional fiduciaries based on their duty to monitor Mr. Weissman.

Defendants insist that they were not, and were instead settlors and thus acting as parties in interest.  Generally, "the decision to create an ESOP and fund it with newly-issued stock is a

---

[4] While Plaintiffs' Section 406(a) claim is brought against the Selling Shareholders, Plaintiffs' allegations and arguments regarding their fiduciary status are predicated on the actions of the Director Defendants.  The Court thus refers only to the Director Defendants when determining fiduciary status for purposes of the Section 406(a) claim.

settlor function." *Akers v. Palmer*, 71 F.3d 226, 232 (6th Cir. 1995). In *Neil v. Zell*, 677 F. Supp. 2d 1010, 1023 (N.D. Ill. 2009), as amended (Mar. 11, 2010), the court concluded that the board of directors had "removed itself from direct responsibility for the ESOPs actions" by appointing a third party as trustee of the ESOP. The court reasoned that "[t]he board made a non-fiduciary decision as settlor to create the ESOP, then made a non-fiduciary business decision on [the] Company's behalf to enter into the deal, and, finally, [the trustee], acting on behalf of the ESOP, made an independent decision to also enter into the deal." *Id.* At the hearing, Plaintiffs insisted that *Neil* was distinguishable because it was decided at the pleading stage and was just speaking to the allegations' adequacy. Plaintiffs identified *Hurtado v. Rainbow Disposal Co.*, 2018 WL 3372752, at *10 (C.D. Cal. July 9, 2018), which was likewise decided at the pleading stage, and argued that it stands for the proposition that board members retained fiduciary responsibility for purposes of an ESOP transaction notwithstanding the appointment of a trustee. *Hurtado*, however, did not consider whether the board members were acting in their fiduciary capacity for purposes of the ESOP transaction, and instead, just assumed that the board members and the trustee were fiduciaries for purposes of the prohibited transaction claim. *Id.* at *10-11. Plaintiffs have not identified any authority supporting their theory that notwithstanding the Director Defendants' delegation of responsibility to Mr. Weissman to engage in the ESOP transaction, they nonetheless retained "residual fiduciary duties with regard to the transaction" and that Mr. Weissman and the Director Defendants possessed the same fiduciary responsibilities for purposes of the ESOP transaction.

Under *Pegram*, the critical question for determining fiduciary status is "whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram*, 530 U.S. at 226. Section 406(a) prohibits a "fiduciary" from "caus[ing] the plan to engage in" certain prohibited transactions. Thus, the action at issue is "causing" the Plan to engage in the ESOP transaction. The Director Defendants' act of monitoring Mr. Weissman was independent of Mr. Weissman engaging in the ESOP transaction; that is, Plaintiffs do not identify any evidence that supports a finding that the Director Defendants *caused* Mr. Weissman to engage in the transaction. *See Fish v. Greatbanc Tr. Co.*, No. 09 C 1668, 2016

WL 5923448, at *60 (N.D. Ill. Sept. 1, 2016) (following a bench trial concluding that "[i]t would be a bizarre logic that would hold [the director defendants] accountable for 'causing' the ESOP to engage in a transaction when they hired an independent trustee for the specific purpose of deciding whether to cause the ESOP to engage in the Transaction (by declining to tender its shares) or not, in accord with the independent trustee's independent determination of which alternative was in the ESOP's best interests.")  Drawing all reasonable inferences in Plaintiffs' favor, a reasonable trier of fact could not find that the Director Defendants caused Mr. Weissman to engage in the transaction by failing to disclose the allegedly material information.  Among other omissions, there is no evidence that the Director Defendants exercised "authority or control" over Mr. Weissman's decision to engage in the ESOP transaction; the lack of evidence instead supports an inference that he made an independent decision.  *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996) ("[O]nly when fulfilling certain defined functions, including the exercise of discretionary authority or control over plan management or administration, does a person become a fiduciary under [§ 1002(21)(A) ].")(internal quotation marks and citation omitted).

Accordingly, no reasonable trier of fact could find the Director Defendants were acting as fiduciaries for purposes of the ESOP transaction; instead, their liability on this claim must be evaluated as non-fiduciaries.

