Daniel Feinberg– CA State Bar No. 135983
Email: dan@feinbergjackson.com
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison St., Suite 500
Berkeley, CA 94704
Tel: (510) 269-7998
Fax: (510) 269-7994

R. Joseph Barton – CA State Bar No. 212340
Email:  jbarton@blockesq.com
BLOCK & LEVITON LLP
1735 20th Street, N.W.
Washington, DC 20009
Tel: (202) 734-7046
Fax: (617) 507-6020

Vincent Cheng
Email: vincent@blockesq.com
BLOCK & LEVITON LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Tel: (415)-968-8999
Fax: (617) 507-6020

*Attorneys for Plaintiffs & the Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| CAROL FOSTER and THEO FOREMAN, on behalf of themselves, individually, and on behalf of all others similarly situated, | Case No. 18-cv-02723-JSC |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |
| v. | Date:   November 4, 2021 |
| ADAMS AND ASSOCIATES, INC., ROY A. ADAMS, LESLIE G. ADAMS, DANIEL B. NOREM, JOY CURRY NOREM and THE DANIEL NOREM REVOCABLE TRUST DATED JANUARY 9, 2002, | Time:  9:00 a.m. Courtroom F, 15th Floor Honorable Jacqueline Scott Corley |
| Defendants. | |

CASE NO. 18-cv-02723-JSC

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on November 4, 2021 at 9:00 a.m., in Courtroom F, 15th Floor of the San Francisco Division of the United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Carol Foster and Theo Foreman will move, and hereby do move, the Court to enter an order under Rule 23 of the Federal Rules of Civil Procedure:

1.     Preliminarily approving the Settlement Agreement between Plaintiffs and Defendants as fair, reasonable, and adequate under Rule 23(e) of the Federal Rules of Civil Procedure;

2.     Modifying the definition of the Class previously certified by the Court (ECF Nos. 89 & 94) to include an end date of December 31, 2020 as follows:

All participants of the Adams and Associates ESOP from October 25, 2012 to December 31, 2020 who vested under the terms of the Plan and those participants' beneficiaries.

Excluded from the Class are Defendants and their immediate family, any fiduciary of the Plan; the officers and directors of Adams and Associates or of any entity in which a Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons.

3.     Approving the proposed Class Settlement Notice as to form and content and the plan for dissemination of notice to the Class as satisfying the requirements of Rule 23(c)(2) and (e)(1);

4.     Appointing a Settlement Administrator;

5.     Preliminarily approving the proposed Plan of Allocation; and

6.     Setting dates and deadlines under Rule 23(d) and (e) of the Federal Rules of Civil Procedure in order for the Court to evaluate whether the settlement should be given final approval (after distribution of the proposed class notice to the Class and submission of any objections to the settlement, and for a fairness hearing on final approval of the settlement), to

evaluate Class Counsel's request for an award of attorneys' fees and reimbursement of costs and expenses and Plaintiffs' request for a service award as follows:

| | |
|---|---|
| Deadline for Defendants to provide Class Data | October 6, 2021 |
| Deadline for Settlement Administrator to provide notice to the Class | 21 days after Preliminary Approval Order |
| Deadline for Settlement Administrator to provide declaration regarding Class Notice | 30 days after Notice is sent |
| Deadline for Class Counsel to file motion for award of attorneys' fees and costs and for Service Award for Class Representatives | 15 days before deadline for date for objections |
| Deadline for Class Members to file objections to the Settlement or submit any challenge to account data | 60 days after the Preliminary Approval Order (and at least 35 days after the deadline to send Notice) |
| Deadline for Defendants to provide affidavit regarding indemnification and draft revised SPD | 30 days before Motion for Final Approval is due |
| Deadline for Class Counsel to file Motion for Final Approval of Settlement | 75 days after the Preliminary Approval Order (and at least 14 days after the deadline for Class Members to file objections) |
| Hearing on motion for final approval of settlement and application for attorneys' fees and costs and service awards | 90 days after the Preliminary Approval Order |

This Motion is supported by the accompanying Memorandum of Law, the Declaration of Daniel Feinberg ("Feinberg Decl."), the Declaration of R. Joseph Barton ("Barton Decl."), the Declaration of Vincent Cheng ("Cheng Decl."), and the Proposed Order filed herewith, all of the pleadings and documents on file with the Court in this action, and further evidence and argument as may be submitted prior to the Court's decision on this motion.

1

2   Dated: September 24, 2021

3

4

5
    Vincent Cheng
    Email: vincent@blockesq.com
6   BLOCK & LEVITON LLP
    100 Pine Street, Suite 1250
7   San Francisco, CA 94111
    Tel: (415)-968-8999
8   Fax: (617) 507-6020

9
    R. Joseph Barton
10  Email:  jbarton@blockesq.com
    BLOCK & LEVITON LLP
11  1735 20th Street, N.W.
    Washington, DC 20009
12  Tel: (202) 734-7046
    Fax: (617) 507-6020
13

14  Daniel Feinberg
    Email: dan@feinbergjackson.com
15  FEINBERG, JACKSON,
    WORTHMAN & WASOW LLP
16  2030 Addison St., Suite 500
    Berkeley, CA 94704
17  Tel: (510) 269-7998
    Fax: (510) 269-7994
18

19  *Attorneys for Plaintiffs & the Class*

20

21

22

23

24

25

26

27

28
    PLS.' MOT. AND NOTICE OF MOT. FOR          3
    PRELIMINARY APPROVAL OF SETTLEMENT
    CASE NO. C18-02723-JSC

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................................ 1

II.     HISTORY AND STATUS OF THE CASE ................................................................... 1

        A.      The Factual Background of the Allegations ..................................................... 1

        B.      The Claims and Relief Requested ..................................................................... 3

        C.      Procedural History ............................................................................................ 4

III.    THE TERMS OF THE SETTLEMENT AND PLAN OF ALLOCATION ...................... 6

IV.     SERVICE AWARDS AND ATTORNEYS' FEES AND COSTS .................................. 8

V.      THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ................. 9

        A.      The Settlement Is the Result of Serious, Informed, and Non-Collusive
                Negotiations .................................................................................................... 11

        B.      The Settlement Is Well Within the Range of Possible Approval ...................... 13

        C.      The Settlement Grants No Preferential Treatment to Any Class Members ......... 16

        D.      The Settlement Has No Obvious Deficiencies ................................................... 17

VI.     THE CLASS DEFINITION SHOULD BE MODIFIED TO HAVE AN END DATE.... 18

VII.    THE NOTICE AND PLAN OF NOTICE SHOULD BE APPROVED .......................... 19

VIII.   THE PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED ......... 22

IX.     THE COURT SHOULD ESTABLISH DATES FOR EFFECTUATING FINAL
        APPROVAL OF THE SETTLEMENT ........................................................................... 22

X.      CONCLUSION ............................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson-Butler v. Charming Charlie Inc.*,
  No. 14 CV 1921, 2015 WL 4599420 (E.D. Cal. July 29, 2015)................................18

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) (J. Corley)...........................................................21

*In re Bluetooth Headset Products Liability Litig.*,
  654 F.3d 935 (9th Cir. 2011) ........................................................................13, 17

*Boyd v. Coventry Health Care Inc.*,
  299 F.R.D. 451 (D. Md. 2014)...............................................................................15

*Briseno v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) ................................................................................17

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ..................................................................................9

*Chavez v. Converse, Inc.*,
  No. 15-CV-03746, 2020 WL 10575028 (N.D. Cal. Nov. 25, 2020) ......................21

*Chen v. Chase Bank USA, N.A.*,
  No. 19-CV-01082, 2020 WL 264332 (N.D. Cal. Jan. 16, 2020) (J. Corley)....................16, 17

