UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CAROL FOSTER, et al.,

          Plaintiffs,

    v.

ADAMS AND ASSOCIATES, INC., et al.,

          Defendants.

Case No.  18-cv-02723-JSC

**ORDER RE: MOTION FOR PRELIMINARY APPROVAL**

Re: Dkt. No. 231

Carol Foster and Theo Foreman brought this class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., on behalf of participants and beneficiaries of the Adams and Associates Employee Stock Ownership Plan.  Plaintiffs allege that Adams and Associates, Inc., Roy A. Adams, Leslie G. Adams, Daniel B. Norem, Joy Curry Norem, and The Daniel Norem Revocable Trust Dated January 9, 2002, (collectively "Defendants") breached their fiduciary duty to Plaintiffs, participated in prohibited transactions, failed to make required disclosures, and improperly agreed to indemnification.[1]  The Court previously certified a class under Federal Rules of Civil Procedure 23(b)(1) and 23(b)(2), and separately, granted in part and denied in part the parties' cross-motions for summary judgment. (Dkt. Nos. 89, 153.)  Shortly before trial was scheduled to commence, the parties notified the Court that they had reached a settlement and the underlying motion for preliminary approval of the class action settlement followed.  (Dkt. Nos. 225, 231.)  After carefully considering the arguments and briefing submitted, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and GRANTS the motion for preliminary approval.

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 6, 20, 44, 53, 54.)

**BACKGROUND**

This action concerns the Adams and Associates, Inc. Employee Stock Ownership Plan (the "ESOP"). On October 25, 2012, the ESOP purchased 100% of the stock of Adams and Associates, Inc. for $33.5 million from Defendants Roy Adams, Leslie Adams, and the Daniel Norem Revocable Trust. (Dkt. No. 70 at ¶ 1; Dkt. No. 102-12. 2) Adams and Associates is the plan sponsor and Plan Administrator of the ESOP. (Dkt. Nos. 102-2; 102-12.) Defendants Roy Adams, Leslie Adams, and Daniel Norem are officers and directors of Adams and Associates and members of the ESOP's Plan Committee. (Dkt. No. 70 at ¶¶ 10-12.) The Plan Committee is the ESOP's "named fiduciary." (Dkt. No. 102-48 at 5.) Adams and Associates hired Alan Weissman, now-deceased, to be the ESOP Trustee. (Dkt. No. 70 at ¶ 2.)

The procedural history is set forth in detail in the motion for preliminary approval.  (Dkt. No. 231 at 13-15.)  Following summary judgment, Plaintiffs' four remaining claims are: (1) that Mr. Adams and Mr. Norem engaged in a prohibited transaction under ERISA Section 406(a), 29 U.S.C. §1106(a); (2) that Mr. Adams and Mr. Norem breached their fiduciary duties under ERISA Section 404(a), 29 U.S.C. § 1104(a); (3) that Adams and Associates as the Plan Administrator failed to make the required disclosures under ERISA Sections 102, 104(b)(1) and Sections 404(a)(1)(A) & (B); and (4) that the indemnification provisions are void under ERISA § 410 and violate Mr. Adams and Mr. Norem's fiduciary duties.  (Dkt. Nos. 153, 205.)

**THE SETTLEMENT AGREEMENT**

**A. The Class**

The estimated class size is 2,800 individuals.  (Dkt. No. 231-3 at ¶ 11.)  Plaintiffs seek to modify the previously certified class to specify an end date.  The revised class definition is:

> All participants of the Adams and Associates ESOP from October 25, 2012 to December 31, 2020 who vested under the terms of the Plan and those participants' beneficiaries.

