Daniel Feinberg– CA State Bar No. 135983
Email: dan@feinbergjackson.com
FEINBERG, JACKSON, WORTHMAN & WASOW LLP
2030 Addison St., Suite 500
Berkeley, CA 94704
Tel: (510) 269-7998
Fax: (510) 269-7994

R. Joseph Barton – CA State Bar No. 212340
Email:  jbarton@blockesq.com
BLOCK & LEVITON LLP
1633 Connecticut Ave., N.W., Suite 200
Washington, DC 20009
Tel: (202) 734-7046
Fax: (617) 507-6020

Vincent Cheng
Email: vincent@blockesq.com
BLOCK & LEVITON LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Tel: (415)-968-8999
Fax: (617) 507-6020

*Attorneys for Plaintiffs & the Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| **CAROL FOSTER and THEO FOREMAN, on behalf of themselves, individually, and on behalf of all others similarly situated,**<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**ADAMS AND ASSOCIATES, INC., ROY A. ADAMS, LESLIE G. ADAMS, DANIEL B. NOREM, JOY CURRY NOREM and THE DANIEL NOREM REVOCABLE TRUST DATED JANUARY 9, 2002,**<br><br>    **Defendants.** | **Case No. 18-cv-02723-JSC**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date:  February 17, 2022**<br>**Time: 9:00 a.m.**<br>**Courtroom F, 15th Floor**<br>**Honorable Jacqueline Scott Corley** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on February 17, 2022 at 9:00 a.m., in Courtroom F, 15th Floor of the San Francisco Division of the United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Carol Foster and Theo Foreman will move, and hereby do move, the Court to grant final approval of the proposed class action settlement. This Motion is supported by the accompanying Memorandum of Law, the Declaration of Daniel Feinberg ("Feinberg Decl.") and exhibits thereto, and the Proposed Order filed herewith, all of the pleadings and documents on file with the Court in this action, and further evidence and argument as may be submitted prior to the Court's decision on this motion.

Dated: January 13, 2022

Respectfully submitted,

Daniel Feinberg
Email: dan@feinbergjackson.com
FEINBERG, JACKSON,
WORTHMAN & WASOW LLP
2030 Addison St., Suite 500
Berkeley, CA 94704
Tel: (510) 269-7998
Fax: (510) 269-7994

R. Joseph Barton
Email:  jbarton@blockesq.com
BLOCK & LEVITON LLP
1633 Connecticut Ave., N.W.
Suite 200
Washington, DC 20009
Tel: (202) 734-7046
Fax: (617) 507-6020

Vincent Cheng
Email: vincent@blockesq.com
BLOCK & LEVITON LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Tel: (415)-968-8999
Fax: (617) 507-6020

*Attorneys for Plaintiffs & the Class*

1

2

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................ 1

II.    BACKGROUND .................................................................................. 1

    A.   The Factual Background of the Allegations ..................................... 1

    B.   The Claims and Relief Requested .................................................. 3

    C.   Procedural History ........................................................................ 4

III.   THE TERMS OF THE SETTLEMENT AND PLAN OF ALLOCATION ....................... 7

IV.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE................................ 9

    A.   The Strength of Plaintiffs' Case and the Risks of Continued Litigation....................... 10

    B.   The Risk of Maintaining Class Action Status Throughout the Trial............................ 11

    C.   The Amount Offered in Settlement. ................................................ 11

    D.   The Extent of Discovery Completed and the Stage of the Proceedings........................ 12

    E.   Experience and Views of Counsel. .................................................. 13

    F.   The Reaction of the Class. ............................................................. 14

    G.   The *Bluetooth* Factors Support Approval of the Settlement ............................ 15

V.    ATTORNEYS' FEES ........................................................................... 17

VI.   INCENTIVE AWARDS ........................................................................ 17

VII.  CONCLUSION................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta v. Trans Union, LLC*,
   243 F.R.D. 377 (C.D. Cal. May 31, 2007)................................................................13

*In re Bluetooth Headset Products Liability Litigation*,
   654 F.3d 935 (9th Cir. 2011) ................................................................9, 10, 15, 16

*Bozarth v. Envision Healthcare Corp.*,
   No. 17-CV-01935-FMO-SHKX, 2020 WL 11028383 (C.D. Cal. June 30,
   2020) .........................................................................................................................15

*Briseno v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) ......................................................................10, 15, 16

*Cabiness v. Educ. Fin. Sols., LLC*,
   No. 16-CV-01109-JST, 2018 WL 3108991 (N.D. Cal. June 25, 2018) ...................16

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ...........................................................................9, 10

*Conkright v. Frommert*,
   559 U.S. 506 (2010)..................................................................................................10

*Foster v. Adams and Assocs., Inc.*,
   No. 18-CV-02723-JSC, 2019 WL 4305538 (N.D. Cal. Sept. 11, 2019) ................14

*Kim v. Allison*,
   8 F.4th 1170 (9th Cir. 2021) .......................................................................................9

*Knapp v. Art.*
   283 F. Supp. 3d 823 (N.D. Cal. 2017) ...............................................10, 11, 13, 14

*Kudatsky v. Tyler Techs., Inc.*,
   No. 19-CV-07647-WHA, 2021 WL 5356724 (N.D. Cal. Nov. 17, 2021) .................13, 14, 15

*Lembeck v. Arvest Cent. Mortg. Co.*,
   No. 3:20-CV-03277-VC, 2021 WL 5494940 (N.D. Cal. Aug. 26, 2021) ...............11

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir.1998) ..................................................................................12

