UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL FOSTER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>ADAMS AND ASSOCIATES, INC., et al.,<br><br>    Defendants. | Case No. 18-cv-02723-JSC<br><br>**ORDER RE: PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MOTIONS FOR ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARDS**<br><br>Re: Dkt. Nos. 236, 237, 241 |

Carol Foster and Theo Foreman brought this class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., on behalf of participants and beneficiaries of the Adams and Associates Employee Stock Ownership Plan. Plaintiffs allege that Adams and Associates, Inc., Roy A. Adams, Leslie G. Adams, Daniel B. Norem, Joy Curry Norem, and The Daniel Norem Revocable Trust Dated January 9, 2002, (collectively "Defendants") breached their fiduciary duty to Plaintiffs, participated in prohibited transactions, failed to make required disclosures, and improperly agreed to indemnification.[1] The Court previously certified a class under Federal Rules of Civil Procedure 23(b)(1) and 23(b)(2), and separately, granted in part and denied in part the parties' cross-motions for summary judgment. (Dkt. Nos. 89, 153.) Shortly before trial was scheduled to commence, the parties notified the Court that they had reached a settlement and filed a motion for preliminary approval of the class action settlement which the Court granted. (Dkt. Nos. 225, 231, 233.) Plaintiffs' unopposed motion for final approval of the class action settlement, motion for attorney's fees and costs, and

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 6, 20, 44, 53, 54.)

motion for incentive awards are now pending before the Court. (Dkt. Nos. 236, 236, 241.) After reviewing the moving papers, and supporting evidence, and as no objections to the settlement have been made, the Court VACATES the February 16, 2022 hearing, *see* N.D. Cal. Civ. L.R. 7-1(b), and GRANTS the motion for final approval and motions for attorney's fees and costs and incentive awards.

## BACKGROUND

This action concerns the Adams and Associates, Inc. Employee Stock Ownership Plan (the "ESOP"). On October 25, 2012, the ESOP purchased 100% of the stock of Adams and Associates, Inc. for $33.5 million from Defendants Roy Adams, Leslie Adams, and the Daniel Norem Revocable Trust. (Dkt. No. 70 at ¶ 1; Dkt. No. 102-12.[2]) Adams and Associates is the plan sponsor and Plan Administrator of the ESOP. (Dkt. Nos. 102-2; 102-12.) Defendants Roy Adams, Leslie Adams, and Daniel Norem are officers and directors of Adams and Associates and members of the ESOP's Plan Committee. (Dkt. No. 70 at ¶¶ 10-12.) The Plan Committee is the ESOP's "named fiduciary." (Dkt. No. 102-48 at 5.) Adams and Associates hired Alan Weissman, now-deceased, to be the ESOP Trustee. (Dkt. No. 70 at ¶ 2.)

The procedural history is set forth in detail in the motion for preliminary approval. (Dkt. No. 231 at 13-15.) Following summary judgment, Plaintiffs' four remaining claims are: (1) that Mr. Adams and Mr. Norem engaged in a prohibited transaction under ERISA Section 406(a), 29 U.S.C. §1106(a); (2) that Mr. Adams and Mr. Norem breached their fiduciary duties under ERISA Section 404(a), 29 U.S.C. § 1104(a); (3) that Adams and Associates as the Plan Administrator failed to make the required disclosures under ERISA Sections 102, 104(b)(1) and Sections 404(a)(1)(A) & (B); and (4) that the indemnification provisions are void under ERISA § 410 and violate Mr. Adams and Mr. Norem's fiduciary duties. (Dkt. Nos. 153, 205.)

## THE SETTLEMENT AGREEMENT

**A. The Class**

The class is composed of 3,561 former and current Adams and Associates employees.

---

[2] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

(Dkt. No. 238, Chiango Decl. at ¶ 5.) The class definition is:

> All participants of the Adams and Associates ESOP from October 25, 2012 to December 31, 2020 who vested under the terms of the Plan and those participants' beneficiaries.