### 2)   Actual or Constructive Knowledge of an Unlawful Transaction

For a non-fiduciary to be liable under Section 406(a), the non-fiduciary must have "actual or constructive knowledge" of the circumstances that rendered any prohibited transaction unlawful. *Harris*, 530 U.S. at 251.[5]  The question then is what the Selling Shareholders were required to have actual knowledge of; that is, what does it mean to have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful."  *Harris*, 530 U.S. at 251.

---

[5] At oral argument, Plaintiffs appeared to abandon their argument, based on *Landwehr v. DuPree*, 72 F.3d 726, 734 (9th Cir. 1995), that the knowledge requirement could be satisfied simply based on the Director Defendants' knowledge that they were selling their stock to the ESOP.  As the Court noted, *Harris* clearly states that the party in interest must have "actual or constructive knowledge of the circumstances that rendered the transaction unlawful" and *Harris* post-dates *Landwehr*.

1   The parties' briefs do little to elucidate the issue.

2          The Selling Shareholders insist that it is "undisputed that neither Adams nor Norem were

3   ever informed that AAI's due diligence responses were less than adequate or that Mr. Weissman

4   or his legal advisors had not received any information that had been requested" without citation to

5   any evidence supporting this statement. (Dkt. No. 137 at 18:5-7.)  They also contend that "[t]he

6   record is devoid of any evidence related to either Leslie Adams's or Joy Curry Norem's

7   involvement in [Adams and Associate's] due diligence responses, let alone that they had

8   knowledge of any alleged wrongdoing." (*Id.* at 18:11-14.)

9          Plaintiffs counter that Mr. Adams and Mr. Norem were aware of the deal's details, and

10  "their non-disclosure of material information." (Dkt. No. 142 at 23:10.)  As for Leslie Adams and

11  Joy Curry Norem, Plaintiffs insist that because Ms. Adams was a Director and Vice President of

12  Adams and Associates and a member of the Plan Committee, there is an inference that she was

13  aware of Adams' and Norems' misleading responses to the due diligence requests.  Plaintiffs note

14  that Defendants have not submitted a declaration from Ms. Adam's "to show that she was

15  ignorant." (*Id.* at 23, n.3.)  As for Ms. Norem, Plaintiffs concede that she married Mr. Norem after

16  the ESOP transaction, but nonetheless maintain that she is a necessary party under Federal Rule of

17  Civil Procedure 19(a) because she is a trustee and beneficiary of the Norem Trust.

18         Defendants' motion for summary judgment is granted as to Ms. Adams and Ms. Norem.

19  Plaintiffs have conceded that Ms. Norem lacked any actual or constructive knowledge and their

20  Rule 19(a) joinder argument cannot meet their burden to show that she is a "party in interest" to

21  the prohibited transaction claim under 29 U.S.C. § 1002(14)(A).  With respect to Ms. Adams, we

22  are beyond the plausible inference stage—Plaintiffs were required to respond to Defendants'

23  argument that there is no evidence supporting her knowledge with *evidence* supporting inferences,

24  not simply unsupported inferences.  On summary judgment, the party who bears the burden of

25  proof on a dispositive issue must offer specific evidence demonstrating a factual basis on which it

26  is entitled to relief. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

27         As for Mr. Adams and Mr. Norem, no party has demonstrated that they are entitled to

28  summary judgment based on their knowledge or lack thereof of the prohibited transaction.

United States District Court
Northern District of California

14

United States District Court
Northern District of California

Defendants, for their part, have failed to provide any evidentiary support for their argument that it is "undisputed" that they were never informed of inadequacies in their response to the due diligence reports.  *See Nissan Fire & Mar. Ins. Co., Ltd. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (holding that when the party moving for summary judgment does not bear the burden of proof at trial, the party has the burden of producing evidence negating an essential element of each claim on which it seeks judgment or showing that the opposing party cannot produce evidence sufficient to satisfy her burden of proof at trial).  Likewise, Plaintiffs, as the party who bears the burden of proof on the claim, have failed to show that they are entitled to judgment in their favor on the claim because their theory is based on the Director Defendants' failure to disclose material information; that is, that the Director Defendants were aware that Mr. Weissman was engaging in a prohibited transaction because they knew that they had not disclosed material information to Mr. Weissman and his advisors.  However, as noted *supra*, the Court cannot resolve the question of materiality or the public nature of the information at the summary judgment stage.