*Churchill Village, L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ..................................................................................19

*Cunningham v. Wawa, Inc.*,
  387 F.Supp.3d 529 (E.D. Pa. 2019) .......................................................................12

*Cunningham v. Wawa, Inc.*,
  CV 18-3355, 2021 WL 1626482 (E.D. Pa. Apr. 21, 2021) ......................................9

*Cunningham v. Wawa, Inc.*,
  No. 2:18-cv-03355-PD.................................................................................................8

*De Leon v. Ricoh USA, Inc.*,
  No. 18-CV-03725, 2019 WL 6311379 (N.D. Cal. Nov. 25, 2019) (J. Corley) .............. *passim*

*Dickey v. Adv. Micro Devices, Inc.*,
  No. 15-CV-04922, 2019 WL 4918366 (N.D. Cal. Oct. 4, 2019) ...........................13

*Does I v. Gap, Inc.*,
  No. CV-01-0031, 2002 WL 1000073 (D.N. Mar. Is. May 10, 2002)......................12

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ................................................................20

*Etter v. Allstate Ins. Co.*,
   No. C 17-00184, 2018 WL 5761755 (N.D. Cal. May 30, 2018) ......................................10, 11

*Foster v. Adams and Assocs., Inc.*,
   No. 18-CV-02723-JSC, 2019 WL 4305538 (N.D. Cal. Sept. 11, 2019) ..............................12

*Foster v. Advantage Sales & Mktg., LLC.*,
   No. 18-CV-07205-LB, 2019 WL 6699793 (N.D. Cal. Dec. 9, 2019) ....................................11

*Francisco v. Emeritus Corp.*,
   No. 217CV02871, 2019 WL 7856768 (C.D. Cal. Sept. 24, 2019) ........................................21

*Guidry v. Wilmington Tr.*,
   333 F.R.D. 324 (D. Del. 2019) ...........................................................19

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .......................................22

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) ...............................................................15

*Howell v. Advantage RN, LLC*,
   401 F.Supp.3d 1078 (S.D. Cal. 2019) ....................................................18

*Johnson v. Serenity Transp., Inc.*,
   No. 15-CV-02004, 2021 WL 3081091 (N.D. Cal. July 21, 2021) (J. Corley) ...........10, 13, 17

*Kaplan v. Houlihan Smith & Co.*,
   No. 12 C 5134, 2014 WL 2808801 (N.D. Ill. June 20, 2014) ................................16

*Karpik v. Huntington Bancshares Inc.*,
   No. 2:17-CV-1153, 2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ........................15

*Knapp v. Art*,
   283 F.Supp.3d 823 (N.D. Cal. 2017) ...........................................15

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-02420, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020)...........................22

*In re Monumental Life Ins. Co.*,
   365 F.3d 408 (5th Cir. 2004) ...............................................................18

*Nen Thio v. Genji, LLC*,
   14 F.Supp.3d 1324 (N.D. Cal. 2014) ...........................................15

*In re Nexus 6P Prods. Liab. Litig.*,
   No. 17-CV-02185, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ........................22

*Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
  No. EDCV19620, 2020 WL 5044418 (C.D. Cal. May 7, 2020) ...........................................13

*Norton v. LVNV Funding, LLC*,
  No. 18-CV-05051-DMR, 2021 WL 3129568 (N.D. Cal. July 23, 2021) ...............................11

*O'Dowd v. Anthem, Inc.*,
  No. 14-CV-02787, 2019 WL 4279123 (D. Colo. Sept. 9, 2019) ..........................................15

*Peters v. Nat'l R.R. Passenger Corp.*,
  966 F.2d 1483 (D.C. Cir. 1992) .......................................................................................20

*Pfeifer v. Wawa, Inc.*,
  No. CV16-497, 2018 WL 4203880 (E.D. Pa. Aug. 31, 2018)...............................................14

*Philips v. Munchery Inc.*,
  No. 19-CV-00469, 2020 WL 6135996 (N.D. Cal. Oct. 19, 2020) (J. Corley) ...........14, 16, 17

*Rickstrew v. Weissman*,
  No. 12-cv-03133-WHA (N.D. Cal.) ....................................................................................2

*Sampson v. Knight Transp., Inc.*,
  C17-0028-JCC, 2021 WL 2255129 (W.D. Wash. June 3, 2021) ....................................18, 19

*Schuchardt v. L. Off. of Rory W. Clark*,
  314 F.R.D. 673 (N.D. Cal. 2016) (J. Corley).........................................................................21

*Sims v. BB&T Corp.*,
  No. 1:15-CV-732, 2019 WL 1995314 (M.D.N.C. May 6, 2019) ..........................................15

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) .............................................................................................9

*Tadepalli v. Uber Techs., Inc.*,
  No. 15-CV-04348-MEJ, 2015 WL 9196054 (N.D. Cal. Dec. 17, 2015)................................11

*Thomas v. MagnaChip Semiconductor Corp.*,
  No. 14-CV-01160, 2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) ........................................22

*Toolajian v. Air Methods Corp.*,
  No. 18-CV-06722, 2020 WL 8674094 (N.D. Cal. Apr. 24, 2020) ........................................13

*Urakhchin v. Allianz Asset Mgt. of Am., L.P.*,
  SACV151614, 2018 WL 3000490 (C.D. Cal. Feb. 6, 2018)...............................12, 15, 18, 20

*Uschold v. NSMG Shared Servs., LLC*,
  333 F.R.D. 157 (N.D. Cal. 2019) (J. Corley).........................................................................20

*Viceral v. Mistras Grp., Inc.*,
  No. 15-CV-02198, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ........................................11

*Vikram v. First Student Mgt., LLC*,
   No. 17-CV-04656-KAW, 2019 WL 1084169 (N.D. Cal. Mar. 7, 2019) ................................ 10

*Walsh v. CorePower Yoga LLC*,
   No. 16-CV-05610, 2017 WL 589199 (N.D. Cal. Feb. 14, 2017) ............................................ 12

**Statutes**

ERISA § 104 .................................................................................................................................... 3

ERISA § 404 .................................................................................................................................... 3

ERISA § 406 .............................................................................................................................. 3, 5, 6

ERISA § 410 .................................................................................................................................... 4

**Other Authorities**

Fed. R. Civ. P. 16 .......................................................................................................................... 10

Fed. R. Civ. P. 23 ................................................................................................................... *passim*

Fed. R. Civ. P. 25 ............................................................................................................................ 4

Fed. R. Civ. P. 30 ....................................................................................................................... 5, 12

L.R. 16-8(a) ................................................................................................................................... 10

*Manual for Complex Litigation* § 21.632 (4th ed. 2004) .......................................................... 10

Procedural Guidance for Class Action Settlements, *available at*
   https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-
   settlements/; ............................................................................................................................. 19

William B. Rubenstein, *et al.*, *Newberg on Class Actions* § 13:10 (5th ed. 2013) ...................... 10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Carol Foster and Theo Foreman respectfully submit this Memorandum in support of their Motion for Preliminary Approval of the proposed Class Action Settlement with Defendants pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, to approve the proposed notice to the Class, and to set various dates related to the approval of the Settlement.

Pursuant to the Settlement, Defendants have collectively agreed that Defendants, other than Adams and Associates, Inc. ("AAI"), will pay $3 million into a Settlement Fund to be allocated to the Class and that AAI will not pay for the Settlement or indemnify any of the other Defendants and will issue a revised summary plan description that is compliant with the Employee Retirement Income Security Act ("ERISA"). In exchange, the Class will dismiss with prejudice its claims asserted in the Second Amended Complaint against Defendants. The Class will also release Defendants from any claims relating to or arising out of the allegations of the Second Amended Complaint. Given the uncertainty of establishing both liability and damages, the Settlement represents an excellent result for the Class and the Court should preliminarily approve it.