(Dkt. No. 231 at 2.)  Excluded from the Class are Defendants and their immediate family, any fiduciary of the Plan; the officers and directors of Adams and Associates or of any entity in which a Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons.  (*Id.*)

United States District Court
Northern District of California

2

United States District Court
Northern District of California

**B. Payment Terms**

The Settlement calls for the non-Adams and Associates Defendants to pay $3,000,000 into a settlement fund which will be allocated on a pro rata basis to class members minus any Court-approved deductions and expenses (including attorneys' fees, litigation costs, and service awards for the class representatives).  (Dkt. No. 230, Settlement Agreement ("Agmt.") at §§ III.1, VI.2.) Each class member's pro rata share will be "based upon the number of vested Adams and Associates shares allocated to that Authorized Claimant's ESOP account, as a fraction of the total number of vested Adams and Associates, Inc. shares allocated to all Authorized Claimants' ESOP accounts."  (Dkt. No. 231-4 at ¶ 4.)

After final approval, the net settlement proceeds allocated to class members will be distributed based on whether they are eligible for a distribution from the ESOP or the Adams and Associates, Inc. 401(k) Profit Sharing Plan ("the Adams and Associates 401(k) Plan"). If they are former employees or otherwise eligible for an immediate distribution, they will have the option to receive a check for their share of the net settlement proceeds, to elect a rollover to an IRA or another eligible retirement account, or to have their settlement monies remain in the Adams and Associates 401(k).  (Dkt. No. 230, Agmt. at § IV.5(a).) If they are not eligible for an immediate distribution from the Adams and Associates 401(k) Plan (i.e. most current employees), their shares of the proceeds will be transferred to their existing account in the Adams and Associates 401(k) Plan. (*Id.* at § IV.5(b).)  If they do not already have an account in the Adams and Associates 401(k) Plan, an account will be established for them. (*Id.* at § IV.5.)

The non-Adams and Associates Defendants will bear all the costs of settlement administration.  (*Id.* at § II.8.)

**C. Scope of Release**

Class members, including Plaintiffs Carol Foster and Theo Foreman agree to release Defendants

> from any and all claims, or causes of action, including any claims for costs, attorneys' fees, and/or expenses, whether in law or in equity, whether known or unknown, whether fixed or contingent, that the Class Members have against Defendants that (a) arise out of the 2012 ESOP Transaction or (b) relating to disclosure violations based on the

1   same factual predicate as those set forth in Count IV of the Complaint
    through the date of Settlement.

2   (Dkt. No. 230, Agmt. at § XIV.1.)  In addition, Plaintiffs and class members waive "any and all

3   rights" under California Civil Code § 1542 which excludes from release those claims which are

4   unknown at the time of the release. (*Id*. at § XIV.3.)

5   **D. Notice**

6   Defendants were to provide Class Counsel with a class list and contact information by

7   October 6, 2021.  (*Id.* at § II.7.)  Defendants were to include information regarding "the number of

8   vested shares held in the Class Member's ESOP account as of December 31, 2020, or, if the Class

9   Member received a prior distribution from the ESOP, the number of vested shares held in the

10  Class Member's ESOP account prior to any such distribution."  (*Id*.)

11  The Settlement Agreement calls for the appointment of a Settlement Administrator, RG/2

12  Claims Administration LLC, who will send the Class Notice as well as "any necessary information

13  about how to request a distribution or rollover of his or her Settlement proceeds from his/her AAI

14  401(k) Plan account or provide instructions to the Plan Administrator as to how to invest the

15  Settlement proceeds."  (*Id*. at § II.4; *see also* Dkt. No. 231-3 at ¶ 10.)  The Settlement

16  Administrator will mail the notice, and for those notice packets returned as undeliverable, will

17  "make reasonable efforts to obtain a valid mailing address and promptly resend the Class Notice to

18  the Class Member by U.S. Mail."  (Dkt. No. 230, Agmt. at §§ II.5-6.)  Within 30 days after Class

19  Notice is sent, the Settlement Administrator will file a declaration with the Court confirming that

20  the Notice and related information was sent in accordance with the preliminary approval order.

21  (*Id.* at § II.9.)