*Miguel-Sanchez v. Mesa Packing, LLC*,
   No. 20-CV-00823-VKD, 2021 WL 1736807 (N.D. Cal. May 3, 2021).....................13

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)........................................................................13, 14

*Norton v. LVNV Funding, LLC*,
No. 18-CV-05051-DMR, 2021 WL 3129568 (N.D. Cal. July 23, 2021) ...............................13

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ...........................................................................................9, 11

*In re Omnivision Technologies, Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................................................14

*Pfeifer v. Wawa, Inc.*,
No. 16-CV-00497, 2018 WL 4203880 (E.D. Pa. Aug. 31, 2018) ........................................10

*Philips v. Munchery Inc.*,
No. 19-CV-00469, 2020 WL 6135996 (N.D. Cal. Oct. 19, 2020) ........................................12

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .....................................................................................................11

*Sandoval Ortega v. Aho Enterprises, Inc.*,
No. 19-CV-00404-DMR, 2021 WL 5584761 (N.D. Cal. Nov. 30, 2021) ......................11, 12

*Schuchardt v. L. Off. of Rory W. Clark*,
314 F.R.D. 673 (N.D. Cal. 2016) .................................................................................... *passim*

*Toolajian v. Air Methods Corp.*,
No. 18-CV-06722, 2020 WL 8674094 (N.D. Cal. Apr. 24, 2020) ........................................12

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976) .......................................................................................................9

*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (E.D. Cal. 2010) ...............................................................................11, 12, 14

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
229 F. Supp. 3d 1052 (N.D. Cal. 2017) ...................................................................................13

**Statutes**

29 U.S.C. § 1024(b), ERISA § 104(b) .........................................................................................4

29 U.S.C. § 1104(a)(1), ERISA § 404(a)(1) ...............................................................................3

29 U.S.C. § 1106(a), ERISA § 406(a) ......................................................................................3, 5

29 U.S.C. § 1106(b), ERISA § 406(b) ..................................................................................3, 5, 6

29 U.S.C. § 1110, ERISA § 410 ...................................................................................................4

**Other Authorities**

Federal Rule of Civil Procedure 23(e) .........................................................................................1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Federal Rule of Civil Procedure 23(e)(2) ....................................................................9

Federal Rule of Civil Procedure 25(a)(1) ....................................................................4

Federal Rule of Civil Procedure 30(b)(6) ....................................................................5

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs Carol Foster and Theo Foreman, on behalf of themselves and all others similarly situated, move this Court for an order granting final approval to the proposed class action settlement. Pursuant to the Settlement, Defendants have collectively agreed that (1) Defendants, other than Adams and Associates, Inc. ("AAI"), will pay $3 million into a Settlement Fund to be allocated to the Class through the Plan, (2) AAI will not pay for the Settlement or indemnify any of the other Defendants and (3) AAI will issue a revised summary plan description that complies with the Employee Retirement Income Security Act ("ERISA"). In exchange, the Class will dismiss with prejudice its claims asserted in the Second Amended Complaint against Defendants. The Class will also release Defendants from any claims relating to or arising out of the allegations of the Second Amended Complaint.

This Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Among the relevant factors showing the Settlement is fair and reasonable are: (1) the Settlement is commensurate with the strength of Plaintiffs' claims, and $3 million falls well within the range of reasonableness given the risk, expenses, and complexity of further litigation; (2) the case settled on the eve of trial; therefore, sufficient discovery and investigation were conducted to enable Class Counsel to evaluate the claims and defenses in the action and to recommend this settlement; and (3) no Class Member has objected to the Settlement. The Court should therefore grant final approval.

## II.    BACKGROUND

### A.    The Factual Background of the Allegations

AAI operates Job Corps Center under contract with the U.S. Department of Labor. ECF No. 65 ("SAC") ¶ 2; ECF No. 102-3 at 12. The DOL generally awards Job Corps Center contracts based on a competitive bidding process and sets aside many contracts for small businesses whose annual revenue is under a certain limit. SAC & ECF NO. 70 ("Answ.") ¶¶ 21, 22, 24. AAI's annual revenue has exceeded that limit for many years. *Id.* ¶ 24.

AAI adopted the Adams and Associates, Inc. ESOP ("the ESOP" or "the Plan") effective January 1, 2012. SAC ¶ 10; ECF No. 79-3 at 1. Before October 2012, AAI was owned by Roy Adams, Leslie Adams, and The Daniel Norem Recoverable Trust. SAC & Answ. ¶ 20. In July 2012, Roy Adams, Leslie Adams, and Daniel Norem ("the Director Defendants") appointed Alan Weissman as the ESOP's trustee to facilitate the sale of 100% of the AAI stock to the ESOP ("the October 2012 Transaction" or "the ESOP Transaction"). *Id*. ¶ 28; ECF No. 153 at 2. A month prior to his appointment, Weissman was sued in this District for embezzlement from another ESOP for which he had served as trustee, in *Rickstrew v. Weissman*, No. 12-cv-03133-WHA (N.D. Cal.). SAC ¶ 30; ECF No. 79-8. He was indicted in 2016 on various counts for, among others, theft or embezzlement from two ESOPs dating back to at least 2010, pled guilty to four counts, and was sentenced to thirty months in prison in 2017. SAC ¶ 31; ECF Nos. 102-6, 102-7 & 102-8.