(Dkt. No. 231 at 2.) Excluded from the Class are Defendants and their immediate family, any fiduciary of the Plan; the officers and directors of Adams and Associates or of any entity in which a Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons. (*Id.*)

### B. Payment Terms

The Settlement calls for the non-Adams and Associates Defendants to pay $3,000,000 into a settlement fund which will be allocated on a pro rata basis to class members minus any Court-approved deductions and expenses (including attorney's fees, litigation costs, and service awards for the class representatives). (Dkt. No. 230, Settlement Agreement ("Agmt.") at §§ III.1, VI.2.) Each class member's pro rata share will be "based upon the number of vested Adams and Associates shares allocated to that Authorized Claimant's ESOP account, as a fraction of the total number of vested Adams and Associates, Inc. shares allocated to all Authorized Claimants' ESOP accounts." (Dkt. No. 231-4 at ¶ 4.)

After final approval, the net settlement proceeds allocated to class members will be distributed based on whether they are eligible for a distribution from the ESOP or the Adams and Associates, Inc. 401(k) Profit Sharing Plan ("the Adams and Associates 401(k) Plan"). If they are former employees or otherwise eligible for an immediate distribution, they will have the option to receive a check for their share of the net settlement proceeds, to elect a rollover to an IRA or another eligible retirement account, or to have their settlement monies remain in the Adams and Associates 401(k). (Dkt. No. 230, Agmt. at § IV.5(a).) If they are not eligible for an immediate distribution from the Adams and Associates 401(k) Plan (i.e. most current employees), their shares of the proceeds will be transferred to their existing account in the Adams and Associates 401(k) Plan. (*Id.* at § IV.5(b).) If they do not already have an account in the Adams and Associates 401(k) Plan, an account will be established for them. (*Id.* at § IV.5.)

### C. Scope of Release

1   Class members, including Class Representatives Carol Foster and Theo Foreman agree to
2   release Defendants

> from any and all claims, or causes of action, including any claims for costs, attorneys' fees, and/or expenses, whether in law or in equity, whether known or unknown, whether fixed or contingent, that the Class Members have against Defendants that (a) arise out of the 2012 ESOP Transaction or (b) relating to disclosure violations based on the same factual predicate as those set forth in Count IV of the Complaint through the date of Settlement.

(Dkt. No. 230, Agmt. at § XIV.1.)  In addition, the Class Representatives and class members waive "any and all rights" under California Civil Code § 1542 which excludes from release those claims which are unknown at the time of the release.  (*Id*. at § XIV.3.)

### D. Notice

Following preliminary approval, Defendants provided the Settlement Administrator, RG/2 Claims Administration LLC, with data files which contained the class list and contact information, as well as information regarding "the number of vested shares held in the Class Member's ESOP account as of December 31, 2020, or, if the Class Member received a prior distribution from the ESOP, the number of vested shares held in the Class Member's ESOP account prior to any such distribution." (*Id.* at § II.7; Dkt. No. 238, Chiango Decl. at ¶ 4.)

On November 11, 2021, the Settlement Administrator mailed the class notice to all 3,561 Class Members, and emailed the notice to the 782 Class Members for whom Defendants provided an email address as well.  (Dkt. No. 238, Chiango Decl. at ¶¶ 5-6.)  Of these, 214 class notices were returned as undeliverable and following skip-tracing notice was resent to 200 of these individuals.  (*Id*. at ¶ 7.)  The Settlement Administrator also created a website, www.adamsesop.com, with information regarding the settlement, including a non-personalized class notice, tax form, and an election form, as well as copies of the motions currently pending before the Court and the Settlement Agreement.  (*Id*. at ¶ 8.)

### E. Objections

The deadline for class members to object to the settlement was January 10, 2022.  (Dkt. No. 241-3, Feinberg Decl. at ¶ 3.)  No class member objected to the Settlement Agreement, the request for attorney's fees and costs, or the request for service awards for the Class

4

Representatives. (*Id.*; Dkt. No. 238, Chiango Decl. at ¶ 9.)