### 3)  Whether Equitable Relief is Available

Defendants also insist that they are entitled to summary judgment on the Section 406(a) claim because Plaintiffs cannot identify appropriate equitable relief.  An ERISA "claim fails if the plaintiff cannot establish … that the remedy sought is 'appropriate equitable relief' under § 1132(a)(3)(B), regardless of whether a remediable wrong has been alleged.'" *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 954 (9th Cir. 2014) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993)). "The Supreme Court has made clear that 'appropriate equitable relief' refers to a 'remedy traditionally viewed as 'equitable.'" *Gabriel*, 773 F.3d at 954 (quoting *Mertens*, 508 U.S. at 255).  To qualify as "equitable relief, both (1) the basis for the plaintiff's claim and (2) the nature of the underlying remedies sought must be equitable rather than legal." *Depot, Inc. v. Caring for Montanans, Inc*., 915 F.3d 643, 660 (9th Cir.) (internal citation and quotation marks omitted).

Plaintiffs seek disgorgement, surcharge and rescission.  Defendants insist, and the Court agrees, that disgorgement and surcharge are unavailable where, as here, these remedies are sought against non-fiduciaries and Plaintiffs have failed to identify any funds or property within

15

1   Defendants' control that trace to the Plan's assets.   "Under traditional rules of equity,

2   [disgorgement] may be available in the absence of a constructive trust over specifically

3   identifiable property if the defendant owed a fiduciary duty to the plaintiff and breached that

4   duty." *Depot*, 915 F.3d at 664 n.15.   Neither circumstance is satisfied here.

5        Surcharge is an equitable remedy "in the form of monetary 'compensation' for a loss

6   resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *CIGNA*

7   *Corp. v. Amara*, 563 U.S. 421, 441–42 (2011).   While *Amara* held that surcharge was a

8   permissible form of relief against a fiduciary, it distinguished its holding from its earlier holding in

9   *Mertens* where the plan participants had sued a defendant who was not a trustee and the court held

10  that the "make-whole relief" in that case constituted compensatory damages against a

11  nonfiduciary, which "traditionally speaking, was legal, not equitable, in nature." *Amara*, 131 S.Ct.

12  at 1878 (citing *Mertens*, 508 U.S. at 250, 262–63); *see also Amara*, 131 S.Ct. at 1880 ("Thus,

13  insofar as an award of make-whole relief is concerned, the fact that the defendant in this case,

14  unlike the defendant in *Mertens*, is analogous to a trustee makes a critical difference."); *see also*

15  *Malone on Behalf of Univ. of Chicago Ret. Income Plan for Employees v. Teachers Ins. & Annuity*

16  *Ass'n of Am.*, No. 15-CV-08038 (PKC), 2017 WL 913699, at *6 (S.D.N.Y. Mar. 7, 2017)

17  ("Because defendant is not a fiduciary of the Plans with respect to the recordkeeping services it

18  provides, the Plans may not recover compensatory damages under a surcharge theory.").

19  Surcharge is thus likewise unavailable as a remedy here.

20       Plaintiffs, however, also seek rescission of the ESOP Transaction.   (Dkt. No. 65 at 36

21  (SAC requesting rescission among other forms of equitable relief).)   "Even if true rescission is no

22  longer possible because Plaintiffs have disposed of the consideration they received after

23  termination of the Plan, the 'monetary equivalent' is the actual value of the Plan's stock absent the

24  alleged conflict." *Hurtado v. Rainbow Disposal Co.*, 2018 WL 3372752, at *15 (C.D. Cal. July 9,

25  2018) (citing *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1031 (9th Cir. 1999) ("If

26  true rescission is no longer possible (perhaps because the plaintiff no longer owns the subject of

27  the sale), the court may order its monetary equivalent. This remedy entitles the plaintiff to the

28  return of the consideration paid less any value received on the investment.")).   Defendants did not

United States District Court
Northern District of California

1    move for summary judgment on Plaintiffs' request for rescission; indeed, their moving papers

2    make no mention of Plaintiffs' request for rescission.  (Dkt. No. 13 at 20-22.)  To the extent that

3    Defendants argue in their reply brief that Plaintiffs have not shown that rescission is available here

4    (*see* Dkt. No. 145 at 7), the Court will not consider arguments raised for the first time on reply.