## II.   HISTORY AND STATUS OF THE CASE

### A.   The Factual Background of the Allegations

Adams and Associates, Inc. ("AAI") operates Job Corps Center under contract with the U.S. Department of Labor. ECF. No. 65 ("SAC") ¶ 2; ECF No. 102-3 at 12. The DOL generally awards Job Corps Center contracts based on a competitive bidding process and sets aside many contracts for small businesses whose annual revenue is under a certain limit. SAC & ECF NO. 70 ("Answ.") ¶¶ 21, 22, 24. AAI's annual revenue has exceeded that limit for many years. *Id.* ¶ 24.

AAI adopted the Adams and Associates, Inc. ESOP ("the ESOP" or "the Plan") effective January 1, 2012. SAC ¶ 10; ECF No. 79-3 at 1. Before October 2012, AAI was owned by Roy Adams, Leslie Adams, and The Daniel Norem Recoverable Trust. SAC & Answ. ¶ 20. In July 2012, Roy Adams, Leslie Adams, and Daniel Norem ("the Director Defendants") appointed Alan

Weissman as the ESOP's trustee to facilitate the sale of 100% of the AAI stock to the ESOP ("the October 2012 Transaction" or "the ESOP Transaction"). *Id*. ¶ 28; ECF No. 153 at 2. A month prior to his appointment, Weissman was sued in this District for embezzlement from another ESOP for which he had served as trustee, in *Rickstrew v. Weissman*, No. 12-cv-03133-WHA (N.D. Cal.). SAC ¶ 30; ECF No. 79-8. He was indicted in 2016 on various counts for, among others, theft or embezzlement from two ESOPs dating back to at least 2010, pled guilty to four counts, and was sentenced to thirty months in prison in 2017. SAC ¶ 31; ECF Nos. 102-6, 102-7 & 102-8.

The Director Defendants learned before the October 2012 Transaction that AAI could no longer bid on three of its Job Corps Center contracts, which were up for renewal, because the DOL had set them aside for small businesses. SAC ¶ 30; ECF Nos. 79-9 & 79-11; ECF No. 79-10 ¶ 10; ECF No. 79-12 ¶ 9. In both June 2012 and the day after the October 2012 Transaction, AAI filed bid protests in court challenging the DOL's decision to designate two of those centers as small business set-asides. SAC ¶¶ 34, 43; ECF Nos. 79-9 & 79-11. In support of the bid protests, Roy Adams, President of Adams, averred that AAI would be "irreparably harmed" by the DOL's decision. SAC ¶¶ 35, 44; ECF No. 79-10 ¶¶ 11-13; ECF No. 79-12 ¶¶ 11-13.

As part of his pre-transaction due diligence requests, Weissman asked the Director Defendants to provide, among others, information regarding any material litigation in which AAI was or might become involved. SAC ¶¶ 55, 56; ECF No. 102-38 at 6, 9. But the Director Defendants did not provide Weissman or his advisors information about any existing or impending bid protests or the impending loss of the two Job Corps Center contracts in their due diligence responses. SAC ¶¶ 56-57; ECF No. 102-40; ECF No. 102-41 ¶ 10. The loss of two of the Job Corps Centers contracts was disclosed only the day before the ESOP Transaction in lengthy disclosure schedules for the ESOP Transaction, but no change was made to the transaction price. ECF No. 102-36; ECF No. 102-41 ¶ 11.  On October 25, 2012, Weissman caused the Plan to purchase 100% of the AAI stock from the Selling Shareholder Defendants (*i.e.*, Roy Adams, Leslie Adams, Daniel Norem, and the Norem Trust) for $33.5 million. SAC ¶ 58; ECF No. 153 at 2.

Weissman remained the trustee of the ESOP until May 2016. SAC & Answ. ¶ 18. The ESOP fiduciaries did not inform the participants of the appointment of a new trustee until May 2018— after this action was filed. *Id*.; ECF No. 79-3 at 3. As of April 2018, the Summary Plan Description for the ESOP ("the SPD") available to employees continued to identify Weissman as the trustee. SAC & Answ. ¶ 18. The ESOP fiduciaries never disclosed his criminal conduct to ESOP participants. *Id*. ¶ 32.

**B.     The Claims and Relief Requested**

The Second Amended Complaint alleges five counts on behalf of a certified class of participants and beneficiaries:

- **Count I** alleges that Weissman failed to ensure that the Plan paid no more than fair market value for the AAI stock and caused the Plan to engage in a prohibited transition pursuant to ERISA § 406(a) and the Selling Shareholder Defendants were aware of those facts and have liability by knowingly participating in this prohibited transaction. *Id*. ¶¶ 93-98.

- **Count II** alleges that the Selling Shareholder Defendants engaged in prohibited transactions pursuant to ERISA § 406(b) and dealt with the assets of the Plan in their own interest by selling their shares of AAI stock to the ESOP. *Id*. ¶¶ 100-05.

- **Count III** alleges that the Director Defendants breached their fiduciary duties under ERISA § 404(a)(1) by failing to conduct an adequate investigation of Weissman before or after October 2012, withholding material information from him, permitting him to proceed with the October 2012 Transaction, and failing to take sufficient steps or corrective action to protect participants in the Plan. *Id*. ¶¶ 107-16.

- **Count IV** alleges that AAI violated ERISA § 104(b) by failing to furnish an updated and correct SPD and breached its fiduciary duties by failing to inform participants about Weissman. *Id*. ¶¶ 118-28.

- **Count V** alleges that certain indemnification provisions that purport to require the Plan participants to be responsible for the liability or breaches of Defendants are void as against public policy under ERISA § 410. *Id*. ¶¶ 130-45.

The Complaint seeks, among other relief, (1) declarations that Defendants have breached their fiduciary duties and that the Selling Shareholder Defendants have engaged in prohibited transactions; (2) an order removing Defendants as fiduciaries and requiring Defendants to restore all the losses resulting from their fiduciary breaches and violations to the ESOP; (3) an order requiring AAI as Plan Administrator to provide an updated SPD, disclose to ESOP participants any investigation conducted concerning Weissman, and provide an accounting to the Class of the financial accounts of the Plan; and (4) a declaration that any indemnification agreement between Defendants and AAI or the ESOP is void. *Id*. Prayer for Relief ¶¶ A-B, D-G, J.

## C.   Procedural History

Plaintiffs filed their initial Complaint on May 9, 2018, alleging six counts under ERISA, including a breach of fiduciary duty claim solely against Weissman. ECF No. 1. Defendants AAI, Roy Adams, Leslie Adams, and Dan Norem moved to dismiss on statute of limitations and other grounds on July 30, 2018. ECF No. 18. After Plaintiffs' counsel learned that Weissman had died on May 10, 2018, Plaintiffs filed pursuant to Rule 25(a)(1) a motion to substitute his widow, Janice U. Weissman for Mr. Weissman, which the Court granted on October 4, 2018. ECF Nos. 33 & 36. Plaintiffs filed on October 22, 2018 an Amended Complaint that was substantially the same as the original Complaint. ECF Nos. 39, 39-1, 40, & 41. After learning that Mr. Weissman had little assets from which to obtain a recovery, Plaintiffs voluntarily dismissed Ms. Weissman from the action without prejudice on November 13, 2018. ECF No. 45.