22  The estimated costs of settlement administration are between $23,194-$25,000.  (Dkt. No.

23  231-3 at ¶ 11.)

24  **E. Objections**

25  Class Members can file objections to the settlement, but cannot opt-out of the settlement

26  because it was already certified as a non-opt-out class.  There is no deadline for objections in the

27  Settlement Agreement, but Class Counsel proposes 35 days after notice.  (Dkt. No. 231 at 3.)

28

United States District Court
Northern District of California

4

United States District Court
Northern District of California

**DISCUSSION**

The approval of a settlement is a multi-step process.  At the preliminary approval stage, the court should grant such approval only if it is justified by the parties' showing that the court will likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ P. 23(e)(B).  If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co*., No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

### I.  Class Certification

A court may preliminarily certify a settlement class if all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and at least one of the requirements for Rule 23(b) have also been met.  *See* Fed. R. Civ. P. 23.  Here, the Court already certified a class under Rule 23(b)(1) and (b)(2). (Dkt. No. 89.)  Thus, "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment.

Plaintiffs request one change to the certified class—that it have an end date of December 31, 2020.  This change does not alter the reasoning underlying the Court's prior Order granting class certification.  *See, e.g., Youth Just. Coalitions v. City of Los Angeles*, No. 16-07932, 2020 WL 9312377, at *2 (C.D. Cal. Nov. 17, 2020) (approving settlement class definition which expanded and clarified who was in the class because the "change does not alter the reasoning underlying its earlier decision to grant class certification pursuant to Rule 23(b)(2)."). Accordingly, the Court grants preliminary approval of the Settlement Class.

### II.  Preliminary Approval of the Settlement Agreement

In determining whether a class action settlement agreement is fair, adequate, and reasonable to all concerned, courts generally consider the following factors:

(1) the strength of the plaintiff's case; (2) the risk, expense,

> complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).  No matter whether a settlement agreement has been negotiated before a class has been certified or after, the court must also undertake an additional search for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.'" *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (applying *Bluetooth* red-flag factors to post-class certification settlement approvals). The *Bluetooth* court identified three such signs:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and

> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* (internal quotation marks and citations omitted).

The Court cannot, however, fully assess such factors until the final approval hearing; thus, "a full fairness analysis is unnecessary at this stage." *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotation marks and citation omitted). At the preliminary approval stage, "the settlement need only be potentially fair." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. May 31, 2007). Preliminary approval is thus appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted).

United States District Court
Northern District of California

**A. The Fairness Factors**

    **1. Settlement Process**

       The first factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). To approve a proposed settlement, a court must be satisfied that the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make ... an appraisal of the settlement." *Acosta*, 243 F.R.D. at 396. Courts thus have "an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id*.

       Plaintiffs submit declarations from Class Counsel in support of their motion for preliminary approval. (Dkt. Nos. 231-1; 231-2; 231-3.) The declaration of Vincent Cheng describes in detail the discovery that was conducted prior to settlement. (Dkt. No. 231-3 at ¶¶ 2-8.) Plaintiffs took numerous depositions, obtained over 10,000 pages of documents from Defendants and 25,000 pages of documents from non-parties, prepared expert reports, and took several expert depositions. (*Id*.)

       Following class certification and the Court's ruling on the parties cross-motions for summary judgment, the parties participated in three video settlement conferences with Magistrate Judge DeMarchi on December 4, 2020, January 21, 2021, and July 22, 2021. (Dkt. No. 231-1 at ¶ 2.) While the "parties did not make significant process in the first two settlement conferences," in June 2021, Defendants suggested that the parties have a further settlement conference. (*Id*.) By the end of the third settlement conference, "the parties had made substantial progress on the non-monetary terms of a settlement." (*Id*.) Judge DeMarchi then made a mediator's proposal which included the monetary and non-monetary terms of the settlement; both parties accepted the mediator's proposal. (*Id*.)