The Director Defendants learned before the October 2012 Transaction that AAI could no longer bid on three of its Job Corps Center contracts, which were up for renewal, because the DOL had set them aside for small businesses. SAC ¶ 30; ECF Nos. 79-9 & 79-11; ECF No. 79-10 ¶ 10; ECF No. 79-12 ¶ 9. In both June 2012 and the day after the October 2012 Transaction, AAI filed bid protests in court challenging the DOL's decision to designate two of those centers as small business set-asides. SAC ¶¶ 34, 43; ECF Nos. 79-9 & 79-11. In support of the bid protests, Roy Adams, President of Adams, averred that AAI would be "irreparably harmed" by the DOL's decision. SAC ¶¶ 35, 44; ECF No. 79-10 ¶¶ 11-13; ECF No. 79-12 ¶¶ 11-13.

As part of his pre-transaction due diligence requests, Weissman asked the Director Defendants to provide, among others, information regarding any material litigation in which AAI was or might become involved. SAC ¶¶ 55, 56; ECF No. 102-38 at 6, 9. But the Director Defendants did not provide Weissman or his advisors information about any existing or impending bid protests or the impending loss of the two Job Corps Center contracts in their due diligence responses. SAC ¶¶ 56-57; ECF No. 102-40; ECF No. 102-41 ¶ 10. The loss of two of the Job Corps Centers contracts was disclosed only the day before the ESOP Transaction in lengthy disclosure schedules for the ESOP Transaction, but no change was made to the

transaction price. ECF No. 102-36; ECF No. 102-41 ¶ 11.  On October 25, 2012, Weissman caused the Plan to purchase 100% of the AAI stock from the Selling Shareholder Defendants (*i.e.*, Roy Adams, Leslie Adams, Daniel Norem, and the Norem Trust) for $33.5 million. SAC ¶ 58; ECF No. 153 at 2.

Weissman remained the trustee of the ESOP until May 2016. SAC & Answ. ¶ 18. The ESOP fiduciaries did not inform the participants of the appointment of a new trustee until May 2018— after this action was filed. *Id.*; ECF No. 79-3 at 3. As of April 2018, the Summary Plan Description for the ESOP ("the SPD") available to employees continued to identify Weissman as the trustee. SAC & Answ. ¶ 18. The ESOP fiduciaries never disclosed his criminal conduct to ESOP participants. *Id.* ¶ 32.

### B.  The Claims and Relief Requested

The Second Amended Complaint alleges five counts on behalf of a certified class of participants and beneficiaries:

- **Count I** alleges that Weissman failed to ensure that the Plan paid no more than fair market value for the AAI stock and caused the Plan to engage in a prohibited transition pursuant to ERISA § 406(a) and the Selling Shareholder Defendants were aware of those facts and have liability by knowingly participating in this prohibited transaction. *Id.* ¶¶ 93-98.

- **Count II** alleges that the Selling Shareholder Defendants engaged in prohibited transactions pursuant to ERISA § 406(b) and dealt with the assets of the Plan in their own interest by selling their shares of AAI stock to the ESOP. *Id.* ¶¶ 100-05.

- **Count III** alleges that the Director Defendants breached their fiduciary duties under ERISA § 404(a)(1) by failing to conduct an adequate investigation of Weissman before or after October 2012, withholding material information from him, permitting him to proceed with the October 2012 Transaction, and failing to take sufficient steps or corrective action to protect participants in the Plan. *Id.* ¶¶ 107-16.

- **Count IV** alleges that AAI violated ERISA § 104(b) by failing to furnish an updated and correct SPD and breached its fiduciary duties by failing to inform participants about Weissman. *Id.* ¶¶ 118-28.

- **Count V** alleges that certain indemnification provisions that purport to require the Plan participants to be responsible for the liability or breaches of Defendants are void as against public policy under ERISA § 410. *Id.* ¶¶ 130-45.

The Complaint seeks, among other relief, (1) declarations that Defendants have breached their fiduciary duties and that the Selling Shareholder Defendants have engaged in prohibited transactions; (2) an order removing Defendants as fiduciaries and requiring Defendants to restore all the losses resulting from their fiduciary breaches and violations to the ESOP; (3) an order requiring AAI as Plan Administrator to provide an updated SPD, disclose to ESOP participants any investigation conducted concerning Weissman, and provide an accounting to the Class of the financial accounts of the Plan; and (4) a declaration that any indemnification agreement between Defendants and AAI or the ESOP is void. *Id.* Prayer for Relief ¶¶ A-B, D-G, J.

### C.    Procedural History

Plaintiffs filed their initial Complaint on May 9, 2018, alleging six counts under ERISA, including a breach of fiduciary duty claim solely against Weissman. ECF No. 1. Defendants AAI, Roy Adams, Leslie Adams, and Dan Norem moved to dismiss on statute of limitations and other grounds on July 30, 2018. ECF No. 18. After Plaintiffs' counsel learned that Weissman had died on May 10, 2018, Plaintiffs filed pursuant to Rule 25(a)(1) a motion to substitute his widow, Janice U. Weissman for Mr. Weissman, which the Court granted on October 4, 2018. ECF Nos. 33 & 36. Plaintiffs filed on October 22, 2018 an Amended Complaint that was substantially the same as the original Complaint. ECF Nos. 39, 39-1, 40, & 41. After learning that Mr. Weissman had little assets from which to obtain a recovery, Plaintiffs voluntarily dismissed Ms. Weissman from the action without prejudice on November 13, 2018. ECF No. 45.