**DISCUSSION**

The approval of a settlement is a multi-step process. At the preliminary approval stage, the court should grant such approval only if it is justified by the parties' showing that the court will likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ P. 23(e)(B). If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012). At the second stage, "after notice is given to putative class members, the Court entertains any of their objections to (1) the treatment of the litigation as a class action and/or (2) the terms of the settlement." *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. Oct. 8, 2014) (citing *Diaz v. Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)). Following the final fairness hearing, the Court must reach a final determination as to whether the parties should be allowed to settle the class action pursuant to their agreed upon terms. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

**I.     Class Certification**

The Court previously certified a class under Rule 23(b)(1) and (b)(2). (Dkt. No. 89.) Thus, "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment. In the Court's Preliminary Approval Order, the Court granted Plaintiffs' request to change the certified class to add an end date of December 31, 2020. Nothing in the current submission gives the Court reason to reconsider its prior certification order.

Further, the Court is satisfied that the content of the Notice was sufficient under Rule 23(c)(2)(A). (Dkt. No. 238-1.) *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in

5

1  sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be
2  heard.") (internal quotation marks and citation omitted).

## II. Final Approval of the Settlement Agreement

To grant final approval, the Court must find that the terms of the parties' settlement are fair, adequate, and reasonable under Rule 23(e). In making this determination, courts generally must consider the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill*, 361 F.3d at 575. "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). Under the revised Rule 23(e), the Court must also consider whether the settlement resulted from collusion among the parties. *See Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (holding that courts must apply the collusion factors set forth in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 941 (9th Cir. 2011), to post-class action settlements as well as those settled before certification.)

As discussed below, a review of the fairness and *Bluetooth* factors indicates that the settlement is fair, adequate, and reasonable.

### A. The Fairness Factors

#### 1) The Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation

The first and second factors require the Court to consider "the strength of the [P]laintiffs' case on the merits balanced against the amount offered in the settlement" and the risks of further litigation. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks and citation omitted). There is no "particular formula by which th[e] outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the Court's assessment of the likelihood of success is "nothing more than an

6

amalgam of delicate balancing, gross approximations and rough justice." *Id*. (internal quotation marks and citation omitted). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value." *Id*. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Knapp v. Art.com, Inc*., 283 F.Supp.3d 823, 832 (N.D. Cal. 2017) (internal citation omitted).

"ERISA is an "enormously complex" statute, and many ERISA matters also involve facts that are "exceedingly complicated." *Conkright v. Frommert*, 559 U.S. 506, 509 (2010). Further, according to Class Counsel, "ESOP cases are often cited as the most complex of ERISA cases." (Dkt. No. 241 at 16 (quoting *Pfeifer v. Wawa*, Inc., No. 16-CV-00497, 2018 WL 4203880, at *7 (E.D. Pa. Aug. 31, 2018)). While Plaintiffs believes they have a strong case, they recognize that the expense, risk, and length of continued proceedings necessary to prosecute the litigation against Defendants through trial and appeals. Among other risks, Plaintiffs identify the possibility that the Court could find that some or all of the Defendants did not breach any fiduciary duty, which is a predicate to their claims, as well as the derivative nature of this action which complicated proving Defendants' knowledge for purposes of liability.

Given the risks posed by continuing to litigate Plaintiffs' claims through trial, the certainty of Class Members' recovery under the settlement weighs in favor of granting approval.

**2) Risk of Maintaining Class Action Status Throughout Trial**

In considering the third factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. The Court previously certified the class here and while Defendants could move to decertify the Class, there is no reason to presume that such a motion would be meritorious. Thus, this factor is neutral. *Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 489 (E.D. Cal. 2010).

**3) Settlement Amount**

The fourth fairness factor, the amount of recovery offered, favors final approval of the settlement. When considering the fairness and adequacy of the amount offered in settlement, "it is

7

the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV, Inc.*, 221 F.R.D. at 527. "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (collecting cases).