5    *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1289 n.4 (9th Cir. 2000) ("[I]ssues cannot be

6    raised for the first time in a reply brief.")

7        Accordingly, Defendants have not shown that they are entitled to summary judgment on

8    Plaintiffs' Section 406(a) claim based on the unavailability of any equitable relief.

9                                                    ***

10       In sum, Defendants' motion for summary judgment on Plaintiffs' Section 406(a)

11   prohibited transaction claim is granted as to Ms. Norem and Ms. Adams, but denied as to Mr.

12   Norem and Mr. Adams. However, as Mr. Norem and Mr. Adams were acting as nonfiduciaries as

13   a matter of law, the only remedy still at play on this narrowed claim is rescission given that

14   Defendants did not move on that remedy.

15   **C.  Plaintiffs' ERISA Section 406(b) Prohibited Transaction Claim**

16       Plaintiffs also bring a prohibited transaction claim under ERISA § 406(b), which "prohibits

17   a fiduciary from engaging in certain types of transactions with respect to a plan: A fiduciary with

18   respect to a plan shall not ... in his individual or in any other capacity act in any transaction

19   involving the plan on behalf of a party (or represent a party) whose interests are adverse to the

20   interests of the plan or the interests of its participants or beneficiaries." *Barboza v. California

21   Ass'n of Professional Firefighters*, 799 F.3d 1257, 1269 (9th Cir. 2015) (quoting 29 U.S.C §

22   1106(b)(2)).

23       Defendants contend that Plaintiffs' Section 406(b) claim fails because (1) they were not

24   fiduciaries; (2) their interests were not adverse; and (3) for all of the same reasons as the 406(a)

25   claim fails.  Given the Court's conclusion, *supra*, that no reasonable trier of fact could find that the

26   Director Defendants were fiduciaries for purposes of the ESOP transaction (as opposed to for

27   purposes of monitoring Mr. Weissman's selection and retention, *see Johnson*, 572 F.3d at 1076),

28   Plaintiffs' 406(b) claim fails because such a claim is only available against a fiduciary.  *See Teets*,

United States District Court
Northern District of California

1    921 F.3d at 1207 (distinguishing between the two prohibited transaction claims under Section 406:

2    406(a) claims which can be brought against fiduciaries and non-fiduciary parties in interest, and

3    406(b) claims that can only be brought against fiduciaries). Plaintiffs' reliance on *Howard*, 100

4    F.3d 1484, for the proposition that a 406(b) claim is available against a company president who

5    was the member of the ESOP advisory committee is unavailing, as there was no genuine dispute

6    as to the company president's fiduciary status.  *Id*. at 1489-90.

7         Accordingly, Defendants' motion for summary judgment is granted on Plaintiffs' Section

8    406(b) claim.

9    **II.  Plaintiffs' Remaining Claims**

10        Defendants also move for summary judgment on Plaintiffs' non-breach of fiduciary duty

11   based claims: (1) Plaintiffs' Summary Plan Description (SPD) disclosure claim under ERISA

12   Sections 102, 104(b)(1) and Sections 404(a)(1)(A) & (B); and (2) Plaintiffs' indemnification claim

13   under ERISA Section 410. Defendants have failed to show that they are entitled to judgment as a

14   matter of law on either of these claims.

15        **A.  Plaintiffs' SPD Failure to Disclose Claim**

16        Plaintiffs' fourth claim for relief contends that Adams and Associates violated ERISA

17   Sections 102, 104(b)(1), 29 U.S.C. §§ 1022, 1024(b)(1), and ERISA Sections 404(a)(1)(A) & (B),

18   29 U.S.C. §§ 1104(a)(1)(A) & (B), because as of April 2018 it had failed to update the 2012 SPD.