*Motion to Dismiss*

The Court granted Defendants' motion to dismiss as to the original indemnification claim but denied their motion as to the disclosure claim on January 24, 2019. ECF No. 58; ECF No. 61 at 1. On February 26, 2019, the Court denied Defendants' motion to dismiss as to the prohibited transaction and breach of fiduciary duty claim and allowed Plaintiffs to amend their Complaint with respect to their indemnification claim. *Id*. at 5. Plaintiffs filed their Second Amended

Complaint on March 5, 2019, alleging the current Counts I thought V against the Director and the Selling Shareholder Defendants and AAI. ECF No. 65; *supra* II.B. Plaintiffs moved for class certification on June 27, 2019. ECF No. 79. The Court granted class certification as to all counts, appointed Plaintiffs Carol Foster and Theo Foreman as class representatives, and appointed Feinberg, Jackson, Worthman & Wasow LLP and Block & Leviton LLP as Co-Lead Counsel for the Class on September 3, 2019. ECF No. 89 at 13; ECF No. 94 at 13.

*Discovery*

Over the course of fact and expert discovery between August 2018 and April 2020, Plaintiffs served more than forty-five requests for production of documents on Defendants and served more than five document subpoenas on non-parties and three document subpoenas on Defendants' experts. Cheng Decl. ¶ 2. Defendants collectively produced more than 10,000 pages of documents, and non-parties produced more than 25,000 pages. *Id*. ¶ 4. Plaintiffs served three expert reports, two of which were rebuttal reports on Defendants' expert reports. *Id*. ¶ 7. Class Counsel took the Rule 30(b)(6) deposition of AAI and four fact witness depositions, including the depositions of Roy Adams, Daniel Norem, Joshua Edwards, the managing director at Weissman's valuation advisor Eureka Capital Advisors LLC and Karen Ng, Weissman's legal advisor. *Id*. ¶ 5. Class Counsel also took the depositions of Defendants' three experts and defended the two named Plaintiffs' depositions and two expert witness depositions. *Id*. ¶ 8.

*Summary Judgment*

Plaintiffs filed a motion for partial summary judgment on Counts I and III on January 30, 2020. ECF No. 102. Defendants filed a motion for summary judgment on all counts on April 9, 2020. ECF No. 137. The Court denied Plaintiffs' motion, granted Defendants' motion as to Count I under ERISA § 406(a) as to Defendants Leslie Adams and Joy Curry Norem, and Count II under ERISA § 406(b) as to all Defendants, and denied the rest of Defendants' motion on July 6, 2020. ECF No. 153 at 21. The Court held as to Count I that no reasonable trier of act could find that Defendants were acting as fiduciaries for purposes of the October 2012 Transaction and Roy Adams and Dan Norem were acting as non-fiduciaries, but that there was a fact issue as to whether they had knowingly participated in the ESOP Transaction. *Id.* at 17. The Court also

found that at least the equitable remedy of rescission was available. *Id*. The Court held that Count II fails because Plaintiffs' § 406(b) claim is only available against a fiduciary. *Id*. at 17-18.

*Pretrial Proceedings*

The parties filed their respective motions *in limine* in February and March 2021. ECF Nos. 182-84, 187-88 & 197-98.  The court held a hearing on the motions in *limine* and largely denied the motions in limine.

On June 22, 2021, the Court reset the trial date to August 30, 2021. ECF No. 214. The parties completed their respective pretrial submissions in early July 2021. ECF Nos. 204-07, 209-10 & 215.

*Settlement Conferences*

The Court referred the case to Magistrate Judge Virginia K. DeMarchi on November 13, 2020 for a settlement conference. ECF No. 163. The parties, including Plaintiffs Carol Foster and and Defendants Roy Adams and Daniel Norem, participated in a video settlement conference with Judge DeMarchi on December 4, 2020 and a further video settlement conference with her on January 21, 2021. ECF Nos. 166 & 176; Feinberg Decl. ¶ 2. The parties were not able to make significant progress during these settlement conferences, and it appeared that case was headed for trial. *Id.* In June 2021, the Parties agreed to renew settlement discussions. *Id*. The parties participated in a further settlement conference with Judge DeMarchi on July 22, 2021. ECF No. 222; Feinberg Decl. ¶ 2. By the end of the conference, the parties had made substantial progress on the non-monetary terms of a settlement, with Defendants agreeing to continue to consider Plaintiffs' offer on monetary terms and the parties providing a confidential status report to Judge DeMarchi by July 28, 2021. *Id.*; ECF No. 222. Judge DeMarchi issued on July 28, 2021 a "mediator's proposal," which all parties accepted by noon on July 29, 2021. Feinberg Decl. ¶ 2. The parties subsequently entered into the formal Settlement Agreement on September 23, 2021. *Id*.

## III.    THE TERMS OF THE SETTLEMENT AND PLAN OF ALLOCATION

The terms of the proposed Settlement are set forth in the Settlement Agreement ("Agmt."). In short, the Settlement Agreement provides for a payment of $3 million, inclusive of

payments to the Class, Class Counsel's attorneys' fees and litigation expenses, and incentive awards to the Class Representatives. Agmt. §§ I.G, III.1, VIII.1. AAI will not pay for the Settlement or provide an indemnification to any of the other Defendants and will aver that AAI has made no such payments or will aver that any such amounts have been refunded to AAI and state the amounts refunded. *Id.* § VI.1. Non-AAI Defendants will pay $3 million into the Settlement Fund by September 24, 2021. *Id.* § III.1. In addition to the settlement payment, non-AAI Defendants will bear all costs for settlement administration including those associated with distribution of the Settlement to the Class. *Id.* § IV.7. AAI will issue a revised SPD compliant with ERISA. *Id.* § VI.2. The class defined in the Settlement is identical to the certified Class, with the addition of an end date to the class period. *Id.* § I.H. The Settlement Agreement does not provide for any reversion to Defendants.

In exchange, Plaintiffs and the Class will dismiss the claims asserted in the Second Amended Complaint with prejudice and release Defendants from any and all claims that the Class asserted or could have asserted that relate to or arise out of the facts alleged or the claims set forth in the Second Amended Complaint, including: (a) the October 2012 Transaction or (b) disclosure violations based on the same factual predicate as those set forth in Count IV of the Second Amended Complaint through the date of settlement. Agmt. § XIV.1.

Pursuant to Plaintiffs' proposed Plan of Allocation, after deductions for attorneys' fees, cost reimbursements, and incentive awards to the Class Representatives, each Class Member will be allocated a pro rata share of the net settlement proceeds based upon the number of vested AAI shares allocated to that Class Member's ESOP Account, as a fraction of the total number of vested shares allocated to the ESOP accounts of all Class Members. Cheng Decl. Ex. A. After final approval becomes non-appealable, the net settlement proceeds allocated to Class Members will be distributed based on whether they are eligible for a distribution from the ESOP or the Adams and Associates, Inc. 401(k) Profit Sharing Plan ("the AAI 401(k) Plan"). *Id.* If they are former employees or otherwise eligible for an immediate distribution, they will have the option to receive a check for their share of the net settlement proceeds, to elect a rollover to an IRA or another eligible retirement account or to have their settlement monies remain in the AAI 401k

Plan. *Id.*; Agmt. § IV.5(a). If they are not eligible for an immediate distribution from the AAI 401(k) Plan (i.e. most current employees), their shares of the proceeds will be transferred to their existing account in the AAI 401(k) Plan. Cheng Decl. Ex. A; Agmt. § IV.5(b). If they do not already have an account in the AAI 401(k) Plan, an account will be established for them. Cheng Decl. Ex. A; Agmt. § IV.5.