       That the parties engaged in extensive fact and expert discovery, litigated the case through class certification and summary judgment, and participated in three settlement conferences with Judge DeMarchi before reaching a settlement a month before trial was set to begin, indicates that Plaintiffs were "armed with sufficient information about the case" to broker a fair settlement. *See Acosta*, 243 F.R.D. at 396; *see also Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL

2688224, at *5 (N.D. Cal. June 22, 2017) (finding that the "likelihood of fraud or collusion [wa]s low ... because the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator.")

As such, the Settlement Agreement appears to be the product of serious, informed, non-collusive negotiations. This factor thus weighs in favor of preliminary approval.

**2. Obvious Deficiencies**

The Court must next consider "whether there are obvious deficiencies in the Settlement Agreement." *See Harris*, 2011 WL 1627973, at *8. Here, the Court finds no obvious deficiencies on the face of the Settlement Agreement that would preclude preliminary approval.

**3. Lack of Preferential Treatment**

The Court must next examine whether the Settlement Agreement "provides preferential treatment to any class member." *See Villegas*, 2012 WL 5878390, at *7.  Under the agreement, all class members are treated the same in that each of them will receive a monetary distribution from the Settlement Fund on a pro rata basis based on the number of vested Adams and Associates shares allocated to the class member's ESOP account, as a fraction of all the vested shares allocated to all class members' ESOP accounts.  (Dkt. No. 231-4; Dkt. No. 230, Agmt. at § IV.5.) That is, "each Class Member's share of the net settlement proceeds is calculated and determined on a pro rata basis by comparing the number of AAI shares held in his or her ESOP account to the total number of AAI shares held in the ESOP accounts of all Class Members."  (Dkt. No. 231 at 25:23-26.)  The Settlement Agreement also provides for "service awards" for the Class Representatives.  (Dkt. No. 230, Agmt. at § VIII.1.)  Class Counsel indicate that they intend to request a service award of $5,000 each for Carol Foster and Theo Foreman, the Class Representatives.  (Dkt. No. 231 at 25.)

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (distinguishing incentive awards from incentive agreements, the latter of which are "entered into as part of the initial retention of counsel" and "put class counsel and the contracting class representatives into a conflict position from day one"). Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up

United States District Court
Northern District of California

for financial or reputation risk undertaken in bringing the action, and, sometimes to recognize their willingness to act as a private attorney general." *Id*. at 958-59. Although service awards are viewed more favorably than incentive agreements, excessive awards "may put the class representative in a conflict with the class and present a considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Id*. at 960 (internal quotation marks and citation omitted).  Beyond arguing that incentive awards of $5,000 are "presumptively reasonable in this District" Plaintiffs do not discuss why an incentive award is appropriate here.  (Dkt. No. 231 at 26.)

The Court will defer ruling on the appropriateness of the amount of the requested service awards until final approval. At this stage, there is no indication that the service award in general constitutes "preferential treatment" such that it would defeat preliminary approval.

### 4. Range of Possible Approval

In determining whether the Settlement Agreement "falls within the range of possible approval," the Court must focus on "substantive fairness and adequacy" and consider Plaintiffs "expected recovery balanced against the value of the settlement offer." *See Tableware*, 484 F. Supp. 2d at 1080; *see also Harris*, 2011 WL 1627973, at *11 (noting that courts "must estimate the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount" in determining "the value of the settlement against the expected recovery at trial") (internal quotation marks and citation omitted). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts only to a fraction of the potential recovery that might be available to class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

Here, the Settlement Agreement provides that the non-Adams and Associates Defendants will pay $3 million into a Settlement Fund. (Dkt. No. 230, Agmt. § III.1.)  Plaintiffs' valuation expert previously concluded that the valuation errors related to the October 2012 transaction resulted in an overpayment and loss to the ESOP of $10.5 million. (Dkt. No. 206 at 77-78.).  Thus, the monetary portion of the Settlement represents approximately 28.5% of the maximum amount

of the loss determined by Plaintiffs' expert. The Settlement Agreement also includes non-monetary relief, including that class members can take advantage of favorable tax-deferred benefits of the settlement, that Adams and Associates will not pay for or indemnify the other Defendants, and that Adams and Associates will issue a new Summary Plan Description as required by ERISA.