*Motion to Dismiss*

The Court granted Defendants' motion to dismiss as to the original indemnification claim but denied their motion as to the disclosure claim on January 24, 2019. ECF No. 58; ECF No. 61

at 1. On February 26, 2019, the Court denied Defendants' motion to dismiss as to the prohibited

transaction and breach of fiduciary duty claim and allowed Plaintiffs to amend their Complaint

with respect to their indemnification claim. *Id.* at 5. Plaintiffs filed their Second Amended

Complaint on March 5, 2019, alleging the current Counts I thought V against the Director and

the Selling Shareholder Defendants and AAI. ECF No. 65; *supra* II.B. Plaintiffs moved for class

certification on June 27, 2019. ECF No. 79. The Court granted class certification as to all counts,

appointed Plaintiffs Carol Foster and Theo Foreman as class representatives, and appointed

Feinberg, Jackson, Worthman & Wasow LLP and Block & Leviton LLP as Co-Lead Counsel for

the Class ("Class Counsel") on September 3, 2019. ECF No. 89 at 13; ECF No. 94 at 13.

    *Discovery*

    Over the course of fact and expert discovery between August 2018 and April 2020,

Plaintiffs served more than forty-five requests for production of documents on Defendants and

served more than five document subpoenas on non-parties and three document subpoenas on

Defendants' experts. ECF No. 231-3 ¶ 2. Defendants collectively produced more than 10,000

pages of documents, and non-parties produced more than 25,000 pages. *Id.* ¶ 4. Plaintiffs served

three expert reports, two of which were rebuttal reports on Defendants' expert reports. *Id.* ¶ 7.

Class Counsel took the Rule 30(b)(6) deposition of AAI and four fact witness depositions,

including the depositions of Roy Adams, Daniel Norem, Joshua Edwards, the managing director

at Weissman's valuation advisor Eureka Capital Advisors LLC and Karen Ng, Weissman's legal

advisor. *Id.* ¶ 5. Class Counsel also took the depositions of Defendants' three experts and

defended the two named Plaintiffs' depositions and two expert witness depositions. *Id.* ¶ 8.

    *Summary Judgment*

    Plaintiffs filed a motion for partial summary judgment on Counts I and III on January 30,

2020. ECF No. 102. Defendants filed a motion for summary judgment on all counts on April 9,

2020. ECF No. 137. The Court denied Plaintiffs' motion, granted Defendants' motion as to

Count I under ERISA § 406(a) as to Defendants Leslie Adams and Joy Curry Norem, and Count

II under ERISA § 406(b) as to all Defendants, and denied the rest of Defendants' motion on July

6, 2020. ECF No. 153 at 21. The Court held as to Count I that no reasonable trier of act could

find that Defendants were acting as fiduciaries for purposes of the October 2012 Transaction and

Roy Adams and Dan Norem were acting as non-fiduciaries, but that there was a fact issue as to

whether they had knowingly participated in the ESOP Transaction. *Id.* at 17. The Court also

found that at least the equitable remedy of rescission was available. *Id*. The Court held that

Count II fails because Plaintiffs' § 406(b) claim is only available against a fiduciary. *Id.* at 17-18.

### Pretrial Proceedings

The parties filed their respective motions *in limine* in February and March 2021. ECF

Nos. 182-84, 187-88 & 197-98.  The court held a hearing on the motions *in limine* and largely

denied the motions *in limine*.

On June 22, 2021, the Court reset the trial date to August 30, 2021. ECF No. 214. The

parties completed their respective pretrial submissions in early July 2021. ECF Nos. 204-07,

209-10 & 215.

### Settlement Conferences

The Court referred the case to Magistrate Judge Virginia K. DeMarchi on November 13,

2020 for a settlement conference. ECF No. 163. The parties, including Plaintiffs Carol Foster and

and Defendants Roy Adams and Daniel Norem, participated in a video settlement conference

with Judge DeMarchi on December 4, 2020 and a further video settlement conference with her

on January 21, 2021. ECF Nos. 166 & 176; ECF No. 231-1 ¶ 2. The parties were not able to

make significant progress during these settlement conferences, and it appeared that case was

headed for trial. *Id.* In June 2021, the Parties agreed to renew settlement discussions. *Id*. The

parties participated in a further settlement conference with Judge DeMarchi on July 22, 2021.

ECF No. 222; ECF No. 231-1 ¶ 2. By the end of the conference, the parties had made substantial

progress on the non-monetary terms of a settlement, with Defendants agreeing to continue to

consider Plaintiffs' offer on monetary terms and the parties providing a confidential status report

to Judge DeMarchi by July 28, 2021. *Id*.; ECF No. 222. Judge DeMarchi issued on July 28, 2021

a "mediator's proposal," which all parties accepted by noon on July 29, 2021. ECF No. 231-1 ¶

2. The parties subsequently entered into the formal Settlement Agreement on September 23,

2021. *Id*.

*Preliminary Approval*

Plaintiffs filed their Motion for Preliminary Approval of Settlement on September 24, 2021. ECF No. 231 ("Mot. for Preliminary Approval"). Plaintiffs' Motion was unopposed. *See* ECF No. 232. On October 21, 2021, the Court issued an order (1) preliminarily approving the proposed settlement; (2) modifying the class definition, as requested by Plaintiffs; (3) appointing RG/2 Claims Administration LLC as the Settlement Administrator; (4) approving the form and content of notice to class members; (5) directing the mailing and emailing of notice by RG/2; (6) setting a deadline for Class Counsel to file a motion for attorneys' fees and costs of December 2, 2021; and (7) scheduling the final fairness hearing. ECF No. 233 ("Preliminary Approval Order"). Pursuant to the Court's Order, the Settlement Administrator provided the Class Notice by U.S. mail or email on November 11, 2021 to all Class Members. Declaration of Tina Chiango ("Chiango Decl."), ECF No. 238 at ¶¶ 5-6. The deadline to object to the Settlement was January 10, 2022 (60 days after mailing). *Id.* at ¶ 9. No Class Members objected to the Settlement. Feinberg Decl. ¶ 3. Accordingly, Plaintiffs now seek final approval of the Settlement.