        The Settlement Agreement provides that the non-Adams and Associates Defendants will pay $3 million into a Settlement Fund. (Dkt. No. 230, Agmt. § III.1.) Plaintiffs' valuation expert previously concluded that the valuation errors related to the October 2012 transaction resulted in an overpayment and loss to the ESOP of $10.5 million. (Dkt. No. 206 at 77-78.). Thus, the monetary portion of the Settlement represents approximately 28.5% of the maximum amount of the loss determined by Plaintiffs' expert. This amount appears consistent with that reached in other ERISA class action settlements. (Dkt. No. 231 at 24 (citing *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. SACV151614JLSJCG, 2018 WL 3000490, at *4 (C.D. Cal. Feb. 6, 2018) (approving ERISA class action settlement that recovered $12 million or 25.5% of estimated maximum damages); *O'Dowd v. Anthem, Inc.*, No. 14-CV-02787, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019) (finding 29% recovery fair and adequate in ERISA class action); *Karpik v. Huntington Bancshares Inc.*, No. 2:17-CV-1153, 2021 WL 757123, at *8 (S.D. Ohio Feb. 18, 2021) (approving settlement representing "approximately 30% of the total damages that Plaintiffs claimed at the mediation were associated with Defendants' alleged fiduciary breaches"); *Sims v. BB&T Corp.*, No. 1:15-CV-732, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (finding that recovery representing "19% of the total investment and recordkeeping damages sought by the plaintiffs" was substantial and adequate); *Boyd v. Coventry Health Care Inc.*, 299 F.R.D. 451, 463 (D. Md. 2014) (approving settlement that recovered 3.2% of estimated maximum damages). After deductions for attorney's fees, cost reimbursements, and incentive awards to the Class Representatives, each Class Member will be allocated a pro rata share of the net settlement proceeds based upon the number of vested AAI shares allocated to that Class Member's ESOP Account, as a fraction of the total number of vested shares allocated to the ESOP accounts of all Class Members. The Settlement Agreement also includes non-monetary relief, including that class members can take advantage of favorable tax-deferred benefits of the settlement, that Adams

and Associates will not pay for or indemnify the other Defendants, and that Adams and Associates will issue a new Summary Plan Description as required by ERISA.

In granting preliminary approval, the Court concluded that the estimated payout to class members was fair in relation to the risks of continued litigation, and there is nothing in the final approval materials that changes the Court's analysis on this score. The Court therefore concludes that the amount offered in settlement also weighs in favor of final approval.

**4) Extent of Discovery Completed and Stage of Proceedings**

Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arms-length negotiation." *DIRECTV, Inc*., 221 F.R.D. at 528. "The extent of discovery [also] may be relevant in determining the adequacy of the parties' knowledge of the case." *Id*. at 527 (quoting Manual for Complex Litigation, Third § 30.42 (1995)). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Id*. (quoting 5 Moore's Federal Practice, § 23.85[2][e] (Matthew Bender 3d ed.)).

Here, the parties engaged in extensive fact and expert discovery, litigated the case through class certification and summary judgment, and participated in three settlement conferences with Judge DeMarchi before reaching a settlement a month before trial was set to begin. All of this indicates that Plaintiffs were "armed with sufficient information about the case" to broker a fair settlement. *See Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007); *see also Kudatsky v. Tyler Techs., Inc*., No. 19-CV-07647-WHA, 2021 WL 5356724, at *3 (N.D. Cal. Nov. 17, 2021) ("In short, this settlement occurred in the shadow of trial and each got to preview the evidence that the other side would have shown to" the court.).

This factor thus weighs in favor of final approval as well.

**5) Experience and Views of Counsel**

"The Ninth Circuit recognizes that parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Knapp*, 283 F. Supp. 3d at 833 (citation omitted). Thus, Courts grant "great weight

9

. . . to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 229 F. Supp. 3d 1052, 1067 (N.D. Cal. 2017) (quoting *Nat'l Rural Telecomm.*, 221 F.R.D. at 528).

The class is represented by Feinberg, Jackson, Worthman & Wasow LLP and Block and Leviton LLP. The Court previously considered the experience of Class Counsel when granting Plaintiffs' motion for class certification. The Court determined that counsel were "experienced class actions lawyers who specialize in employee benefit cases" who would "fairly and adequately represent the interests of the class." (Dkt. No. 94 at 10-11.) There are no apparent reasons to reconsider this decision. Further, Class Counsel attest that "the Settlement is fair, reasonable, and adequate." (Dkt. No. 241-3 at ¶ 2.) Accordingly, "the abilities and views of counsel support settlement." *Kudatsky*, 2021 WL 5356724, at *3.

This factor thus likewise weighs in favor of approval.

**6) Presence of a Government Participant**

No government entity is a party to this action.

**7) Reaction of Class Members**

No objections to the settlement have been received. (Dkt. No. 238 at ¶ 9.) "Courts have repeatedly recognized that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010) (internal quotation marks and citation omitted). Thus, the Court "may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Id.* (internal quotation marks and citation omitted).