19   The SPD still reflected that Mr. Weissman was the Trustee although he had been removed as

20   Trustee in 2016, and following his removal, the SPD failed to disclose that he had been indicted or

21   convicted of a crime. (SAC at ¶¶ 120, 125-126.)

22        The purpose of the SPD is to provide a brief restatement of the plan.  *See Stahl v. Tony's*

23   *Bldg. Materials, Inc*., 875 F.2d 1404, 1409 (9th Cir. 1989). 29 U.S.C. § 1022(a) states that the

24   "summary plan description ... shall be written in a manner calculated to be understood by the

25   average plan participant, and shall be sufficiently accurate and comprehensive to reasonably

26   apprise such participants and beneficiaries of their rights and obligations under the plan." 29

27   U.S.C. § 1022(a).  The SPD must contain "circumstances which may result in disqualification,

28   ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). At bottom, the SPD "must be

United States District Court
Northern District of California

18

specific enough to enable the ordinary employee to sense when there is a danger that benefits could be lost or diminished." *Stahl*, 875 F.2d at 1408. In addition, the Plan Administrator has a "statutory duty to provide participants with an SPD that was 'sufficiently accurate and comprehensive to reasonably apprise' [participants] of their rights and obligations under the plan, 29 U.S.C. §§ 1022(a), 1024." *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012).

Defendants move for summary judgment because even if Adams and Associates mistakenly failed to update the SPD, its failure to do was inadvertent and was corrected in 2018; thus, there was no bad faith. Plaintiffs counter that a violation of this section does not require bad faith and that claims for purely equitable relief can hold fiduciaries liable "even in the absence of actual injury to a plan or participant" and here they seek issuance of a corrected SPD. (Dkt. No. 142 at 30:10-11 (citing *Ziegler v. Connecticut Gen. Life Ins. Co.*, 916 F.2d 548, 551 (9th Cir. 1990).)) In response, Defendants argue that they have already issued a corrected SPD identifying the correct Plan Administrator—Blue Ridge Associates—so Plaintiffs' claim is moot.

At oral argument, Plaintiffs disputed the claim's mootness, arguing that the SPD still misidentifies the Plan Administrator because it identifies a different entity as the Plan Administrator than the entity described in the Plan. (*Compare* Dkt. No. 103-48 at 13 (the Plan identifying Adams and Associates as the Plan Administrator) *with* Dkt. No. 138-2 at 8 (the SPD identifying Blue Ridge ESOP Associates as the Plan Administrator).) At the hearing, Defendants responded by suggesting that Plan may be inaccurate as to the current Plan Administrator.

Given this dispute of fact regarding whether the SPD correctly identifies the Plan Administrator, Defendants' motion for summary judgment on Plaintiffs' fourth claim is denied.

## B.     Plaintiffs' Section 410(a) Anti-Indemnification Claim

Under ERISA Section 410(a), 29 U.S.C. § 1110(a), "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." "Thus, '[i]f an ERISA fiduciary writes words in an instrument exonerating itself of fiduciary responsibility, the words, even if agreed upon, are generally without effect.'" *Johnson v.*

1 | *Couturier*, 572 F.3d 1067, 1080 (9th Cir. 2009) (quoting *IT Corp. v. Gen. Am. Life Ins. Co.*, 107

2 | F.3d 1415, 1418 (9th Cir. 1997)).

3 |       Plaintiffs contend that language in Section 18(f) of the Plan and Section VIII of the

4 | Articles of Incorporation violate Section 410(a) because the language provides that Adams and

5 | Associates will indemnify the Trustee and members of the Committee.  (SAC at ¶¶ 134-140.)  In

6 | particular, the Plan states that:

> (f)    Indemnification of Certain Fiduciaries and Insurance.
>
>     The Employer indemnifies and saves harmless the Trustee and the members of the Committee, and each of them, from and against any and all loss resulting from liability to which the Trustee and the Committee may be subjected by reason of any act or conduct (except willful misconduct or gross negligence) in their official capacities in the administration of this Plan, the Trust or both, including all expenses reasonably incurred in their defense, in case the Employer fails to provide such defense.  The indemnification provisions of this Section 18(f) do not relieve the Trustee or any Committee member from any liability he or she may have under ERISA for breach of a fiduciary duty.  Furthermore, the Trustee and the Committee members and the Employer may execute a written agreement further delineating the indemnification agreement of this Section 18(f), provided such agreement must be consistent with and does not violate ERISA.