## IV.   SERVICE AWARDS AND ATTORNEYS' FEES AND COSTS

Pursuant to the District's Procedural Guidance for Class Action Settlements for preliminary approval, Class Counsel provides the information below regarding their future requests for attorneys' fees and costs and service awards. The Settlement Agreement contemplates that Class Counsel will request payment of attorneys' fees and costs and incentive awards to the Class Representatives from the Settlement Fund. Agmt. § VIII.1. As of September 22, 2021, Class Counsel's combined lodestar is approximately $2.6 million . Feinberg Decl. ¶ 3; Barton Decl. ¶ 3. Class Counsel will expend additional hours in, for example, preparing for preliminary and final approval, answering questions from Class Members, and monitoring the administration of the Settlement. Barton Decl. ¶ 3. Class Counsel has also incurred approximately $162,000 in expenses as of September 22, 2021. Feinberg Decl. ¶ 3; Barton Decl. ¶ 4. Each of the two Class Representatives has been actively engaged in the litigation since its inception and participated in discovery and the settlement conferences with Judge DeMarchi. ECF No. 79-17 ¶¶ 4-11; ECF No. 79-19 ¶¶ 4-11; ECF Nos. ECF Nos. 166, 176 & 222. Class Counsel expects to request a fee award of $1,000,000—i.e., 33.3% of the Settlement Fund and less than 40% of Class Counsel's current lodestar—reimbursement for expenses incurred up to the final approval hearing, and an incentive award of $5,000 to each of the two Class Representatives. Class Counsel will address the propriety of these requests in their motion for fees, costs, and service award.

Pursuant to the District's Procedural Guidance for Class Action Settlements, Class Counsel provides the following summary of information for a class settlement in *Cunningham v. Wawa, Inc.*, No. 2:18-cv-03355-PD (E.D. Penn.), an ERISA class action brought by both Class Counsel involving an ESOP:

| Total Settlement Fund | $21,600,000 |
|---|---|
| Total Number of Class Members | 4,043 |
| Total Number of Class Member to Whom Notice Was Sent | 4,043 |
| Method of Notice | By U.S. mail: 4,029 class members<br>By email: 31 class members |
| Number of Claim Forms Submitted | N/A: No claim form was required for class members to receive payment. All ESOP participants received payment |
| Average Recovery Per Class Member | $4,265 per ESOP participant (after attorneys' fees and costs were deducted) |
| Amount Distributed to Cy Pres | There may be a small amount (approximately $100) to be distributed cy pres as a result of a tax refund to the Settlement Fund |
| Settlement Administrative Costs | N/A: Defendants paid all settlement administration costs |
| Attorneys' Fees and Costs | Fees: $4,322,500<br>Costs: $153,851.05 |

Barton Decl. ¶ 5. The case concerned certain amendments to Wawa, Inc.'s ESOP and class members allegedly receiving less than fair market values for their shares of the company stock, which were liquidated as a result of the amendments. *Cunningham v. Wawa, Inc*., CV 18-3355, 2021 WL 1626482, at *1 (E.D. Pa. Apr. 21, 2021). The net settlement proceeds in that case were distributed pro rata to each class member based on his or her Wawa shares as a fraction of all class members' company shares, with no submission of any claim form required. *Id*. at *3. Because the defendants agreed to pay and paid for all costs of notice and settlement administration in that case, those costs were not deducted from and did not reduce the settlement fund. *Id*. ¶ 5.

## V.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008); *Campbell v. Facebook, Inc*., 951 F.3d 1106, 1121 (9th Cir. 2020) (recognizing same policy). This policy is also evident in the Federal Rules of Civil Procedure and the Local Rules of this District. *See In re Syncor ERISA Litig*., 516 F.3d at 1101 (citing Fed. R. Civ. R. 16(a)(5));

Fed. R. Civ. P. 16(a)(5) (one of the purposes of a pretrial conference is "facilitating settlement"); L.R. 16-8(a) ("At any time after an action has been filed, the Court on its own initiative or at the request of one or more parties may refer the case to one of the Court's ADR programs."). To protect the interests of the class, Federal Rule of Civil Procedure 23(e) provides that a class action cannot be settled without court approval. Fed. R. Civ. P. 23(e). Approval under Rule 23(e) involves "a two-step process": "First, the Court decides whether the class action settlement deserves preliminary approval. Second, after notice is given to class members, the Court determines whether final approval is warranted." *Vikram v. First Student Mgt., LLC*, No. 17-CV-04656-KAW, 2019 WL 1084169, at *3 (N.D. Cal. Mar. 7, 2019).

The request for preliminary approval only requires an "initial evaluation" of the fairness of the proposed settlement. *Manual for Complex Litigation* § 21.632 (4th ed. 2004). The purpose of preliminary approval is to determine "whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a fairness hearing." William B. Rubenstein, *et al.*, *Newberg on Class Actions* § 13:10 (5th ed. 2013). As approval is only preliminary, courts generally undertake a limited review of the proposed settlement. *Id.* Courts conduct the ultimate assessment of whether a proposed settlement is fair, adequate, and reasonable pursuant to the factors of Rule 23(e)(2) at final approval because "[t]he Court cannot, however, fully assess such factors until the final approval hearing." *De Leon v. Ricoh USA, Inc.*, No. 18-CV-03725, 2019 WL 6311379, at *10 (N.D. Cal. Nov. 25, 2019) (J. Corley). "At the preliminary approval stage, 'the settlement need only be potentially fair.'" *Johnson v. Serenity Transp., Inc.*, No. 15-CV-02004, 2021 WL 3081091, at *4 (N.D. Cal. July 21, 2021) (J. Corley) (citation omitted). "Preliminary approval is thus appropriate where 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Id.* (citation omitted); *Etter v. Allstate Ins. Co.*, No. C 17-00184, 2018 WL 5761755, at *1 (N.D. Cal. May 30, 2018) (stating same). Here, the proposed Settlement readily satisfies the requirements for preliminary approval.

### A.      The Settlement Is the Result of Serious, Informed, and Non-Collusive Negotiations

"To approve a proposed settlement, a court must be satisfied that the parties 'have engaged in sufficient investigation of the facts to enable the court to intelligently make . . . an appraisal of the settlement.'" *De Leon*, 2019 WL 6311379, at *10 (J. Corley) (citation omitted). "'A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.'" *Norton v. LVNV Funding, LLC*, No. 18-CV-05051-DMR, 2021 WL 3129568, at *7 (N.D. Cal. July 23, 2021) (citation omitted). "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Viceral v. Mistras Grp., Inc.*, No. 15-CV-02198, 2016 WL 5907869, at *8 (N.D. Cal. Oct. 11, 2016); *see Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2015 WL 9196054, at *9 (N.D. Cal. Dec. 17, 2015) ("Settlements are entitled to 'an initial presumption of fairness' because they are the result of arm's-length negotiations among experienced counsel."). The fact that a settlement was reached after one or more settlement conferences with a Magistrate Judge further evidences the non-collusive nature of the negotiations. *See Foster v. Advantage Sales & Mktg., LLC.*, No. 18-CV-07205-LB, 2019 WL 6699793, at *6 (N.D. Cal. Dec. 9, 2019) (finding the factor met where the settlement "was reached after a settlement conference with Judge Westmore"); *Etter*, 2018 WL 5761755, at *3 (granting preliminary approval where the proposed settlement agreement resulted from "extensive mediation efforts supervised by Magistrate Judge Jacqueline Corley, including two in-person settlement conferences and subsequent deliberations").

Here, fact discovery closed on December 13, 2019. ECF No. 67 at 1. A settlement was not reached until after Class Counsel had completed extensive fact and expert discovery, the Court had ruled on the parties' respective motions for summary judgment in July 2020, and Plaintiffs had completed their pretrial submissions in July 2021 and the case was approximately only a month away from trial. ECF No. 153; ECF Nos. 204-07, 209-10 & 215. Over the course of this litigation, Class Counsel issued more than forty-five requests for production and more than ten document subpoenas and obtained more than 35,000 pages of documents from

Defendants and non-parties. Cheng Decl. ¶ 4. Class Counsel met and conferred with Defendants and non-parties on discovery matters throughout the case in an effort to resolve disputes without the Court's involvement. *Id*. ¶ 6. Class Counsel served one expert report on valuation and two expert rebuttal reports to Defendants' experts on valuation and fiduciary standards. *Id*. ¶ 7. Class Counsel took a total of eight depositions, including a Rule 30(b)(6) deposition of AAI, the depositions of two named individual Defendants, two of Weissman's advisors, and Defendants' three experts. *Id*. ¶¶ 5, 8.