In considering the reasonableness of the monetary and non-monetary recovery under the Settlement Agreement, the Court considers the risks of continued litigation. In Defendants' statement of non-opposition to the motion for preliminary approval, Defendants set forth their view of the obstacles of continued litigation including that they continue to dispute wrongdoing and contend instead that the ESOP transaction exceeded Adams and Associates projections by $50 million and that the evidence does not support Plaintiffs' breach of fiduciary duty or prohibited transaction claims. (Dkt. No. 232 at 2.) Class Counsel themselves recognize "the expense, risk, and length of continued proceedings necessary to prosecute the litigation against Defendants through trial and appeals, based on the Courts' decisions and the risks that any or all of Plaintiffs' claims might fail following a trial on the merits or on appeal." (Dkt. No. 231 at 23.) "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Knapp v. Art.com, Inc*., 283 F.Supp.3d 823, 832 (N.D. Cal. 2017) (internal citation omitted). This is especially true here given that "ERISA actions are notoriously complex cases, and ESOP cases are often cited as the most complex of ERISA cases." *Pfeifer v. Wawa, Inc*., No. CV16-497, 2018 WL 4203880, at *7 (E.D. Pa. Aug. 31, 2018).

Finally, Plaintiffs maintain that the monetary settlement amount here is consistent with that reached in other ERISA class action settlements. (Dkt. No. 231 at 24 (citing *Urakhchin v. Allianz Asset Mgmt. of Am., L.P*., No. SACV151614JLSJCG, 2018 WL 3000490, at *4 (C.D. Cal. Feb. 6, 2018) (preliminarily approving ERISA class action settlement that recovered $12 million or 25.5% of estimated maximum damages); *O'Dowd v. Anthem, Inc*., No. 14-CV-02787, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019) (finding 29% recovery fair and adequate in ERISA class action); *Karpik v. Huntington Bancshares Inc*., No. 2:17-CV-1153, 2021

United States District Court
Northern District of California

1  WL 757123, at *8 (S.D. Ohio Feb. 18, 2021) (approving settlement representing "approximately

2  30% of the total damages that Plaintiffs claimed at the mediation were associated with

3  Defendants' alleged fiduciary breaches"); *Sims v. BB&T Corp.*, No. 1:15-CV-732, 2019 WL

4  1995314, at *5 (M.D.N.C. May 6, 2019) (finding that recovery representing "19% of the total

5  investment and recordkeeping damages sought by the plaintiffs" was substantial and adequate);

6  *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014) (approving settlement that

7  recovered 3.2% of estimated maximum damages).

8       On balance, the Court concludes that the risks and costs of continued litigation balanced

9  against the monetary and non-monetary relief here, warrant preliminary approval and comment

10  from class members.

11                                            \*\*\*

12       Accordingly, consideration of the fairness factors warrants preliminary approval of the

13  Settlement Agreement.

14      **B. Class Notice Plan**

15       Under Rule 23(c)(2), for "any class certified under Rule 23(b)(1) or (b)(2), the court may

16  direct appropriate notice to the class." *See* Fed. R. Civ. P. 23(a) (emphasis added).  "Notice

17  provided under Rule 23(e) must "generally describe[ ] the terms of the settlement in sufficient

18  detail to alert those with adverse viewpoint to investigate and to come forward and be heard."

19  *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (alteration in original) (quoting

20  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)).  Additionally, Rule 23(h)

21  requires that notice of any motion for attorneys' fees "*must* be served on all parties and, for

22  motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P.