*Motion for Attorneys' Fees*

Pursuant to the Preliminary Approval Order, Plaintiffs filed their Motion for Service Awards and Class Counsel filed their Motion for Attorneys' Fees and Litigation Expenses on December 2, 2021. ECF Nos. 236 and 237. No Class Members have objected to the requests for attorneys' fees, litigation expenses or service awards. Feinberg Decl. ¶ 4.

*Revised Summary Plan Description*

Defendant AAI is issuing a revised SPD that corrects the identity of the Plan Administrator. As required by the Settlement, Defendants' counsel has provided Class Counsel with a copy of the revised SPD. Feinberg Decl. ¶ 5, Ex. A. The revised SPD no longer incorrectly identifies Principal Financial as a Plan Administrator. *Id.* Instead, Principal is correctly identified as the Plan's Recordkeeper. *Id.*

## III.    THE TERMS OF THE SETTLEMENT AND PLAN OF ALLOCATION

The terms of the proposed Settlement are set forth in the Settlement Agreement ("Agmt."). ECF No. 230**.** In short, the Settlement Agreement provides for a payment of $3

million, inclusive of payments to the Class, Class Counsel's attorneys' fees and litigation expenses, and incentive awards to the Class Representatives. Agmt. §§ I.G, III.1, VIII.1. The Settlement agreement prohibits AAI from paying any portion of the Settlement or providing an indemnification to any of the other Defendants and requires Defendants to aver that AAI has made no such payments or that any such amounts have been refunded to AAI and state the amounts refunded. *Id.* § VI.1. Defendants Roy Adams and Dan Norem have provided the required Declarations. Feinberg Decl., Ex. B and Ex. C.

Non-AAI Defendants were required to and did pay $3 million into the Settlement Fund by September 24, 2021. Agmt. § III.1. In addition to the $3 million settlement payment, non-AAI Defendants will bear all costs for settlement administration including those associated with distribution of the Settlement to the Class. *Id.* § IV.7.

The class defined in the Settlement is identical to the certified Class, with the addition of an end date to the class period. *Id.* § I.H. The Settlement Agreement does not provide for any reversion to Defendants.

In exchange, Plaintiffs and the Class will dismiss the claims asserted in the Second Amended Complaint with prejudice and release Defendants from any and all claims that the Class asserted or could have asserted that relate to or arise out of the facts alleged or the claims set forth in the Second Amended Complaint, including: (a) the October 2012 Transaction or (b) disclosure violations based on the same factual predicate as those set forth in Count IV of the Second Amended Complaint through the date of settlement. Agmt. § XIV.1.

Pursuant to Plaintiffs' proposed Plan of Allocation, after deductions for attorneys' fees, cost reimbursements, and incentive awards to the Class Representatives, each Class Member will be allocated a pro rata share of the net settlement proceeds based upon the number of vested AAI shares allocated to that Class Member's ESOP Account, as a fraction of the total number of vested shares allocated to the ESOP accounts of all Class Members. ECF No. 231-4 ("Plan of Allocation"). After final approval becomes non-appealable, the net settlement proceeds allocated to Class Members will be distributed based on whether they are eligible for a distribution from the ESOP or the Adams and Associates, Inc. 401(k) Profit Sharing Plan ("the AAI 401(k) Plan").

*Id*. If they are former employees or otherwise eligible for an immediate distribution, they will have the option to receive a check for their share of the net settlement proceeds, to elect a rollover to an IRA or another eligible retirement account or to have their settlement monies remain in the AAI 401k Plan. *Id*.; Agmt. § IV.5(a). If they are not eligible for an immediate distribution from the AAI 401(k) Plan (i.e., most current employees), their shares of the proceeds will be transferred to their existing account in the AAI 401(k) Plan. Plan of Allocation; Agmt. § IV.5(b). If they do not already have an account in the AAI 401(k) Plan, an account will be established for them. Plan of Allocation; Agmt. § IV.5.

## IV.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The public interest favors settlement, particularly in class actions where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Final approval of a proposed class action settlement will be granted where it is established that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In determining whether to grant final approval, the Court does not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

> In this Circuit, a district court examining whether a proposed settlement comports with Rule 23(e)(2) is guided by the eight "*Churchill* factors," viz., "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement."

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (quoting *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011)).[1] The relative importance of any particular factor will depend upon the nature of the claims, the types of relief sought, and the

---

[1] As no governmental participant is involved, factor (7) is not discussed below.

unique facts and circumstances presented by the individual case. *Class Plaintiffs*, 955 F.2d at 1291.

In addition, even where a class has been certified courts must scrutinize settlements to ensure they are "not the product of collusion among the negotiating parties." *Bluetooth*, 654 F.3d at 947 (citation omitted); *Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (explaining that *Bluetooth's* "heightened inquiry applies to *post-class certification* settlements"). The *Bluetooth* court identified the following factors as signs of collusion: (1) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Bluetooth*, 654 F. 3d at 947.

As explained below, the relevant factors support granting final approval to this Settlement.