***

In sum, the fairness factors weigh in favor of granting Plaintiffs' motion for final approval of the class action settlement.

**B. The *Bluetooth* Factors**

1    Finally, the Court must determine whether the settlement was the result of good faith,

2 arms-length negotiations or fraud and collusion. *In re Bluetooth Headset Prod. Liab. Litig*., 654

3 F.3d 935, 947 (9th Cir. 2011). In determining whether the settlement is the result of collusion,

4 courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs

5 that class counsel have allowed pursuit of their own self-interest and that of certain class members

6 to infect the negotiations." *Id*. The Ninth Circuit has identified three such signs:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
>
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id*. (internal quotation marks and citations omitted).

For the first *Bluetooth* factor, the Court compares the payout to the class (actual and expected) to class counsel's unopposed claim for fees. *See Harris v. Vector Mktg. Corp*., No. C–08–5198 EMC, 2011 WL 4831157, at *6 (N.D. Cal. Oct. 12, 2011). The gross settlement amount is $3 million and Class Counsel seeks $1 million in attorney's fees—one-third of the settlement fund. This ratio taken alone may be a sign of collusion. *See Bluetooth*, 654 F.3d at 947. However, given that the fees requested are 36 percent of Class Counsel's lodestar the Court finds that while the high percentage is a red flag, it does not raise a concern regarding collusion.

The second warning sign—a "clear sailing" provision—is also present here. A clear sailing arrangement provides "for the payment of attorney's fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class[.]" *Bluetooth*, 654 F.3d at 947 (internal quotation marks and citation omitted). Thus, the Court "has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid unreasonably high fees simply because they are uncontested."

*Id*. (internal quotation marks and citation omitted).  However, the Settlement Agreement does not appear to be an example of Defendants agreeing to pay Class Counsel excessive fees and costs in exchange for accepting an unfair settlement for the Class given that amount of fees sought is a fraction of counsel's lodestar.  Thus, the clear sailing provision, though a *Bluetooth* warning sign, does not signal collusion under the circumstances presented here.

The third warning sign—whether the parties have arranged for fees not awarded to the class to revert to defendant rather than be added to the settlement fund, *see Bluetooth*, 654 F.3d at 948—is not present here.  The Settlement Agreement is non-reversionary—all of the funds will be distributed to the class members.

Notwithstanding the existence of two of the three *Bluetooth* factors, the Court concludes that the Settlement Agreement did not result from, nor was it influenced by, collusion.  Instead, the Settlement Agreement adequately satisfies the class Members' claims.  As explained below, the amount of fees sought is reasonable as well.

\* \* \*

In sum, the *Churchill* fairness factors support approval, and the *Bluetooth* factors do not indicate collusion.  The Court is therefore satisfied that the Settlement Agreement was not the result of collusion between the parties and instead is the product of arms-length negotiations between experienced and professional counsel.  There are no objections to address.  For each of these reasons, the Settlement Agreement passes muster under Rule 23(e) and final approval is appropriate.

**III.     Motion for Attorney's Fees, Costs, and Class Representative Incentive Award**

Rule 23 permits a court to award "reasonable attorneys' fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  "Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination of whether the settlement is 'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co*., 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)).

When a negotiated class action settlement includes an award of attorney's fees, the fee

12

award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs*., 312 F.3d 1123, 1126 (9th Cir. 2002). At the same time, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941.

The Ninth Circuit has approved two methods of determining attorney's fees in cases where the amount of the attorney's fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id*. Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S*., 307 F.3d 997, 1007 (9th Cir. 2002).

### 1) Lodestar Method

"To calculate attorney's fees awarded under § 1132(g)(1), district courts utilize a two-step hybrid lodestar/multiplier approach." *Welch v. Metro. Life Ins. Co*., 480 F. 3d 942, 945 (9th Cir. 2007). "First, the court establishes a lodestar by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Id.* "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed." *Id*. at 945–46 (citing *Hensley*, 461 U.S. at 433). "Second, in rare and exceptional cases, the district court may adjust the lodestar upward or downward using a multiplier based on facts not subsumed in the initial lodestar calculation." *Welch*, 480 F. 3d at 946 (internal citation and quotation marks omitted).