14 | (Dkt. No. 138-3 at 1.)  Similarly, the Articles of Incorporation provide for indemnification for

15 | officers and directors of the corporation except as to "acts or omissions which involve intentional

16 | misconduct, fraud, a knowing violation of the law, or the payment of dividends in violation of

17 | N.R.S. 78.300."  (Dkt. No. 138-4 at 4.)

18 |       Defendants insist that they are entitled to summary judgment on Plaintiffs' Section 410

19 | claim because no one has been indemnified and the indemnification clauses at issue are limited.

20 | Section 410, however, does not require the employer to actually provide the indemnification, just

21 | that the clause purport to provide indemnification.  Defendants' alternative argument—that the

22 | indemnification clauses at issue are limited—is likewise unavailing.  While Section 18(f) of the

23 | Plan appears to exclude indemnification for breach of fiduciary duty, it provides for

24 | indemnification for "any and all loss resulting from liability to which the Trustee and the

25 | Committee may be subject by reason of any act or conduct," which would include non-Section

26 | 404 (fiduciary-duty based claims ) such as a prohibited transaction claim. (Dkt. No. 138-3.)

27 |       Nor have Defendants shown as a matter of law that the statement in the Articles of

28 | Incorporation that there will no indemnification for "knowing violation[s] of the law" saves the

United States District Court
Northern District of California

United States District Court
Northern District of California

1   clause for purposes of Section 404. (Dkt. No. 138-4 at 4.) In *Johnson v. Couturier*, 572 F.3d at

2   1078, the Ninth Circuit held that the indemnification agreements which "provide[d] complete

3   indemnity so long as the challenged acts or omissions do not involve deliberate wrongful acts or

4   gross negligence" "limit[s] Defendants' liability under ERISA because, so long as they do not

5   engage in deliberate wrongful acts or gross negligence, Defendants will be indemnified—even if

6   they violated the ERISA 'prudent man' standard of care." *Id*. So too here. Defendants have not

7   shown that the language here can be reconciled with ERISA's prudent man standard.

8          Finally, Defendants' assurances that it would not use Plan assets to indemnify the

9   Defendants are unavailing. *Johnson* considered and rejected an argument that Section 410 does

10  not apply where the indemnification "would be made from corporate, not plan assets." *Id*. at 1080.

11  Plaintiffs argue that any promise not to indemnify Defendants is insufficient because Defendants

12  have not promised that they would not use Plan assets to pay the attorneys' fees and doing so

13  would impair the value of the ESOP. *See Hurtado v. Rainbow Disposal Co*., 2018 WL 3372752,

14  at *16 (C.D. Cal. July 9, 2018); *Fernandez v. K-M Indus. Holding Co*., 646 F. Supp. 2d 1150,

15  1155 (N.D. Cal. 2009), as corrected (Sept. 8, 2009).

16         Accordingly, Defendants motion for summary judgment on Plaintiff's Section 410 claim is

17  denied.

18                                    **CONCLUSION**

19         For the reasons stated above, Plaintiffs' motion for partial summary judgment is DENIED.

20  Defendants' cross-motion for summary judgment is GRANTED as to the Section 406(a)

21  prohibited transaction claim as to Ms. Norem and Ms. Adams, and as to the Section 406(b)

22  prohibited transaction as to all Defendants. Defendants' motion for summary judgment is

23  DENIED in all other respects.

24         The Court sets a Status Conference for July 23, 2020 at 1:30 p.m. to discuss a trial date. A

25  week prior to the conference, the parties shall file a joint statement indicating their availability for

26  a bench trial which would commence no earlier than December 2020, unless the parties agree to

27  proceed to trial by video.

28         This Order disposes of Docket Nos. 102 and 137.

1    **IT IS SO ORDERED.**

2    Dated: July 6, 2020

3    _____
     JACQUELINE SCOTT CORLEY
4    United States Magistrate Judge

United States District Court
Northern District of California