The terms of the Settlement resulted from hard-fought negotiations. The Parties negotiated the principal terms of the agreement over the course of three video settlement conferences facilitated by Judge DeMarchi on December 4, 2020, January 21, 2021, and July 22, 2021. ECF Nos. 166, 176 & 222. After the third conference, the parties continued to deliberate the proposed terms of a settlement and reported to Judge DeMarchi, which resulted in her issuing a mediator's proposal on July 28, 2021 that included both monetary and non-monetary terms. ECF No. 222; Feinberg Decl. ¶ 2. Both Plaintiffs and Defendants accepted the proposal on July 29, 2021. *Id*. The parties entered into the Settlement Agreement on September 23, 2021. *Id*.

"'The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'" *Urakhchin v. Allianz Asset Mgt. of Am., L.P*., SACV151614, 2018 WL 3000490, at *5 (C.D. Cal. Feb. 6, 2018) (quoting *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) and granting preliminary approval). This presumption is especially warranted based on the opinion of "experienced plaintiffs' advocates and class action lawyers." *Does I v. Gap, Inc*., No. CV-01-0031, 2002 WL 1000073, at *13 (D.N. Mar. Is. May 10, 2002); *Walsh v. CorePower Yoga LLC*, No. 16-CV-05610, 2017 WL 589199, at *10 (N.D. Cal. Feb. 14, 2017) (holding that settlements that are "the result of arms'-length negotiations among experienced counsel" weigh in favor of preliminary approval). This Court previously recognized that Class Counsel are "experienced class actions lawyers who specialize in employee benefit cases." *Foster v. Adams and Assocs., Inc*., No. 18-CV-02723-JSC, 2019 WL 4305538, at *6 (N.D. Cal. Sept. 11, 2019). Other courts have likewise recognized the extensive experience of Class Counsel in ERISA class actions. *E.g., Cunningham v. Wawa, Inc.,* 387 F.Supp.3d 529, 539

(E.D. Pa. 2019) (finding Class counsel in an ESOP class action – including Feinberg Jackson Worthman & Wasow LLP and Block & Leviton LLP – "have substantial experience with both class actions and ERISA litigation, and their performance here and in [prior litigation before the same judge] well confirms their competence"). As such, Class Counsel's endorsement of the Settlement Agreement favors preliminary approval.

In short, the parties entered into the Settlement Agreement after (a) Class Counsel had completed discovery and obtained a full understanding of the legal and factual issues surrounding the case and (b) the parties had engaged in extensive arms-length negotiations involving informed and experienced Class Counsel and facilitated by a Magistrate Judge. Accordingly, the Settlement Agreement is the product of serious, informed, non-collusive negotiations.

## B.      The Settlement Is Well Within the Range of Possible Approval

"In determining whether the settlement agreement 'falls within the range of possible approval,' the Court must focus on 'substantive fairness and adequacy' and consider Plaintiffs' 'expected recovery balanced against the value of the settlement offer.'" *Johnson*, 2021 WL 3081091, at *5 (quoting *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007)); *Dickey v. Adv. Micro Devices, Inc.*, No. 15-CV-04922, 2019 WL 4918366, at *5 (N.D. Cal. Oct. 4, 2019) (stating same). While the Court's ultimate assessment at final approval of whether the proposed settlement is fair, reasonable, and adequate depends upon the factors set forth in Rule 23(e)(2) and *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935 (9th Cir. 2011), in order to determine whether preliminary approval is appropriate, "the settlement need only be potentially fair." *De Leon*, 2019 WL 6311379, at *10; *Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. EDCV19620, 2020 WL 5044418, at *6 (C.D. Cal. May 7, 2020) ("the court need only decide whether the settlement is potentially fair . . . in light of the strong judicial policy in favor of settlement of class actions"). "It is well-settled law that a proposed settlement may be acceptable even though it amounts only to a fraction of the potential recovery that might be available to class members at trial." *Toolajian v. Air Methods Corp.*, No. 18-CV-

06722, 2020 WL 8674094, at *10 (N.D. Cal. Apr. 24, 2020); *Philips v. Munchery Inc.*, No. 19-CV-00469, 2020 WL 6135996, at *8 (N.D. Cal. Oct. 19, 2020) (J. Corley) (stating same).

Here, the Settlement Agreement provides that the non-AAI Defendants will pay $3 million into a Settlement Fund. Agmt. § III.1. Plaintiffs' valuation expert concluded that Weissman's advisor, Eureka, had made errors in valuing the AAI stock for the October 2012 Transaction that resulted in the ESOP overpaying and therefore incurring a loss of $10.5 million. ECF No. 206 at 65-66. The monetary component of the Settlement represents approximately 31.5% of the maximum amount of the loss determined by Plaintiffs' expert. This amount would be the maximum loss that that Class Members could recover if the case were successfully litigated through trial on Counts I and III, and the Court agreed with Plaintiffs on the measure of recovery based on AAI stock's fair market value at the time of the Transaction, and the resulting judgment could be collected.

The Settlement also provides important non-monetary relief. In addition to Defendants paying for all costs of the Settlement Administration, the Settlement ensures that all Class Members can take advantage of the favorable tax-deferred benefits of the settlement. Agmt. § VII.5. In settlement of Count V, the anti-indemnification claim, the Settlement Agreement provides that AAI will not pay for the Settlement or indemnify any of the other Defendants, and require Defendants to aver that it has made no such payments or to aver that any such amounts have been refunded to AAI and state the amounts refunded. Agmt. § VI.1. On Count IV, the SPD claim, the Settlement requires AAI to issue a revised SPD compliant with ERISA. *Id*. § VI.2.

"ERISA actions are notoriously complex cases, and ESOP cases are often cited as the most complex of ERISA cases." *Pfeifer v. Wawa, Inc*., No. CV16-497, 2018 WL 4203880, at *7 (E.D. Pa. Aug. 31, 2018). In this case, Class Counsel has had the benefit of several decisions from the Court, including the summary judgment order, which set forth the substantive law and analytical framework applicable to Plaintiffs' claims. ECF Nos. 89, 94 & 153. Class Counsel recognizes the expense, risk, and length of continued proceedings necessary to prosecute the litigation against Defendants through trial and appeals, based on the Courts' decisions and the risks that any or all of Plaintiffs' claims might fail following a trial on the merits or on appeal.

For example, Count III depended in part upon establishing an underlying fiduciary breach by a deceased ESOP trustee to be proved to establish the Director Defendants' failure to remedy that breach or monitor the breaching trustee. *See* SAC ¶¶ 111-16. The derivative character introduces difficult issues regarding the knowledge of individual Defendants that would present challenges at trial. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Knapp v. Art.com, Inc.*, 283 F.Supp.3d 823, 832 (N.D. Cal. 2017) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)). Class Counsel believes that the Settlement is well within the range of reasonableness.