23  23(h)(1) (emphasis added).

24       The proposed Class Notice here satisfies this standard.  The Notice describes the

25  allegations and claims in plain language, defines a class member, includes a personalized estimate

26  of each class member's recovery and the basis for the calculation, includes contact information for

27  both Plaintiffs' counsel and the Settlement Administrator, and summarizes the settlement and

28  distribution plan.  (Dkt. No. 231-5.)  The Notice further describes the options available to class

members, including instructions for electing to receive the settlement as an immediate distribution, rollover, or automatic deposit into the Class Member's 401(k) account, as well as information regarding how the challenge the settlement amount, or object to the settlement or particular aspects of the settlement. (*Id*.) It also informs class members that receiving a settlement award will release certain claims against certain parties. (*Id*.) The Notice informs class members that they may appear at the final fairness hearing in person or through an attorney. (*Id*.) Finally, it directs class members to a website with more information, including the settlement documents, pleadings, and Class Counsel's motion for attorneys' fees and costs. (*Id*.)

The notice plan is adequate with the following revisions. The Settlement Agreement states that Defendants were to provide Class Counsel with the names and contact information of all class members by October 6, 2021. (Dkt. No. 230, Agmt. at § II.7.) While the contact information includes class members' email addresses, the Settlement Agreement and motion for preliminary approval propose notice via U.S. Mail only. (Dkt. No. 230, Agmt. at § II.3; Dkt. No. 231 at 29:9-10.) The Court finds that notice should be provided via U.S. Mail **and** email. In addition, the Court orders Plaintiffs to file their motion for attorneys' fees and costs by a date certain: December 2, 2021. As such, the Notice must be modified to reflect this date and omit the language that the motion will filed "15 days before the date by which you must object to Settlement's terms." (Dkt. No. 231-5 at 9.)

With these revisions, the Court approves of the Class Notice and notice plan.

**C. Attorneys' Fees**

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941; *see also Staton*, 327 F.3d at 963 ("[A] district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement."). Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to determine whether the requested fees are

1    reasonable. *In re Mercury*, 618 F.3d at 992. The Ninth Circuit has established a benchmark of 25

2    percent of the common fund for attorneys' fees calculations under the latter method. *See Powers v.*

3    *Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have ... established twenty-five percent of the

4    recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery

5    approach."). Although "[a] district court may depart from the benchmark ..., it must be made clear

6    by the district court how it arrives at the figure ultimately awarded." *Id*. at 1256-57.

7        "The lodestar figure is calculated by multiplying the number of hours the prevailing party

8    reasonably expended on the litigation (as supported by adequate documentation) by a reasonable

9    hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. The

10   resulting figure may be adjusted upward or downward to account for several factors, "including

11   the quality of representation, the benefit obtained for the class, the complexity and novelty of the

12   issues presented, and the risk of nonpayment." *Id*. at 941-42 (internal quotation marks and citation

13   omitted). The party requesting fees bears the burden "of submitting billing records to establish that

14   the number of hours it requested are reasonable," *Gonzalez v. City of Maywood*, 729 F.3d 1196,

15   1202 (9th Cir. 2013), as well as "produc[ing] satisfactory evidence—in addition to the attorneys'

16   own affidavits—that the requested rates are in line with those prevailing in the community for

17   similar services by lawyers of reasonably comparable skill, experience and reputation," *Camancho*

18   *v. Bridgeport Fin., Inc*., 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation

19   omitted). The Ninth Circuit recommends that whether the lodestar or percentage-of-recovery

20   method is used, the district court perform a cross-check using the other method to confirm the

21   reasonableness of the fee (e.g., if the percentage-of-recovery method is applied, a cross-check with

22   the lodestar method will reveal if the amount requested is unreasonable in light of the hours

23   reasonably expended). *See Bluetooth*, 654 F.3d at 944-45.