### A.    The Strength of Plaintiffs' Case and the Risks of Continued Litigation.

"The first relevant factor is the risk of continuing litigation, including the strengths and weaknesses of Plaintiffs' case on the merits, balanced against the certainty and immediacy of recovery from the Settlement Agreement." *Schuchardt v. L. Off. of Rory W. Clark*, 314 F.R.D. 673, 681 (N.D. Cal. 2016). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 832 (N.D. Cal. 2017) (citation omitted).

ERISA is an "enormously complex" statute, and many ERISA matters also involve facts that are "exceedingly complicated." *Conkright v. Frommert*, 559 U.S. 506, 509 (2010). "ERISA actions are notoriously complex cases, and ESOP cases are often cited as the most complex of ERISA cases." *Pfeifer v. Wawa, Inc.*, No. 16-CV-00497, 2018 WL 4203880, at *7 (E.D. Pa. Aug. 31, 2018). While Plaintiffs believe they have a strong case and would ultimately prevail, Plaintiffs recognized the expense, risk, and length of continued proceedings necessary to prosecute the litigation against Defendants through trial and appeal. Among the risks of ongoing

litigation were risks that the Court could find that some or all Defendants had not breached any fiduciary duties. For example, Count III depended in part upon establishing an underlying fiduciary breach by a deceased ESOP trustee to be proved to establish the Director Defendants' failure to remedy that breach or monitor the breaching trustee. *See* SAC ¶¶ 111-16. The derivative character introduces difficult issues regarding the knowledge of individual Defendants that would present challenges at trial. Thus, this factor weighs in favor of approval of the Settlement. *See Lembeck v. Arvest Cent. Mortg. Co.*, No. 3:20-CV-03277-VC, 2021 WL 5494940, at *4 (N.D. Cal. Aug. 26, 2021) ("It is plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication." (citation omitted)).

### B.    The Risk of Maintaining Class Action Status Throughout the Trial.

"In considering the third factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed." *Schuchardt*, 314 F.R.D. at 683. The Class has been certified. ECF No. 94. While Defendants could move to decertify the Class, there is no reason to presume that such a motion would be meritorious. Thus, this factor is neutral. *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010)**.**

### C.    The Amount Offered in Settlement.

"The fourth *Churchill* factor looks at the amount of recovery offered in settlement." *Sandoval Ortega v. Aho Enterprises, Inc.*, No. 19-CV-00404-DMR, 2021 WL 5584761, at *7 (N.D. Cal. Nov. 30, 2021). "This factor is generally considered the most important, because the critical component of any settlement is the amount of relief obtained by the class." *Schuchardt*, 314 F.R.D. at 683 (citation omitted). "Assessing the fairness, adequacy, and reasonableness of the amount offered in settlement is not a matter of applying a 'particular formula.'" *Knapp*, 283 F. Supp. 3d at 832 (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). "When considering whether the amount offered in settlement is fair and adequate, '[i]t is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Sandoval Ortega*, 2021 WL 5584761, at *7 (quoting *Officers for Justice*, 688 F.2d at 628).

This factor supports final approval of the Settlement. As explained in Plaintiffs' Motion for Preliminary Approval, the Settlement Agreement provides that the non-AAI Defendants will pay $3 million into a Settlement Fund. Mot. for Preliminary Approval at 16-17; *see also* Agmt. § III.1. The monetary component of the Settlement represents approximately 28.5% of the maximum amount of the loss determined by Plaintiffs' expert. Preliminary Approval Order at 9-10. After deductions for attorneys' fees, cost reimbursements, and incentive awards to the Class Representatives, each Class Member will be allocated a pro rata share of the net settlement proceeds based upon the number of vested AAI shares allocated to that Class Member's ESOP Account, as a fraction of the total number of vested shares allocated to the ESOP accounts of all Class Members. Plan Allocation ¶¶ 4-5. "It is well-settled law that a proposed settlement may be acceptable even though it amounts only to a fraction of the potential recovery that might be available to class members at trial." *Toolajian v. Air Methods Corp*., No. 18-CV-06722, 2020 WL 8674094, at *10 (N.D. Cal. Apr. 24, 2020) (preliminarily approving a settlement for 18% of the maximum recovery); *Philips v. Munchery Inc*., No. 19-CV-00469, 2020 WL 6135996, at *8 (N.D. Cal. Oct. 19, 2020) (stating the same and preliminarily approving a settlement for 26% of the maximum recovery). Moreover, as described in Plaintiffs' Motion for Preliminary Approval, the reasonableness of the Settlement amount is supported by settlements reached in other ERISA class actions. Mot. for Preliminary Approval at 24 (collecting cases). Although a higher monetary award was possible, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Vasquez*, 266 F.R.D. at 489 (quoting *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir.1998)). Further, and as explained in Plaintiffs' Motion for Preliminary Approval, the Settlement provides important non-monetary relief to the Class, including favorable tax-deferred benefits. Mot. for Preliminary Approval at 23. Thus, considering "the complete package taken as a whole" *Sandoval Ortega*, 2021 WL 5584761, at *7, this factor weighs in favor of approving the Settlement.

**D.    The Extent of Discovery Completed and the Stage of the Proceedings.**

"Class settlements are presumed fair when they are reached 'following sufficient discovery and genuine arms-length negotiation.'" *Sandoval Ortega*, 2021 WL 5584761, at *7

1    (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D.

2    Cal. 2004)). "A court is more likely to approve a settlement if most of the discovery is completed

3    because it suggests that the parties arrived at a compromise based on a full understanding of the

4    legal and factual issues surrounding the case." *Norton v. LVNV Funding, LLC*, No. 18-CV-

5    05051-DMR, 2021 WL 3129568, at *7 (N.D. Cal. July 23, 2021) (citation omitted).