#### a) Reasonable Rate

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986) (citation omitted), amended on other grounds by 808 F.2d 1373 (9th Cir. 1987). The relevant community for the purposes of determining the prevailing market rate is generally the

13

"forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 979 (9th Cir. 2008) (citation omitted). In addition to affidavits from the fee applicant, other evidence of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases. *See Cotton v. City of Eureka*, 889 F. Supp. 2d 1154, 1167 (N.D. Cal. 2012) (citation omitted). Civil Local Rule 54-5(b)(3) requires the party seeking fees to submit "[a] brief description of relevant qualifications and experience and a statement of the customary hourly charges of each such person or of comparable prevailing hourly rates or other indication of value of the services."

In support of their motion for attorney's fees, Plaintiffs submit declarations from co-lead counsel Daniel Fienberg and Joseph Barton. (Dkt. Nos. 237-1 (Feinberg Decl.); Dkt. No. 237-6 (Barton Decl.).) According to these declarations, Block & Leviton LLP's rates fall between $275 and $900 per hour, and Feinberg Jackson Worthman & Wasow LLP's rates fall between $265 and $975 per hour. (Dkt. No. 237-6, Barton Decl. at ¶ 6; Dkt. No. 237-1, Feinberg Dec. at ¶ 10.) In particular, for Feinberg Jackson Worthman & Wasow LLP, Mr. Feinberg's current hourly rate is $975, other partners at his firm bill at $850 to $775 per hour, and the Law Fellow who performed the most work on the case, Caitlin Kauffman, bills $375 per hour. (Dkt. No. 237-1, Feinberg Decl. at ¶ 10.) For the Block & Leviton firm, Mr. Barton's hourly rate is $900, Mr. Cheng, an associate, bills $600 per hour, and the paralegal who performed work on the case bills $275 per hour. (Dkt. No. 237-6 at ¶ 6.)

These rates are in line with the rates charged by other ERISA litigators in the San Francisco Bay Area. (Dkt. No. 237-2 at ¶¶ 17-22; Dkt. No. 237-3 at ¶ 13.) In addition, several courts have approved Class Counsels' hourly rates. *See, e.g.. Cunningham v. Wawa, Inc*., No. CV 18-3355, 2021 WL 1626482, at *8 (E.D. Pa. Apr. 21, 2021) (approving hourly rates for Feinberg Jackson Worthman & Wasow LLP of $250-975 per hour, and rates for Block & Leviton LLP of $235-875 per hour); *Hurtado v. Rainbow Disposal Co*., No. 17-01605 JLS DFM, 2021 WL 2327858, at *6 (C.D. Cal. May 21, 2021) (approving hourly rate of $900 for Mr. Barton and between $260-$600 for paralegals and associates). The Court thus concludes that the hourly rates charged by Class Counsel here are reasonable.

14

### b) Reasonable Hours Expended

As to the number of hours billed, they must equal the number of hours that can reasonably be billed to a private client. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Thus, the court should only award fees based on "the number of hours reasonably expended on the litigation" and should exclude "hours that are excessive, redundant, or otherwise unnecessary [.]" *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983). "There is no precise rule or formula for making these determinations[,]" and the court "necessarily has discretion in making this equitable judgment." *Id*. at 436-37.

Class Counsel submitted time records detailing 3,830 hours of work performed on this case. ((Dkt. Nos. 237-4 (Feinberg, Jackson, Worthman & Wasow LLP billing records); 237-8 (Block & Leviton billing records).) While that number is quite high, this action settled on the eve of trial after the parties had engaged in considerable discovery and motion practice, including a motion to dismiss, class certification briefing, cross-motions for summary judgment, expert discovery, and trial preparation. Given the amount of work performed, the number of hours expended was reasonable. This work could reasonably be billed to a private, hourly-fee client and is therefore compensable. *Gonzalez*, 729 F.3d 1196, 1202.

\* \* \*

Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino v. Microsoft Corp*., 290 F. 3d 1043, 1050 (9th Cir. 2002). Here, Class Counsel do not seek a multiplier; rather, their request for $1,000,000 is 36 percent of their lodestar of $2,749,823. The lodestar method establishes the reasonableness of this request. *See Stewart v. Applied Materials, Inc*., No. 15-CV-02632-JST, 2017 WL 3670711, at \*10 (N.D. Cal. Aug. 25, 2017) (awarding fees in an ERISA class action settlement using the lodestar method).