The reasonableness of the monetary relief provided by the Settlement is further supported by settlements reached in many other ERISA class actions. *E.g., Urakhchin*, 2018 WL 3000490, at \*4 (preliminarily approving ERISA class action settlement that recovered $12 million or 25.5% of estimated maximum damages); *O'Dowd v. Anthem, Inc.*, No. 14-CV-02787, 2019 WL 4279123, at \*14 (D. Colo. Sept. 9, 2019) (finding 29% recovery fair and adequate in ERISA class action); *Karpik v. Huntington Bancshares Inc.*, No. 2:17-CV-1153, 2021 WL 757123, at \*8 (S.D. Ohio Feb. 18, 2021) (approving settlement representing "approximately 30% of the total damages that Plaintiffs claimed at the mediation were associated with Defendants' alleged fiduciary breaches"); *Sims v. BB&T Corp.*, No. 1:15-CV-732, 2019 WL 1995314, at \*5 (M.D.N.C. May 6, 2019) (finding that recovery representing "19% of the total investment and recordkeeping damages sought by the plaintiffs" was substantial and adequate); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014) (approving settlement that recovered 3.2% of estimated maximum damages).

The scope of the releases in a proposed settlement is acceptable where the claims released are limited to those based upon the facts set forth in the complaint. *Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1332 (N.D. Cal. 2014); *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the

claims in the settled class action"). Here, the Settlement only releases relating to or arising out of facts alleged or claims set forth in the Second Amended Complaint. Agmt. § XIV.1.

### C.     The Settlement Grants No Preferential Treatment to Any Class Members

In determining whether preliminary approval is appropriate, the Court "must consider whether the Settlement Agreement 'provides preferential treatment to any class member.'" *Philips*, 2020 WL 6135996, at *7 (quoting *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012)). The Settlement and proposed Plan of Allocation do not unduly favor the Class Representatives or segments of the Class.

The Settlement Agreement and proposed Plan of Allocation treat all members of the Class the same in that each of them will receive a monetary distribution from the Settlement Fund on a *pro rata* basis based on the number of vested AAI shares allocated to the Class Member's ESOP account, as a fraction of all the vested shares allocated to all Class Members' ESOP accounts. Agmt § IV.4; Cheng Decl. Ex. A. Thus, the Settlement Fund will be allocated based on each Class member's underlying economic loss from the alleged overpayment for ESOP shares. In *Kaplan v. Houlihan Smith & Co.*, No. 12 C 5134, 2014 WL 2808801, (N.D. Ill. June 20, 2014), the court approved the plan of allocation in an ESOP class action as reasonable where "[t]he way the settlement proceeds will be divided among the class members" is that "[t]he settlement amount (after fees and expenses) will be divided pro rata, based on the number of shares each class member held in his/her ESOP account on [a specified date]." *Id.* at *3; *see De Leon*, 2019 WL 6311379, at *11 (finding no preferential treatment where *"*[u]nder the Agreement, each Class Member may claim their pro rata share of the Net Settlement Amount based on their respective number of workweeks worked during the class period"*)*. Here, under the proposed Plan of Allocation, each Class Member's share of the net settlement proceeds is calculated and determined on a *pro rata* basis by comparing the number of AAI shares held in his or her ESOP account to the total number of AAI shares held in the ESOP accounts of all Class Members.

Class Counsel will request a service award of $5,000 to each Class Representative. "Incentive awards are fairly typical in class action cases." *Chen v. Chase Bank USA, N.A.*, No.

19-CV-01082, 2020 WL 264332, at *7 (N.D. Cal. Jan. 16, 2020) (J. Corley) (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)). "Their purpose is to 'compensate class representatives for work done on behalf of the class, and to make up for financial or reputational risk undertaken in bringing the action.'" *Johnson*, 2021 WL 3081091, at *4. "Incentive awards of $5,000 have been deemed 'presumptively reasonable' in this District." *Chen*, 2020 WL 264332, at *7. Accordingly, the Settlement does not provide preferential treatment to the named Plaintiffs or any Class Member.

### D.    The Settlement Has No Obvious Deficiencies

The final factor the Court must consider is "whether there are obvious deficiencies in the Settlement Agreement." *Philips*, 2020 WL 6135996, at *7. "Obvious deficiencies can include collusive negotiation, 'unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys.'" *Johnson*, 2021 WL 3081091, at *4 (quoting *Harris v. Vector Mktg. Corp.*, No. C-08-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011)). The Ninth Circuit has advised courts to be concerned (a) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (b) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries 'the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class'"; and (c) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth*, 654 F.3d at 947; *see Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021). Such signs do not necessarily mean that a settlement is improper, but only that it is supported by an explanation of why the fee is justified and does not betray the class's interests. *In re Bluetooth*, 654 F.3d at 949.

Class Counsel will seek a percentage of the Settlement Fund not to exceed 33.3%. In conjunction with final approval, Class Counsel will file a motion for attorney's fees and litigation expenses explaining why the requested amounts are reasonable and justified in light of the circumstances of the case including the attorney lodestar. *See Johnson*, 2021 WL 3081091, at

*3 (granting preliminary approval where the plaintiff was not requesting fees or a service award but requiring class counsel to articulate attorney's fees and service payment requests in separate application). While Defendants have agreed not to oppose Class Counsel's requests for attorney's fees so long as the fee motion does not exceed 33.3%, the Settlement does not provide for the payment of attorneys' fees separately from class funds or for the reversion of amounts not paid as fees to the Defendants. *See Urakhchin*, 2018 WL 3000490, at *6 (holding that "clear sailing" provision did not signal collusion where fees would be paid from capped settlement fund). As discussed above, the Settlement provides no preferential treatment to any Class Member. *Supra* V.C.

At this stage, the question is merely whether the agreement is preliminarily fair. The specific amounts of attorney's fees and any class representative incentive award can be reserved on this preliminary approval motion to the final approval hearing and the discretion of the Court. *See Anderson-Butler v. Charming Charlie Inc.*, No. 14 CV 1921, 2015 WL 4599420, at *11 (E.D. Cal. July 29, 2015) (preliminarily approving settlement and declining to "evaluate the fee award at length" in "considering whether the settlement is adequate," because "[i]f the court, in ruling on the fees motion, finds that the amount of the settlement warrants a fee award at a rate lower than what plaintiff's counsel requested" the court has the power to reduce the award accordingly).

## VI.   THE CLASS DEFINITION SHOULD BE MODIFIED TO HAVE AN END DATE

An order granting class certification "may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Holding a plaintiff to the original class definition "would ignore the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition." *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004); *see Sampson v. Knight Transp., Inc.*, C17-0028-JCC, 2021 WL 2255129, at *2 (W.D. Wash. June 3, 2021) ("the district court retains flexibility and is free to modify a class definition in light of developments during the course of litigation"); *Howell v. Advantage RN, LLC*, 401 F.Supp.3d 1078, 1085 (S.D. Cal. 2019) (courts retain discretion to modify the class definition "in light of subsequent developments in the litigation"). Among other things, courts

generally agree that at some point, a class definition should have an end date although there is no set rule as to what the end date should be. *See Guidry v. Wilmington Tr.*, 333 F.R.D. 324, 329 (D. Del. 2019) (surveying law and setting an end date as of the court's decision); *Sampson*, 2021 WL 2255129, at \*2-3 (survey law and setting an end date as of the court's order).

Although an open-ended date made sense in the class definition while the litigation was ongoing, the Parties agree that an end date of December 31, 2020 for the Class makes sense for purposes of settlement. Agmt. § I.H. The Settlement Agreement defines December 31, 2020 as the end date for the Class because that is the most recent date for which Defendants have data for the Class Members' numbers of vested shares in their ESOP accounts. Feinberg Dec. ¶ 4; Agmt. § I.H. This is a sensible and workable modification.