24       As previously discussed, Class Counsel intends to file a motion for attorney's fees seeking

25   $1 million (or 33.3% of the settlement amount). (Dkt. No. 231 at 26-27.) Defendants have agreed

26   not to oppose such a request to the extent that it does not exceed 33.3% percent of the settlement

27   amount. (Dkt. No. 230. Agmt. at § VIII.2.) Class Counsel attests that its current lodestar is

28   approximately $2.6 million such that the requested fee award will be less than 40% of Class

United States District Court
Northern District of California

Counsel's lodestar.  (Dkt. No. 231-1 at ¶ 3; Dkt. No. 231-1 at ¶ 3.)

Plaintiffs' motion for attorneys' fees shall include declarations and billing records so that the Court may determine an appropriate lodestar figure, and to allow class members the opportunity to object to the requested fees. *See In re Mercury Interactive Corp*., 618 F.3d at 995 (holding that class members must "have an adequate opportunity to oppose class counsel's fee motion").

**D. Costs**

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (internal quotation marks and citation omitted). To that end, district courts in this circuit regularly award litigation costs and expenses in wage-and-hour class actions. *See, e.g., id*.; *Nwabueze v. AT & T Inc.*, No. C 09-01529 SI, 2014 WL 324262, at *2 (N.D. Cal. Jan. 29, 2014); *LaGarde v. Support.com, Inc*., No. C 12-0609, 2013 WL 1283325, at *13 (N.D. Cal. Mar. 26, 2013). Here, the Settlement Agreement provides that Class Counsel can bring a motion to recover reimbursement of litigation costs and expenses.  (Dkt. No. 230, Agmt. at § VIII.1.)  The settlement administration costs are to be paid directly by the non-Adams and Associates Defendants.  (*Id*. at § II.8; § IV.9.)

Plaintiffs shall submit an itemized sheet summarizing costs with its motion for attorneys' fees so that the Court can determine whether these costs are reasonable litigation expenses incurred for the benefit of the class.

### CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiffs' motion for preliminary approval of the class action settlement as follows:

1. The Court modifies the class definition as follows:

> All participants of the Adams and Associates ESOP from October 25, 2012 to December 31, 2020 who vested under the terms of the Plan and those participants' beneficiaries.

Excluded from the Class are Defendants and their immediate family, any fiduciary of the

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Plan; the officers and directors of Adams and Associates or of any entity in which a Defendant has

2   a controlling interest; and legal representatives, successors, and assigns of any such excluded

3   persons.

4       2.  The Court appoints RG/2 Claims Administration LLC as the Settlement Administrator

5   for providing Class Notice and otherwise assisting in administration of the Settlement.

6       3. Within 21-days of the date of this Order, the Settlement Administrator shall provide

7   notice to the class in accordance with the Notice Plan.

8       4. Within 30-days of the mailing of Notice, the Settlement Administrator shall file a

9   declaration attaching a copy of the Notice ultimately sent to the class and describing the notice

10  process.

11      5 Class Counsel shall file a motion for attorneys' fees and costs by December 2, 2021.

12      6. The deadline for class members to object to the Settlement Agreement and/or Class

13  Counsel's motion for attorneys' fees and costs shall be 60-days after the initial mailing of the

14  Notice.

15      7. Defendants shall provide Plaintiffs with an affidavit regarding indemnification and a

16  draft revised SPD by January 6, 2022.

17      8. Plaintiff shall file their Motion for Final Approval by January 13, 2022. The motion

18  shall include the information suggested by the Northern District of California Procedural

19  Guidance for Class Action Settlements.

20      9. The parties shall appear before this Court for a final approval hearing on February 17,

21  2022 at 9:00 a.m. in Courtroom E, 450 Golden Gate Ave., San Francisco, California.

22

23      **IT IS SO ORDERED.**

24  Dated: October 21, 2021

25

26

27  JACQUELINE SCOTT CORLEY
    United States Magistrate Judge

28