6        In this case, "the parties engaged in extensive fact and expert discovery, litigated the case

7    through class certification and summary judgment, and participated in three settlement

8    conferences with Judge DeMarchi before reaching a settlement a month before trial was set to

9    begin[.]" Preliminary Approval Order at 7. The extensive discovery, motion practice, and

10   settlement negotiations are described in further detail in Plaintiffs' Motion for Preliminary

11   Approval and declarations filed therewith. Mot. for Preliminary Approval at 20-21. This Court

12   acknowledged that the extent of discovery completed and late stage of the proceedings "indicates

13   that Plaintiffs were 'armed with sufficient information about the case' to broker a fair

14   settlement." Preliminary Approval Order at 7 (quoting *Acosta v. Trans Union, LLC*, 243 F.R.D.

15   377, 396 (C.D. Cal. May 31, 2007)); *see also Miguel-Sanchez v. Mesa Packing, LLC*, No. 20-

16   CV-00823-VKD, 2021 WL 1736807, at *11 (N.D. Cal. May 3, 2021) ("[T]he parties reached a

17   settlement after engaging in initial discovery and after participating in a full day of mediation,

18   followed by additional settlement discussions. These circumstances weigh in favor of granting

19   preliminary settlement approval."). "In short, this settlement occurred in the shadow of trial and

20   each got to preview the evidence that the other side would have shown to" the court. *Kudatsky v.*

21   *Tyler Techs., Inc.*, No. 19-CV-07647-WHA, 2021 WL 5356724, at *3 (N.D. Cal. Nov. 17, 2021).

22   Thus, this factor supports approval of the Settlement.

23       **E.    Experience and Views of Counsel.**

24       "The Ninth Circuit recognizes that parties represented by competent counsel are better

25   positioned than courts to produce a settlement that fairly reflects each party's expected outcome

26   in litigation." *Knapp*, 283 F. Supp. 3d at 833 (citation omitted). Thus, Courts grant "great weight

27   . . . to the recommendation of counsel, who are most closely acquainted with the facts of the

28   underlying litigation." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab.*

*Litig.*, 229 F. Supp. 3d 1052, 1067 (N.D. Cal. 2017) (quoting *Nat'l Rural Telecomm.*, 221 F.R.D. at 528).

Here, "the abilities and views of counsel support settlement." *Kudatsky*, 2021 WL 5356724, at *3. Counsel are "experienced class actions lawyers who specialize in employee benefit cases." *Foster v. Adams and Assocs., Inc.*, No. 18-CV-02723-JSC, 2019 WL 4305538, at *6 (N.D. Cal. Sept. 11, 2019); Mot. For Preliminary Approval at 21-22. Based on their experience, Class Counsel are highly qualified to assess the risks of continued litigation and weigh them against the merits of the Settlement. *See id.* Taking into consideration the record developed during this litigation and the results achieved in similar cases, Class Counsel believe the Settlement is fair, reasonable, and adequate. Feinberg Decl. at ¶ 2. This factor therefore supports approval of the Settlement.

### F.  The Reaction of the Class.

"'The reactions of the members of a class to a proposed settlement is a proper consideration for the trial court.'" *Vasquez*, 266 F.R.D. at 490 (quoting *Nat'l Rural Telecom. Coop.*, 221 F.R.D. at 528)). Courts consider "[t]he number of class members who object to a proposed settlement[.]" *Schuchardt*, 314 F.R.D. at 685. "'[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement are favorable to the class members.'" *Id.* (quoting *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008)). "A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Knapp*, 283 F. Supp. 3d at 834 (citation omitted).

Here, "the reaction of the class members [to] the settlement is positive[.]" *Kudatsky*, 2021 WL 5356724, at *3. Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator provided the Class Notice by U.S. mail or email on November 11, 2021 to all Class Members identified through data provided by Defendants. Chiango Decl. at ¶¶ 5-6. The Settlement Administrator received 214 Class Notices returned as undeliverable but was able to locate an updated address and re-email the Class Notice to 200 of those Class Members. *Id.* at ¶ 7. A settlement website was also created for class members to be able to obtain additional

information about the settlement. *Id.* at ¶ 8. The website includes a copy of a non-personalized

Class Notice, the Tax Form, an Election Form, and copies of various Court documents. *Id.* As

the Class Notice states, the deadline to object to the Settlement was January 10, 2022. No Class

Members objected to the Settlement.[2] Feinberg Decl. ¶ 3.  The absence of objections

demonstrates support for the Settlement Agreement. *Bozarth v. Envision Healthcare Corp.*, No.

17-CV-01935-FMO-SHKX, 2020 WL 11028383, at *7 (C.D. Cal. June 30, 2020) ("The absence

of a large number of objections and exclusions to a proposed class action settlement supports

approval of a settlement."); *Kudatsky*, 2021 WL 5356724, at *3 (the fact that no class member

objected to the settlement supports approval of the settlement).

Accordingly, the relevant *Churchill* factors weigh in favor of final approval of the

Settlement.

### G.    The *Bluetooth* Factors Support Approval of the Settlement

Courts in the Ninth Circuit must scrutinize settlements to ensure they are "not the product

of collusion among the negotiating parties." *Bluetooth*, 654 F.3d at 947 (citation omitted);

*Briseno*, 998 F.3d at 1023. Courts consider the following factors to be warning signs of

collusion: (1) "when counsel receive a disproportionate distribution of the settlement, or when

the class receives no monetary distribution but class counsel are amply rewarded," (2) "when the

parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees

separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to

revert to defendants rather than be added to the class fund." *Bluetooth*, 654 F. 3d at 947.