### 2) Percentage of the Fund

"Under the percentage-of-recovery method, the attorney's fees equal some percentage of the common settlement fund[.]" *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 949 (9th Cir. 2015). In the Ninth Circuit, "courts typically calculate 25% of the fund as the 'benchmark'

for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942. "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Plaintiffs' request for $1,000,000 or 33.3 percent of the Settlement Fund is higher than the benchmark for a reasonable award. The Court nevertheless finds it appropriate under the circumstances. First, the overall result and benefit to the class from the litigation is the most important factor in granting a fee award, *see In re Bluetooth*, 654 F.3d at 942, and as discussed above, the result achieved for the class is significant. Class Counsel secured a settlement of $3 million and structured the settlement such that the funds would be paid through the Adams and Associates, Inc. 401(k) Profit Sharing Plan preserving the tax advantages that class members would have enjoyed in their ESOP allocations, and without any class member having to complete a claim form.

Second, the skill required and quality of work performed, likewise supports the fee award sought here. Class Counsel engaged in extensive motion practice, discovery, trial preparation, and settlement negotiations. Class Counsel are highly experienced in ERISA actions and uniquely so with respect to ESOP plans.

Third, the contingent nature of this action also supports the fee award here. Class Counsel have litigated this case since 2018 and, to date, have incurred nearly $150,000 in out-of-pocket expenses and over $2,000,000 in time worked on the matter, all with the possibility of little to no recovery, as described above. (Dkt. No. 237-1 at ¶ 21; Dkt. No. 237-6 at ¶ 16.) Thus, that Class Counsel have significant experience in this field and took on this matter on a contingent basis further indicates that the fee request is reasonable.

Fourth, the lack of any Class Member objections also supports the fee award. *See Waldbuesser v. Northrop Grumman Corp.*, No. CV 06-6213-AB (JCX), 2017 WL 9614818, at *5 (C.D. Cal. Oct. 24, 2017) ("The presence or absence of objections from the class is also a factor in

16

determining the proper fee award.").

Fifth, a 33.3% recovery is on par with settlements in other complex ERISA class actions. *See, e.g.*, *Marshall v. Northrop Grumman Corp.*, No. 16-CV-6794 AB (JCX), 2020 WL 5668935, at *8 (C.D. Cal. Sept. 18, 2020), appeal dismissed, No. 20-56096, 2021 WL 1546069 (9th Cir. Feb. 16, 2021); *Schwartz v. Cook*, No. 15-CV-03347-BLF, 2017 WL 2834115, at *5 (N.D. Cal. June 30, 2017); *Waldbuesser*, 2017 WL 9614818, at *5.

Finally, an award of $1,000,000 results in a negative multiplier and 64 percent reduction to Class Counsel's lodestar. "A negative multiple 'strongly suggests the reasonableness of [a] negotiated fee.'" *Moreno v. Capital Bldg. Maint. & Cleaning Servs.*, No. 19-cv-07087-DMR, 2021 WL 4133860, at *6 (N.D. Cal. Sep. 10, 2021) (quoting *Rosado v. eBay Inc.*, No. 5:12-cv-04005-EJD, 2016 WL 3401987, at *8 (N.D. Cal. June 21, 2016)).

The percentage-of-recovery analysis therefore does not render the requested fees unreasonable. *See Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3616638, at *9 (N.D. Cal. June 26, 2017) ("Rather than abandon the percentage-of-recovery method, the best way to guard against a windfall is first to examine whether a given percentage represents too high a multiplier of counsel's lodestar.").

\* \* \*

The Court thus approves Class Counsel's request for $1,000,000 in attorney's fees.

### B. Costs

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (internal quotation marks and citation omitted). Plaintiffs request $149,978.03 in costs. (Dkt. Nos. 237-1 at ¶ 21; Dkt. No. 237-6 at ¶ 16.) These costs are all well documented and reasonable. (Dkt. No. 237-5; Dkt. No. 237-9.) Accordingly, the Court awards $149,978.03 in costs.