## VII.   THE NOTICE AND PLAN OF NOTICE SHOULD BE APPROVED

Once the parties obtain preliminary approval of the settlement, Rule 23(e) requires that the Court to direct notice in a reasonable manner to all Class Members who would be bound by the settlement. A proper notice should "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B); *see* Manual for Complex Litigation, *supra*, § 21.312. "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). In addition to the requirements of Rule 23(c), this District's procedural guidelines for notice requires information such as class counsel's contact information, the address for the class settlement website, and instructions on how to access the case docket. *See* Procedural Guidance for Class Action Settlements, *available at* https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/; *De Leon*, 2019 WL 6311379, at \*13 (approving notice containing this information in addition to that required by Rule 23(c)). Here, the proposed notice to the Class provides information on all of

these subjects and informs Class Members about their rights under the Settlement as well as their

right to be heard at the final fairness hearing. *See* Cheng Decl. Ex. B.

It is well-established that notice sent by first class mail is sufficient when the names and

addresses of the class members are known. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-77

(1974); *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("It is

beyond dispute that notice by first class mail ordinarily satisfies rule 23(c)(2)'s requirement that

class members receive 'the best notice practicable under the circumstances.'"); *see* Manual for

Complex Litigation, *supra*, § 21.311 (explaining that individual notice via mail is preferred when

names and addresses are known). Here, the members of the Class will receive notice by U.S.

Mail. Agmt. § II.3. Defendants have agreed to provide Class Counsel with the names and contact

information of all Class Members by October 6, 2021. *Id*. § II.7. Publication notice is not

necessary in this case, because Defendants' data identifies the names and addresses of all Class

Members. In these circumstances, courts have regularly authorized notice by mail only. *See, e.g.,*

*Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 166 & 173 (N.D. Cal. 2019) (J. Corley)

(approving notice by mail only); *Urakhchin*, 2018 WL 3000490, at *7 (same). Thus, the

proposed procedures satisfy due process, meet the requirements of Rule 23, and should be

approved.

The settlement administrator's responsibilities will include, among others, mailing the

settlement Notice to Class Members, paying the net settlement amount allocated to each Class

Member by check or to the AAI 401(k) Plan, and setting up and maintaining a settlement website

consistent with Class Counsel's instructions or the court-approved Plan of Allocation. Agmt.

§§ VII.2. Class Counsel has solicited bids for class notice and administration services through a

competitive process. Class Counsel solicited responses to a request for proposals from reputable

service providers, of which four submitted bids. Cheng Decl. ¶ 9. Following review of the bids

and discussion with the respondents to ensure an apples-to-apples comparison of services, Class

Counsel proposes that the Court appoint RG/2 Claims Administration LLC as Settlement

Administrator.  *See* Cheng Decl. ¶ 12 and Ex. C. Non-AAI Defendants have agreed to pay for all

costs for settlement administration. Agmt. § IV.7. As such, those expenses will not be deducted

from the Settlement Fund. *See Schuchardt v. L. Off. of Rory W. Clark*, 314 F.R.D. 673, 691 (N.D. Cal. 2016) (J. Corley) (finding the settlement administrative costs reasonable and appropriate where the defendants were responsible for paying those costs and they "do not come from a common fund with the Class Members' recovery"). Block & Leviton LLP is currently using the notice and settlement administration services of RG/2 Claims Administration in another class action. Barton Decl. ¶ 6. In its response to Class Counsel's solicitation for this case, RG/2 Claims Administration estimated the administrative costs to be approximately $23,194 – $25,000, based on an estimated class size of 2,800 individuals. Cheng Decl. ¶ 11. This amount is within the range of those that courts have approved for class action settlements of less monetary value. *See, e.g., Chavez v. Converse, Inc.*, No. 15-CV-03746, 2020 WL 10575028, at *7 (N.D. Cal. Nov. 25, 2020) (approving settlement administration costs of $25,000.00 as fair and reasonable in $1,875,000 settlement); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 251 & 266 (N.D. Cal. 2015) (J. Corley) (approving settlement administration costs of $16,500 in $1 million settlement); *Francisco v. Emeritus Corp.*, No. 217CV02871, 2019 WL 7856768, at **2, 8 (C.D. Cal. Sept. 24, 2019) (approving settlement administration costs of $21,552 as reasonable in $250,000 settlement). Defendants have approved use of RG/2 Claims Administration. Cheng Decl. ¶ 10. Class Counsel recommends that the Court appoint RG/2 Claims Administration as the Settlement Administrator (subject to Class Counsel and Defendants entering into an acceptable engagement agreement with RG/2). *Id*. ¶ 12.

Pursuant to the Settlement Agreement, Defendants will prepare and provide, at their own expense, notice pursuant to the Class Action Fairness Act of 2005 ("CAFA"), including notices to the United States Department of Justice and Department of Labor and to the Attorneys General of all states in which the Class Members reside within 21 days of the execution of the Settlement Agreement or by October 14, 2021. Agmt. § XIII.1. Defendants will provide Class Counsel with a copy of the CAFA notice and materials that Defendants sent, within three business days after such notices have been sent. *Id*. § XIII.2.

## VIII.   THE PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *Thomas v. MagnaChip Semiconductor Corp*., No. 14-CV-01160, 2017 WL 4750628, at *8 (N.D. Cal. Oct. 20, 2017) (citation omitted). "Allocation of the settlement funds based on the extent of class members' injuries or the strength of their claims on the merits" meets the standard. *In re Lithium Ion Batteries Antitrust Litig*., No. 13-MD-02420, 2020 WL 7264559, at *12 (N.D. Cal. Dec. 10, 2020). "A plan of allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *In re Nexus 6P Prods. Liab. Litig*., No. 17-CV-02185, 2019 WL 6622842, at *9 (N.D. Cal. Nov. 12, 2019) (citation omitted). A pro rata distribution based on each class member's loss relative to that of the class as whole "has frequently been determined to be fair, adequate, and reasonable." *Hefler v. Wells Fargo & Co*., No. 16-CV-05479, 2018 WL 6619983, at *12 (N.D. Cal. Dec. 18, 2018) (collecting cases).

The Proposed Plan of Allocation here determines the monetary recovery of each Class Member based on the number of vested AAI shares allocated to the Class Member's ESOP account, as a fraction of all the vested shares allocated to all Class Members' ESOP accounts. Cheng Decl. Ex. A. Thus, the Plan of Allocation disburses the net settlement proceeds to each Class Member on a pro rata basis based on his or her shares of the overvalued AAI stock the ESOP purchased relative to the totality of all Class Members' shares of the same stock. Because the Plan of Allocation proposes a pro rata distribution based on the relative size of each Class Member's loss resulting from the ESOP's alleged overpayment, it is reasonable, fair, and adequate.

## IX.   THE COURT SHOULD ESTABLISH DATES FOR EFFECTUATING FINAL APPROVAL OF THE SETTLEMENT

In order to effect notice, fix a date for the final approval hearing, and provide a deadline for the submission of objections, Plaintiffs request that the Court establish the dates set forth in Plaintiffs' motion.

## X.    CONCLUSION

For the forgoing reasons, the Court should grant Plaintiffs' motion to preliminarily approve the proposed Settlement, approve the proposed Class notice, authorize its distribution to the Class, and set dates outlined above.

Dated: September 24, 2021                          Respectfully submitted,

 

Vincent Cheng
Email: vincent@blockesq.com
BLOCK & LEVITON LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Tel: (415)-968-8999
Fax: (617) 507-6020

R. Joseph Barton
Email: jbarton@blockesq.com
BLOCK & LEVITON LLP
1735 20th Street, N.W.
Washington, DC 20009
Tel: (202) 734-7046
Fax: (617) 507-6020

Daniel Feinberg
Email: dan@feinbergjackson.com
FEINBERG, JACKSON,
WORTHMAN & WASOW LLP
2030 Addison St., Suite 500
Berkeley, CA 94704
Tel: (510) 269-7998
Fax: (510) 269-7994

*Attorneys for Plaintiffs & the Class*