However, the existence of these "warning signs" does not mean a settlement is unfair.

*Schuchardt*, 314 F.R.D. at 686. Rather, courts will approve a settlement even where the

*Bluetooth* factors are present if there is "no evidence of collusion between the parties." *Id.*

Here, consideration of the *Bluetooth* factors weighs in favor of approval of the Settlement

and there is no evidence of collusion between the negotiating parties. First, Class Counsel seeks

---

[2] Plaintiffs do not provide information regarding the number of valid claims submitted or opt outs, *see* Procedural Guidance for Class Action Settlements, *available at* Procedural Guidance for Class Action Settlements | United States District Court, Northern District of California (uscourts.gov), because Class Members need not submit claim forms and do not have the option to opt-out of the Settlement.

$1,000,000, representing 33.3% of the common fund, as attorney's fees. ECF No. 237 ("Mot. for Attorneys' Fees") at 12. This figure is substantially less than Class Counsel's lodestar fees, does not constitute a "disproportionate distribution of the settlement," *Bluetooth*, 654 F. 3d at 947, and fairly compensates Class Counsel for the excellent result they obtained for the Class and the risks they took in pursuing this case. Indeed, the vast majority of the Settlement will be distributed to the Class. *Compare Briseno*, 998 F.3d at 1026 (finding a "gross disparity in distribution of funds" where class counsel received $7 million and the class received less than $1 million). As set forth in detail in Plaintiffs' Motion for Attorneys' Fees, attorneys are regularly awarded commensurate fees in similar cases. Mot. for Attorneys' Fees at 15-16. Moreover, unlike the settlement in *Bluetooth*, which provided no money to the class, Class Members will receive significant monetary benefits from the Settlement.

Second, while Defendants have agreed not to object to Class Counsel's request for attorneys' fees, a "'clear sailing' provision 'does not signal the possibility of collusion' where, as here, Class Counsel's fee will be awarded by the Court from the same common fund as the recovery to the class." *Cabiness v. Educ. Fin. Sols., LLC*, No. 16-CV-01109-JST, 2018 WL 3108991, at *7 (N.D. Cal. June 25, 2018) (citations omitted). Further, "under the circumstances presented here, the Settlement" is not "an example of Defendant[s] agreeing to pay Class Counsel excessive fees and costs in exchange for accepting an unfair settlement for the Class." *Schuchardt*, 314 F.R.D. 673 at 687. As noted, Class Counsel seek one-third of the common fund as attorneys' fees, a proportion that is typical in similar common fund cases and represents a fraction of Class Counsel's lodestar. *See* Mot. for Attorneys' Fees at 15-16, 27-28. "Thus, the clear sailing provision, though a *Bluetooth* warning sign, does not signal collusion under the circumstances presented here." *Schuchardt*, 314 F.R.D. at 687.

Third, there is no "kicker" or reversionary provision whereby unpaid attorneys' fees would be returned to Defendants, which the Ninth Circuit cited as amplifying the danger of collusion when a defendant agrees not to object to a fee request by class counsel. *Bluetooth*, 654 F.3d at 949.

These factors, in addition to the fact that (1) the Parties had developed informed views of

the claims and defenses and (2) the Settlement is the product of arms-length negotiations assisted by Judge DeMarchi, demonstrate that the Settlement is not collusive. It is an excellent result for the Class, and exceeds the "fair, reasonable, and adequate" standard.

## V.    ATTORNEYS' FEES

As discussed, Plaintiffs seek an order awarding Plaintiff's counsel up to $1,000,000 in attorneys' fees (representing 33.3% of the common fund) and reimbursement of $149,978.03 for litigation expenses occurred. Mot. for Attorneys' Fees at 12. Class Counsel have filed a separate Motion for Attorneys' Fees and Litigation Expenses explaining the basis for, and reasonableness of, the requested award. ECF No. 237. For the reasons set forth in that Motion, Class Counsel is entitled to the requested fee.

## VI.    INCENTIVE AWARDS

Plaintiffs seek an order approving service awards for Plaintiffs Carol Foster and Theo Forman, in the amount of $5,000 each, in recognition of Plaintiffs' time and effort expended for the benefit of this class. Class Counsel have filed a separate Motion for Service Awards, ECF No. 236, which describes in detail the relevant law and Plaintiffs' contributions to the litigation. For the reasons set forth in that Motion, the named Plaintiffs are entitled to a service award of $5,000 each.

## VII.    CONCLUSION

For the forgoing reasons, the Court should grant Plaintiffs' motion for final approval the proposed Settlement.

Dated: January 13, 2022                    Respectfully submitted,

_Daniel Feinberg_

Daniel Feinberg
Email: dan@feinbergjackson.com
FEINBERG, JACKSON,
WORTHMAN & WASOW LLP
2030 Addison St., Suite 500
Berkeley, CA 94704
Tel: (510) 269-7998
Fax: (510) 269-7994

R. Joseph Barton
Email: jbarton@blockesq.com
BLOCK & LEVITON LLP
1633 Connecticut Ave., N.W.
Suite 200
Washington, DC 20009
Tel: (202) 734-7046
Fax: (617) 507-6020

Vincent Cheng
Email: vincent@blockesq.com
BLOCK & LEVITON LLP
100 Pine Street, Suite 1250
San Francisco, CA 94111
Tel: (415)-968-8999
Fax: (617) 507-6020

*Attorneys for Plaintiffs & the Class*