### C. Incentive Award

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (distinguishing incentive awards from incentive agreements, the

17

latter of which are "entered into as part of the initial retention of counsel" and "put class counsel and the contracting class representatives into a conflict position from day one"). However, the decision to approve such an award is a matter within the Court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputation risk undertaken in bringing the action, and, sometimes to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. Although incentive awards are viewed more favorably than incentive agreements, excessive awards "may put the class representative in a conflict with the class and present a considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Id*. at 960 (internal quotation marks and citation omitted). Thus, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

In determining whether an incentive award is reasonable, courts generally consider:

> (1) the risk to the class representative in commencing a suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Covillo v. Specialtys Café*, No. C–11–00594-DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (quoting *Van Vranken v. Atl. Richfield Co*., 901 F. Supp. 294, 299 (N.D. Cal. 1995)). A class representative must justify an incentive award through "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 669 (E.D. Cal. 2008). Further, district courts must evaluate each incentive award individually. *See Staton*, 327 F.3d at 977.

Plaintiffs maintain that incentive awards are appropriate here for several reasons. First, both Class Representatives took on substantial risk in pursuing the litigation—Foreman as a

18

current employee, who risked adverse actions in his employment, and Foster as a former employee, who risked reputational injury. *See Rodriguez*, 563 F.3d at 958. Second, Plaintiffs Foster and Foreman devoted significant time and effort to the litigation. (Dkt. No. 236-2, Foster Decl. at ¶¶ 4-6 (attesting that she has spent between 75-80 hours meeting with counsel, reviewing documents, preparing for and attending her deposition and multiple settlement conferences); Dkt. No. 236-3, Foreman Decl. at ¶¶ 4-6 (attesting that he has spent between 60-65 hours meeting with counsel, reviewing documents, preparing for and attending her deposition and multiple settlement conferences). Finally, both Class Representatives attest that they participated in the lawsuit despite the personal risks because they "wanted to vindicate the rights of the participants in the ESOP and correct the wrongs that occurred." (Dkt. No. 236-2 at ¶ 7; Dkt. No. 236-3 at ¶ 7.)

Having reviewed the Class Representative's declarations and that of Class Counsel, the Court concludes that an incentive award of $5,000 for each Class Representative is appropriate here. The requested amount is reasonable on its face and both Class Representatives expended substantial time, incurred significant risk, and achieved a considerable benefit for the class. *See, e.g., Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) ("Incentive awards typically range from $2,000 to $10,000" and collecting cases); *Camberis v. Ocwen Loan Serv. LLC,* No. 14-cv-02970-EMC, 2015 WL 7995534, at *3 (N.D. Cal. Dec. 7, 2015) (noting that service awards of $5,000 are presumptively reasonable in this judicial district).

Accordingly, the Court approves the requested $5,000 incentive award for each Class Representative.

**CONCLUSION**

For the reasons stated above, the Court GRANTS Plaintiffs' motion for final approval of the parties' class action settlement. In addition, the Court GRANTS Plaintiffs' motion for attorney's fees and costs; specifically, the Court awards the following: $1,000,000 in attorney's fees; $149,978.03 in costs; and $5,000 as an incentive award for each Class Representative.

In accordance with the Northern District's Procedural Guidance for Class Action Settlements, "[w]ithin 21 days after the distribution of the settlement funds and payment of attorneys' fees," Class Counsel shall file "a Post-Distribution Accounting" that provides the

following, to the extent applicable:

> The total settlement fund, the total number of class members, the total number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of claim forms submitted, the number and percentage of opt-outs, the number and percentage of objections, the average and median recovery per claimant, the largest and smallest amounts paid to class members, the method(s) of notice and the method(s) of payment to class members, the number and value of checks not cashed, the amounts distributed to each cy pres recipient, the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, and the multiplier, if any.

https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/. Class Counsel shall "summarize this information in an easy-to-read chart that allows for quick comparisons with other cases," and "post the Post-Distribution Accounting, including the easy-to-read chart, on the settlement website." *See id*.

The Clerk is directed to close this case.

This Order disposes of Docket Nos. 236, 237, 241

**IT IS SO ORDERED.**

Dated: February 11, 2022

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge